1  James Centobene, J-17051
   P.O. Box 705, RB-201L
2  CTF - North Facility
   Soledad, CA  93960-0705
3
   Telephone: N/A
4
   Plaintiff, Propria Persona **FILED**
5
                            MAY 2 9 2008
6
                        RICHARD W. WIEKING
7                    CLERK, U.S. DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
8
               UNITED STATES DISTRICT COURT
9
               NORTHERN DISTRICT OF CALIFORNIA
10
11  JAMES CENTOBENE,                    )    No._____ **WHA (PR)**
                                        )
12              Plaintiff,              )
                                        )
13      v.                              )    COMPLAINT FOR DECLARATORY
                                        )    AND INJUNCTIVE RELIEF
14  ARNOLD SCHWARZENEGGER, Governor,    )
    State of California; JAMES          )
15  TILTON, Secretary, Dept. of         )    TEMPORARY RESTRAINING ORDER
    Corrections and Rehabilitation;     )    AND PRELIMINARY INJUNCTION
16  SCOTT KERNAN, Director, Division    )    REQUESTED
    of Adult Institutions, Dept. of     )
17  Corrections and Rehabilitation;     )
    TERRI McDONALD, Chief Deputy        )    JURY TRIAL DEMANDED
18  Administrator, California Out-      )
    of-State Correctional Facilities    )
19  Unit, Dept. of Corrections and      )
    Rehabilitation; BEN CURRY,          )
20  Warden, Correctional Training       )
    Facility; and, DOES 1 through 5,    )
21                                      )
                Defendants.             )
22  _____)
23
24                      **INTRODUCTION**

25      This is an action seeking declaratory and injunctive relief

26  brought pursuant to 42 U.S.C. § 1983 against Governor Arnold

27  Schwarzenegger and various state agents, alleging that the use of

28  the newly amended Penal Code § 11191 to authorize the INVOLUNTARY

                            1.

1 | transfer of state prisoners to out-of-state facilities is
2 | unconstitutional as it conflicts with multiple federal statutory
3 | and constitutional provisions.  These violations include, but are
4 | not limited to, the following:  Title 18 U.S.C. §§ 1201(a)(1),
5 | 1201(b) and 1201(c) (kidnapping provisions); Title 18 U.S.C.
6 | Appendix 2, §§ 1 through 9 (extradition provisions); U.S. Const.,
7 | Art. VI, cl. 2 (Supremacy Clause); U.S. Const., Art. I, § 10,
8 | cl. 3 (Compact Agreement Clause); and, U.S. Const., 5th and
9 | 14th Amendments (Due Process Clauses).

10 | Plaintiff also seeks a Temporary Restraining Order and
11 | a Preliminary Injunction prohibiting any transfer of plaintiff
12 | -- including out-of-state, inter-institution, inter-facility and
13 | inter-housing unit (bed move) transfers, unless consented to by
14 | the plaintiff -- pending the termination of this action.

15 | ////
16 | ////
17 |
18 | **JURISDICTION**

19 | 1.  This action is brought pursuant to 42 U.S.C. § 1983
20 | seeking redress of multiple federal constitutional and statutory
21 | violations.  Therefore, jurisdiction is proper under 28 U.S.C.
22 | §§ 1331 and 1343(a)(3).

23 |
24 | **VENUE**

25 | 2.  A substantial portion of the events giving rise to
26 | the claims alleged in this complaint occurred in Monterey County,
27 | California.   Therefore,   venue   is   proper   under   28   U.S.C.
28 | § 1391(b)(2).

2.

**PARTIES**

3.    Plaintiff JAMES CENTOBENE is a resident of the State of California, currently incarcerated by the California Department of Corrections and Rehabilitation ("CDCR") and housed at the Correctional Training Facility ("CTF") in Soledad, California. At all times mentioned in this complaint, Centobene was a state prisoner within the CDCR.

4.    Defendant ARNOLD SCHWARZENEGGER is the Governor of the State of California and is being sued in his official capacity.

5.    Defendant JAMES TILTON is the Secretary of Corrections for the CDCR and is being sued in his official capacity.

6.    Defendant SCOTT KERNAN is the Director of the Division of Adult Institutions for the CDCR and is being sued in his official capacity.

7.    Defendant TERRI McDONALD is the Chief Deputy Administrator of the California Out-of-State Correctional Facilities Unit for the CDCR and is being sued in her official capacity.

8.    Defendant BEN CURRY is the Warden of CTF and is being sued in his official capacity.

9.    At all times mentioned in this complaint, each individual defendant was acting under the color of state law.

10.   At all times mentioned in this complaint, each individual defendant was acting in their official capacity and in the scope and course of their employment.

11.   Centobene is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 5, and therefore sues these Defendants by such fictitious names.  Centobene will

3.

1  seek leave to amend this complaint to add their true names and
2  capacities once they have been ascertained.  Centobene is
3  informed and believes, and on that basis alleges, that each of
4  the Defendants, DOES 1 through 5, is in some manner responsible
5  for the acts alleged in this complaint.

6

7                        **GENERAL ALLEGATIONS**

8      12.  On October 4, 2006, Governor Schwarzenegger issued an
9  Emergency Proclamation declaring that all 33 prisons of the CDCR
10  were at or above maximum operational capacity and posed a serious
11  threat to the health and safety of both prisoners and prison
12  staff.  To address this overcrowding, the Governor ordered CDCR
13  officials to enter into contracts to transfer adult California
14  prisoners to out-of-state prisons operated by private companies
15  and/or state and county agencies.

16      13.  On or about October 19, 2006, the CDCR entered into two
17  contracts.  The first entitled "Offender Relocation/Housing -
18  Agreement between State of California and The GEO Group, Inc."
19  ("GEO").  The second entitled "Offender Relocation/Housing -
20  Agreement between State of California and Corrections Corporation
21  of America" ("CCA").  These two contracts provided that inmates
22  currently incarcerated by the CDCR may be transferred and housed
23  in private correctional facilities ran by GEO and CCA in Indiana,
24  Arizona, Mississippi, Oklahoma and Tennessee.

25      14.  These two contracts are governed by the Interstate
26  Corrections Compact ("ICC") and Western Interstate Corrections
27  Compact ("WICC").  (Penal Code §§ 11189 and 11190, respectively,
28  Exhibit ("Ex.") A.)  In fact, no contract may be entered with

                                4.

1    any entity to house California state prisoners in any other
2    state which is not a party to the ICC or WICC agreements. (Penal
3    Code § 11194, Ex. A.)

4        15. On October 31, 2006, the CDCR implemented Phase II
5    of its California Out-of-State Correctional Facility ("COCF")
6    program and started transferring <u>volunteer</u> California prisoners
7    to out-of-state facilities. (Memorandum, p. 1, Ex. B.)

8        16. On February 2, 2007, the Director of the Division of
9    Adult Institutions issued a memorandum implementing Phase III of
10   the COCF program. Under Phase III, the CDCR started mandatory,
11   <u>INVOLUNTARY</u> transfers of California prisoners to out-of-state
12   facilities. (Memorandum, p. 1, Ex. B.)

13       17. On February 20, 2007, the Sacramento County Superior
14   Court ruled that the Governor had "acted in excess of his
15   authority in issuing the Proclamation of Emergency" and issued
16   an injunction forbidding the CDCR from transferring prisoners
17   out-of-state. (<u>California Correctional Peace Officers' Assoc.</u>
18   <u>v. Schwarzenegger</u> (Sac. Sup. Ct.) No. 06CS01568, Order filed
19   February 20, 2007.)

20       18. On February 22, 2007, the California Legislature
21   proposed Assembly Bill 900 ("AB 900"). AB 900 proposed, inter
22   alia, to amend Penal Code § 11191, striking the section providing
23   that no inmate may be transferred to an out-of-state facility
24   unless he has executed a written consent to the transfer.
25   (Amended Penal Code § 11191, Ex. C.) AB 900 was passed, signed
26   into law and became effective on May 3, 2007.

27       19. On or about July 23, 2007, the California Court of
28   Appeal for the Third Appellate District issued a stay of the

5.

1  injunction forbidding the CDCR from transferring prisoners out-
2  of-state.    (California Correctional Peace Officers' Assoc.,
3  et al. v. Arnold Schwarzenegger, et al., No. C055327, on-line
4  docket as of July 23, 2007.)

5      20.    In late July of 2007, the CDCR announced that it would
6  resume out-of-state transfers.    (CDCR, Press Release: CDCR
7  Continues Temporary Out of State Transfers (July 20, 2007).)
8  These out-of-state transfers were mandatory, INVOLUNTARY
9  transfers pursuant to Phase III of the COCF program.    (Memorandum
10  Ex. B.)

11

12                          **EXHAUSTION**

13      21.    On March 18, 2008, Correctional Counselor I Robinson
14  approached my cell door and told me that I am being considered
15  for an involuntary out-of-state transfer.

16      22.    On March 24, 2008, I filed an Inmate Appeal stating
17  that I have on-going litigation that calls for extensive research
18  of California state law and that the out-of-state facilities do
19  not comply with the Gilmore v. Lynch consent decree.    (3/24/08
20  Inmate Appeal, Ex. D.)    On April 1, 2008, I received a Screening
21  Form stating that my appeal is being held pending notification
22  of a CSR endorsement.    (Ex. D.)

23      23.    On April 10, 2008, I filed an Inmate Appeal alleging
24  that the Administration is engaged in the practice of state-
25  sponsored kidnapping.    I also alleged that out-of-state transfers
26  are a form of forced extradition and is being enforced pursuant
27  to a void contract.    (4/10/08 Inmate Appeal, Ex. E.)

28      24.    On April 14, 2008, I filed an Inmate Appeal challenging

                                6.

1   the rejection of my March 24, 2008 appeal.  I stated that there
2   was no reason why my appeal could not be processed, that I was
3   not appealing an endorsement, but rather that the out-of-state
4   facilities lack a law library which complies with the law library
5   requirements for California state prisoners.  (4/14/08 Inmate
6   Appeal, Ex. F.)

7       25.  On April 15, 2008, I filed an Inmate Appeal alleging
8   that I had been improperly targeted for transfer, contrary to
9   the guidelines issued by the Director of the Division of Adult
10  Institutions on February 2, 2007.  (4/15/08 Inmate Appeal,
11  Ex. G.)

12      26.  On April 17, 2008, I filed an Inmate Appeal alleging
13  that the 5 month denial of visits due to an extended lockdown
14  -- during which time I lost 2 visits -- had now unfairly made
15  me eligible for an out-of-state transfer.  (4/17/08 Inmate
16  Appeal, Ex. H.)

17      27.  I have unsuccessfully attempted to exhaust each of
18  the issues raised in this complaint.

19

20              A.  Plaintiff Was Denied Access To Appeal Process

21      28.  I AM BEING DENIED ALL ACCESS TO THE APPEAL PROCESS for
22  any appeal which challenges the out-of-state transfer program.

23      29.  As of May 5, 2008 (nearly 6 weeks after my first appeal
24  was filed), the Administration has not processed, issued a Log
25  Number nor reached the merits of ANY of my appeals.

26      30.  Apparently, the only time that the Administration
27  will consider an Inmate Appeal challenging an out-of-state
28  transfer is AFTER that inmate has been endorsed for transfer.

7.

1 │ (See Screening Form, 3/24/08 Inmate Appeal, Ex. D.)

2

3 │      B.  Appeal Process Is Inadequate To Prevent Injury

4 │     31.  Once an inmate has been endorsed, he shall be allowed

5 │ to appeal the transfers. (Memorandum, pp. 6-7, Ex. B.) The

6 │ appeal will be processed within 5 working days at the second

7 │ level. (I.e., Warden's level; ibid.) If dissatisfied, the

8 │ inmate may then appeal to the third level. (I.e., Director's

9 │ level; ibid.)

10 │     32.  However, once an appeal is denied at the second level

11 │ (Warden's level), that inmate is then immediately available

12 │ for transfer. (Memorandum, p. 7, Ex. B; see also "Denied,"

13 │ Second Level Appeal Response, Inmate Dunworth, Ex. I [noting

14 │ that third level review will not prevent transfer].)

15 │     33.  As the Warden lacks the authority to grant my legal

16 │ challenges to a program which the Governor and State Legislature

17 │ have approved, my appeals will be denied at the second level

18 │ and I will be facing an out-of-state transfer.

19 │     34.  As such, the appeal process is inadequate to prevent

20 │ the injury of an unlawful out-of-state transfer.

21

22 │      C.  Suit Does Not Challenge A "Prison Condition"

23 │     35.  This action is a constitutional challenge to the use

24 │ of the amended Penal Code § 11191 to authorize the involuntary

25 │ transfer of state prisoner to out-of-state facilities. As such,

26 │ it does not challenge a prison condition within the meaning

27 │ of 42 U.S.C. § 1997e or the Prison Litigation Reform Act.

28 │ ////

1

2

3

**FIRST CAUSE OF ACTION**

Out-of-State Transfers Are Being
Enforced Pursuant To A Void Contract

4    36.  Plaintiff realleges and incorporates by reference
5  each allegation of paragraphs 1 through 35, inclusive, as if
6  alleged herein.

7    37.  On or about October 19, 2006, the CDCR entered into
8  contracts with the GEO and CCA to house California state inmates
9  in out-of-state facilities.  Incidental to, and a necessary
10  part of these contracts, is the provision that no inmate may
11  be transferred unless he has executed a written consent to the
12  transfer.  (2006 Penal Code § 11191, Ex. A.)  This is because
13  at the time the contracts were entered, the 2006 version of
14  Penal Code § 11191 was the applicable law and the contract could
15  not be enforced without complying with that provision.

16    38.  On or about May 3, 2007, AB 900 was signed into law
17  and became effective.  AB 900 amended Penal Code § 11191 striking
18  the provision which mandated that an inmate must execute a
19  written consent to an out-of-state transfer.  (Amended Penal
20  Code § 11191, Ex. C.)

21    39.  When California amended Penal Code § 11191 allowing
22  for the transfer of state prisoner to out-of-state facilities
23  without their consent, it constituted a material and substantial
24  alteration of the existing contract which renders it void and
25  unenforceable unless ratified.

26    40.  However, it is not enough for the GEO and the CCA
27  to ratify the contracts.  As California's amendment has modified
28  a forty (40) year old agreement with the receiving states (see

9.

1  "Credits," Penal Code § 11191, Ex. A), AND those states have

2  enacted Complimentary Legislation (see "Historical Notes," Penal

3  Code §§ 11189 and 11190, Ex. A), these material and substantial

4  departures from the accepted public policy governing the ICC

5  and WICC agreements must be ratified by the receiving states'

6  legislatures.  As no such express ratification has taken place,

7  these contracts are void by operation of law.

8      41.  Accordingly, the CDCR is enforcing out-of-state

9  transfers pursuant to a void contract in violation of the 5th

10 and 14th Amendments of the U.S. Constitution.

11

12

13                   **SECOND CAUSE OF ACTION**

14        Out-of-State Transfer Contract Is Breached,
         Plaintiff Is Not Provided With Contracted Benefits

15     42.  Plaintiff realleges and incorporates by reference

16 each allegation of paragraphs 1 through 35, inclusive, as if

17 alleged herein.

18     43.  Pursuant to the ICC and WICC agreements, a California

19 state inmate confined in a receiving state SHALL NOT BE DEPRIVED

20 of any legal right said inmate would have had if confined in

21 a California state prison.  (Penal Code § 11189, Art. IV(e)

22 and § 11190, Art. IV(e), Ex. A.)

23     44.  In 1972, the State of California entered into a consent

24 decree in the case of Gilmore v. Lynch (N.D. Cal.), No. 45878

25 (reaffirmed in Gilmore v. California, 220 F.3d 987 (CA9 2000))

26 governing the contents of law libraries for California state

27 prisoners.  The contracted minimum collection of this consent

28 decree is itemized in the Director's Operations Manual ("DOM")

10.

1 § 53060.11 and the attached additional page (front and back)

2 of the 3/24/08 Inmate Appeal attached here at Exhibit D.

3     45. I am informed and believe that these out-of-state

4 facilities maintain only a minimal legal collection and <u>clearly</u>

5 do not comply with the <u>Gilmore v. Lynch</u> consent decree.

6     46. California maintains the legal obligation to ensure

7 that California state prisoners are housed in an out-of-state

8 facility which has a law library that complies with the minimum

9 legal collection agreed to in the <u>Gilmore v. Lynch</u> consent

10 decree. By failing to do so, California has breached its

11 contracts pursuant to the ICC and WICC agreements. (See Penal

12 Code § 11189, Art. III(a)(2) and (a)(5), § 11190, Art. III(a)(2)

13 and (a)(5), Ex. A.)

14     47. Accordingly, the CDCR is enforcing out-of-state

15 transfers pursuant to a breached and unenforceable contract

16 in violation of the 5th and 14th Amendments of the U.S.

17 Constitution.

18

19

20                    **THIRD CAUSE OF ACTION**

Out-of-State Transfers Constitute
21 State-Sponsored Kidnapping

22     48. Plaintiff realleges and incorporates by reference

23 each allegation of paragraphs 1 through 35, inclusive, as if

24 alleged herein.

25     49. Title 18 of the United States Code § 1201(a)(1)

26 provides in pertinent part, "Whoever unlawfully seizes, confines,

27 inveigles, decoys, kidnaps, abducts, or carries away and holds

28 for ransom or reward or otherwise any person, ... when

11.

1   transported across a State boundary, ... shall be punished by
2   imprisonment."

3       50. California  is  engaged  in  the  practice  of
4   State-sponsored kidnapping. This is evident where California
5   is **unlawfully** (pursuant to voided and breached contracts, and
6   other constitutional violations) **kidnapping and carrying away**
7   California  state  prisoners  (through  INVOLUNTARY  transfers
8   pursuant to Phase III of the COCF program) **across State**
9   **boundaries** (to out-of-state correctional facilities) **for ransom,**
10  **reward or other** ($63.00 per day, per person).

11      51. California's unlawful and INVOLUNTARY transfers under
12  the ICC and WICC agreements pursuant to amended Penal Code
13  § 11191 is in direct conflict with federal kidnapping statutes
14  and must give way under the Supremacy Clause of the U.S.
15  Constitution, Art. VI, cl. 2, to the congressional enactment.

16      52. Accordingly,  the  CDCR  is  enforcing  out-of-state
17  transfers pursuant to an unlawful contract in violation of the
18  5th and 14th Amendments of the U.S. Constitution.

19
20
                            **FOURTH CAUSE OF ACTION**
21
                    Out-of-State Transfers Constitute An
22                  Unconstitutional Exercise Of Jurisdiction

23      53. Pursuant to the ICC and WICC agreements, an inmate
24  transferred to an out-of-state facility is subject to prosecution
25  for any criminal offense which may occur while the inmate is
26  in the jurisdiction of the receiving state. (Penal Code § 11189,
27  Art. V(a) and § 11190, Art. V(a), respectively, Ex. A.)

28      54. For over forty (40) years, pursuant to the 1961 and

                                12.

1   1976 versions of Penal Code § 11191, an inmate wishing to
2   transfer to an out-of-state facility pursuant to the ICC and
3   WICC agreements had to execute a written consent to the transfer.
4   (See "Credit" and "Historical Notes," Penal Code § 11191, Ex. A.)

5       55. When an inmate consents in writing to an out-of-state
6   transfer, he expressly accepts the terms of the ICC and WICC
7   agreements; including the obligation to abide by the laws of
8   the receiving state. This obligation carries with it the
9   understanding that the inmate may be subject to prosecution
10  for any criminal offense he may commit while in the receiving
11  state's custody. In short, the inmate has consented to the
12  exercise of the receiving state's jurisdiction.

13      56. By contrast, when California _involuntarily_ transfers
14  an inmate to an out-of-state facility, that inmate HAS NOT
15  ACCEPTED, NOR CONSENTED TO, the exercise of the receiving state's
16  jurisdiction.

17      57. The Interstate Act on Detainers is the means by which
18  a receiving state is able to involuntarily exercise its
19  jurisdiction over an unwilling person and to subject the person
20  to prosecution. (18 U.S.C. App. 2, §§ 1 through 9.)

21      58. California has exceeded its authority by using State
22  law to _involuntarily_ transfer and subject an inmate to the
23  jurisdiction of another state where that inmate may be prosecuted
24  for criminal offenses. This state action infringes upon the
25  province and exercise of the Interstate Act on Detainers, is
26  governed by federal law and, therefore, must be approved by
27  Congress. (U.S. Constitution, Art. I, § 10, cl. 3.)

28      59. Accordingly, the CDCR is enforcing out-of-state

13.

1  transfers pursuant to an unlawful contract in violation of the

2  5th and 14th Amendments of the U.S. Constitution.

3

4                          **PRAYER FOR RELIEF**

5      **WHEREFORE,** Centobene prays for the following relief:

6      1.   Declaratory relief;

7      2.   Injunctive relief;

8      3.   Reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

9      4.   Costs of suit; and,

10     5.   Such further relief as the court deems proper.

11

12                       **DEMAND FOR JURY TRIAL**

13     Plaintiff James Centobene hereby demands a trial by jury.

14

15  DATED: *May 22, 2008*

16

17                                        James Centobene,
                                          Plaintiff, Propria Persona

18

19

20

21

22

23

24

25

26

27

28

                                    14.

# EXHIBIT A

# EXHIBIT A

**\*97721 West's Ann.Cal.Penal Code § 11189**

## WEST'S ANNOTATED CALIFORNIA CODES PENAL CODE PART 4. PREVENTION OF CRIMES AND APPREHENSION OF CRIMINALS TITLE 1. INVESTIGATION AND CONTROL OF CRIMES AND CRIMINALS CHAPTER 2. CONTROL OF CRIMES AND CRIMINALS ARTICLE 4. INTERSTATE CORRECTIONS COMPACTS

*Current with all 2006 laws and all propositions appearing on the Nov. 7, 2006 ballot*

## § 11189. Interstate corrections compact; form; contents

The Interstate Corrections Compact as set forth in this section is hereby adopted and entered into with all other jurisdictions joining therein. The provisions of the interstate compact are as follows:

### INTERSTATE CORRECTIONS COMPACT

This section may be cited as the Interstate Corrections Compact.

The Interstate Corrections Compact is hereby enacted into law and entered into by this state with any other states legally joining therein in the form substantially as follows:

### INTERSTATE CORRECTIONS COMPACT

### ARTICLE I

### Purpose and Policy

The party states, desiring by common action to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of cooperation with one another, thereby serving the best interests of such offenders and of society and effecting economies in capital expenditures and operational costs. The purpose of this compact is to provide for the mutual development and execution of such programs of cooperation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources.

### Article II

### Definitions

As used in this compact, unless the context clearly requires otherwise:

(a) "State" means a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico.

\*97722 (b) "Sending state" means a state party to this compact in which conviction or court commitment was had.

(c) "Receiving state" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction or court commitment was had.

(d) "Inmate" means a male or female offender who is committed, under sentence to or confined in a penal or correctional institution.

(e) "Institution" means any penal or correctional facility, including but not limited to a facility for the mentally ill or mentally defective, in which inmates as defined in (d) above may lawfully be confined.

### Article III

© 2007 Thomson/West. No claim to original U.S. Govt. works.

### Contracts

(a) Each party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in institutions situated within receiving states. Any such contract shall provide for:

1. Its duration.

2. Payments to be made to the receiving state by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities, programs or treatment not reasonably included as part of normal maintenance.

3. Participation in programs of inmate employment, if any; the disposition or crediting of any payments received by inmates on account thereof; and the crediting of proceeds from or disposal of any products resulting therefrom.

4. Delivery and retaking of inmates.

5. Such other matters as may be necessary and appropriate to fix the obligations, responsibilities and rights of the sending and receiving states.

(b) The terms and provisions of this compact shall be a part of any contract entered into by the authority of or pursuant thereto, and nothing in any such contract shall be inconsistent therewith.

### Article IV

### Procedures and Rights

**\*97723** (a) Whenever the duly constituted authorities in a state party to this compact, and which has entered into a contract pursuant to Article III, shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

(b) The appropriate officials of any state party to this compact shall have access, at all reasonable times, to any institution in which it has a contractual right to confine inmates for the purpose of inspecting the facilities thereof and visiting such of its inmates as may be confined in the institution.

(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state; provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

(d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact including a conduct record of each inmate and certify said record to the official designated by the sending state, in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

(e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an

© 2007 Thomson/West. No claim to original U.S. Govt. works.

any such federally aided program or activity for which the sending and receiving states have made contractual provision, provided that if such program or activity is not part of the customary correctional regimen, the express consent of the appropriate official of the sending state shall be required therefor.

## Article VII

### Entry Into Force

This compact shall enter into force and become effective and binding upon the states so acting when it has been enacted into law by any two states. Thereafter, this compact shall enter into force and become effective and binding as to any other of said states upon similar action by such state.

## Article VIII

### Withdrawal and Termination

This compact shall continue in force and remain binding upon a party state until it shall have enacted a statute repealing the same and providing for the sending of formal written notice of withdrawal from the compact to the appropriate officials of all other party states. An actual withdrawal shall not take effect until one year after the notices provided in said statute have been sent. Such withdrawal shall not relieve the withdrawing state from its obligations assumed hereunder prior to the effective date of withdrawal. Before the effective date of withdrawal, a withdrawing state shall remove to its territory, at its own expense, such inmates as it may have confined pursuant to the provisions of this compact.

## Article IX

### Other Arrangements Unaffected

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a nonparty state for the confinement, rehabilitation or treatment of inmates nor to repeal any other laws of a party state authorizing the making of cooperative institutional arrangements.

## *97726 Article X

### Construction and Severability

The provisions of this compact shall be liberally construed and shall be severable. If any phrase, clause, sentence or provision of this compact is declared to be contrary to the constitution of any participating state or of the United States or the applicability thereof to any government, agency, person or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person or circumstance shall not be affected thereby. If this compact shall be held contrary to the constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

### CREDIT(S)

*(Added by Stats.1976, c. 667, p. 1647, § 2.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

#### 2007 Electronic Pocket Part Update

Complementary Legislation:
  Ala.--Code 1975, §§ 14-13-1 to 14-13-3.
  Alaska--AS 33.36.010 to 33.36.040.
  Ariz.--A.R.S. §§ 31-491, 31-492.
  Ark.--A.C.A. §§ 12-49-101 to 12-49-103.
  Cal.--West's Ann.Cal.Penal Code, § 11189.
  Colo.--West's C.R.S.A. §§ 24-60-1601 to 24-60-1603.
  Conn.--C.G.S.A. §§ 18-105 to 18-107.
  Del.--11 Del.C. §§ 6570 to 6573.
  D.C.--D.C. Official Code, 2001 Ed. §§ 24-1001, 24-1002.
  Fla.--West's F.S.A. §§ 941.55 to 941.57.
  Ga.--O.C.G.A. §§ 42-11-1 to 42-11-3.
  *97727 Hawaii--H R S §§ 355D-1 to 355D-5.
  Idaho--I.C. §§ 20-701 to 20-704.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Ill.--S.H.A. 730 ILCS 5/3-4-4.
Ind.--West's A.I.C. 11-8-4-1 to 11-8-4-20.
Iowa--I.C.A. §§ 913.1 to 913.3.
Kan.--K.S.A. 76-3001 to 76-3003.
Ky.--KRS 196.610, 196.620.
Maine--34-A M.R.S.A. §§ 9401 to 9424.
Md.--Code, Correctional Services, §§ 8-601 to 8-611.
Minn.--M.S.A. §§ 241.28 to 241.30.
Mo.--V.A.M.S. §§ 217.525 to 217.540.
Mt.--M.C.A. 46-19-401, 46-19-402.
Neb.--R.R.S. 1943, §§ 29-3401, 29-3402.
Nev.--N.R.S. 215A.010 to 215A.060.
N.H.--RSA 622-B:1 to 622-B:3.
N.J.--N.J.S.A. 30:7C-1 to 30:7C-12.
N.M.--NMSA 1978, §§ 31-5-17 to 31-5-19.
N.C.--G.S. §§ 148-119 to 148-121.
Ohio--R.C. § 5120.50.
Okl.--57 Okl.St.Ann. §§ 601, 602.
Ore.--ORS 421.245, 421.250, 421.254.
Pa.--61 P.S. §§ 1061 to 1063.
S.C.--Code 1976, §§ 24-11-10 to 24-11-30.
Tenn.--T.C.A. §§ 41-23-101 to 41-23-104.
**\*97728** Tex.--Vernon's Ann.C.C.P. art. 42.19.
Utah--U.C.A. 1953, 77-28a-1 to 77-28a-5.
Vt.--28 V.S.A. §§ 1601 to 1610.
Va.--Code 1950, §§ 53.1-216, 53.1-217.

Wash.--West's RCWA 72.74.010 to 72.74.070, 72.74.900.
Wis.--W.S.A. 302.25 to 302.26.

## REFERENCES

## RESEARCH REFERENCES

Encyclopedias

CA Jur. 3d Penal and Correctional Institutions § 62, Transfer of Inmate to Institution in Another State; Interstate Corrections Compacts.

Treatises and Practice Aids

4 Witkin Cal. Crim. L. 3d Jurisdiction and Venue § 29, (S 29) State Statutes.

3 Witkin Cal. Crim. L. 3d Punishment § 14, (S 14) Adoption and Nature of Compacts.

7 Witkin, California Summary 10th Constitutional Law § 66, Interstate Compacts and Reciprocal Agreements.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97729 West's Ann.Cal.Penal Code § 11190**

# WEST'S ANNOTATED CALIFORNIA CODES
## PENAL CODE
## PART 4. PREVENTION OF CRIMES AND APPREHENSION OF CRIMINALS
## TITLE 1. INVESTIGATION AND CONTROL OF CRIMES AND CRIMINALS
## CHAPTER 2. CONTROL OF CRIMES AND CRIMINALS
## ARTICLE 4. INTERSTATE CORRECTIONS COMPACTS

*Current with all 2006 laws and all propositions appearing on the Nov. 7, 2006 ballot*

## § 11190. Western interstate corrections compact; form; contents

The Western Interstate Corrections Compact as contained herein is hereby enacted into law and entered into on behalf of this State with any and all other states legally joining therein in a form substantially as follows:

### WESTERN INTERSTATE CORRECTIONS COMPACT

### ARTICLE I

#### Purpose and Policy

The party states, desiring by common action to improve their institutional facilities and provide programs of sufficiently high quality for the confinement, treatment and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of co-operation with one another, thereby serving the best interests of such offenders and of society. The purpose of this compact is to provide for the development and execution of such programs of co-operation for the confinement, treatment and rehabilitation of offenders.

### ARTICLE II

#### Definitions

As used in this compact, unless the context clearly requires otherwise:

(a) "State" means a state of the United States, or, subject to the limitation contained in Article VII, Guam.

(b) "Sending state" means a state party to this compact in which conviction was had.

(c) "Receiving state" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction was had.

(d) "Inmate" means a male or female offender who is under sentence to or confined in a prison or other correctional institution.

(e) "Institution" means any prison, reformatory or other correctional facility (including but not limited to a facility for the mentally ill or mentally defective) in which inmates may lawfully be confined.

### \*97730 ARTICLE III

#### Contracts

(a) Each party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in institutions situated within receiving states. Any such contract shall provide for:

1. Its duration.

2. Payments to be made to the receiving state by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities,

© 2007 Thomson/West. No claim to original U.S. Govt. works.

programs or treatment not reasonably included as part of normal maintenance.

3. Participation in programs of inmate employment, if any;  the disposition or crediting of any payments received by inmates on accounts thereof;  and the crediting of proceeds from or disposal of any products resulting therefrom.

4. Delivery and retaking of inmates.

5. Such other matters as may be necessary and appropriate to fix the obligations, responsibilities and rights of the sending and receiving states.

(b) Prior to the construction or completion of construction of any institution or addition thereto by a party state, any other party state or states may contract therewith for the enlargement of the planned capacity of the institution or addition thereto, or for the inclusion therein of particular equipment or structures, and for the reservation of a specific per centum of the capacity of the institution to be kept available for use by inmates of the sending state or states so contracting. Any sending state so contracting may, to the extent that moneys are legally available therefor, pay to the receiving state, a reasonable sum as consideration for such enlargement of capacity, or provision of equipment or structures, and reservation of capacity. Such payment may be in a lump sum or in installments as provided in the contract.

(c) The terms and provisions of this compact shall be a part of any contract entered into by the authority of or pursuant thereto, and nothing in any such contract shall be inconsistent therewith.

**\*97731 ARTICLE IV**

**Procedures and Rights**

(a) Whenever the duly constituted judicial or administrative authorities in a state party to this compact, and which has entered into a contract pursuant to Article III, shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary in order to provide adequate

quarters and care or desirable in order to provide an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

(b) The appropriate officials of any state party to this compact shall have access, at all reasonable times, to any institution in which it has a contractual right to confine inmates for the purpose of inspecting the facilities thereof and visiting such of its inmates as may be confined in the institution.

(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state;  provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

(d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact including a conduct record of each inmate and certify said record to the official designated by the sending state, in order that each inmate may have the benefit of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

(e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be cared for and treated equally with such similar inmates of the

© 2007 Thomson/West. No claim to original U.S. Govt. works.

receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

\*97732 (f) Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state. The receiving state shall provide adequate facilities for such hearings as may be conducted by the appropriate officials of a sending state. In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made. Said record together with any recommendations of the hearing officials shall be transmitted forthwith to the official or officials before whom the hearing would have been had if it had taken place in the sending state. In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state. Costs of records made pursuant to this subdivision shall be borne by the sending state.

(g) Any inmate confined pursuant to this compact shall be released within the territory of the sending state unless the inmate, and the sending and receiving states, shall agree upon release in some other place. The sending state shall bear the cost of such return to its territory.

(h) Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state.

(i) The parent, guardian, trustee, or other person or persons entitled under the laws of the sending state to act for, advise, or otherwise function with respect to any inmate shall not be deprived of or restricted in his exercise of any power in respect of any inmate confined pursuant to the terms of this compact.

## ARTICLE V

## Acts Not Reviewable in Receiving State; Extradition

(a) Any decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not reviewable within the receiving state, but if at the time the sending state seeks to remove an inmate from an institution in the receiving state there is pending against the inmate within such state any criminal charge or if the inmate is suspected of having committed within such state a criminal offense, the inmate shall not be returned without the consent of the receiving state until discharged from prosecution or other form of proceeding, imprisonment or detention for such offense. The duly accredited officers of the sending state shall be permitted to transport inmates pursuant to this compact through any and all states party to this compact without interference.

(b) An inmate who escapes from an institution in which he is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for institution of extradition proceedings shall be that of the sending state, but nothing contained herein shall be construed to prevent or affect the activities of officers and agencies of any jurisdiction directed toward the apprehension and return of an escapee.

## \*97733 ARTICLE VI

## Federal Aid

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Any state party to this compact may accept federal aid for use in connection with any institution or program, the use of which is or may be affected by this compact or any contract pursuant hereto and any inmate in a receiving state pursuant to this compact may participate in any such federally aided program or activity for which the sending and receiving states have made contractual provision provided that if such program or activity is not part of the customary correctional regimen the express consent of the appropriate official of the sending state shall be required therefor.

## ARTICLE VII

### Entry Into Force

This compact shall enter into force and become effective and binding upon the states so acting when it has been enacted into law by any two contiguous states from among the States of Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nebraska, Nevada, New Mexico, Oregon, Utah, Washington and Wyoming. For the purpose of this article, Alaska and Hawaii shall be deemed contiguous to each other; to any and all of the States of California, Oregon and Washington; and to Guam. Thereafter, this compact shall enter into force and become effective and binding as to any other of said states, or any other state contiguous to at least one party state upon similar action by such state. Guam may become party to this compact by taking action similar to that provided for joinder by any other eligible party state and upon the consent of Congress to such joinder. For the purposes of this article, Guam shall be deemed contiguous to Alaska, Hawaii, California, Oregon and Washington.

## ARTICLE VIII

### Withdrawal and Termination

This compact shall continue in force and remain binding upon a party state until it shall have enacted a statute repealing the same and providing for the sending of formal written notice of withdrawal from the compact to the appropriate officials of all other party states. An actual withdrawal shall not take effect until two years after the notices provided in said statute have been sent. Such withdrawal shall not relieve the withdrawing state from its obligations assumed hereunder prior to the effective date of withdrawal. Before the effective date of withdrawal, a withdrawing state shall remove to its territory, at its own expense, such inmates as it may have confined pursuant to the provisions of this compact.

## *97734 ARTICLE IX

### Other Arrangements Unaffected

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a nonparty state for the confinement, rehabilitation or treatment of inmates nor to repeal any other laws of a party state authorizing the making of co-operative institutional arrangements.

## ARTICLE X

### Construction and Severability

The provisions of this compact shall be liberally construed and shall be severable. If any phrase, clause, sentence or provision of this compact is declared to be contrary to the constitution of any participating state or of the United States or the applicability thereof to any government, agency, person or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person or circumstance shall not be affected thereby. If this compact shall be held contrary to the constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

### CREDIT(S)

*(Added by Stats. 1961, c. 1397, p. 3194, § 1.)*

&lt;General Materials (GM) - References,

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Annotations, or Tables>

## HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

#### 2007 Electronic Pocket Part Update

Complementary Legislation:
  Alaska--AS 33.36.060 to 33.36.100.
  Ariz.--A.R.S. §§ 31-471 to 31-475.
  Cal.--West's Ann.Cal.Penal Code, §§ 11190 to 11196.
  Colo.--West's C.R.S.A. §§ 24-60-801 to 24-60-805.
  Hawaii--H R S §§ 355-1 to 355-5.
  Mt.--M.C.A. 46-19-301 to 46-19-305.
  N.M.--NMSA 1978, §§ 31-5-4 to 31-5-9.
  Ore.--ORS 421.282 to 421.294.
  Utah--U.C.A. 1953, 77-28-1 to 77-28-5.
  **\*97735** Wash.--West's RCWA 72.70.010 to 72.70.900.
  Wyo.--Wyo.Stat.Ann. §§ 7-3-401 to 7-3-406.

## REFERENCES

### CODE OF REGULATIONS REFERENCES

Documentation hearing, see 15 Cal. Code of Regs. § 2369.
Multijurisdiction prisoners located outside California;
rights, see 15 Cal. Code of Regs. § 2367.

## LAW REVIEW AND JOURNAL COMMENTARIES

Background and general effect of 1961 addition. (1961)
36 Cal.St.B.J. 808 to 812.

## RESEARCH REFERENCES

Encyclopedias

CA Jur. 3d Penal and Correctional Institutions § 62,
Transfer of Inmate to Institution in Another State; Interstate
Corrections Compacts.

Treatises and Practice Aids

3 Witkin Cal. Crim. L. 3d Punishment § 14, (S 14)
Adoption and Nature of Compacts.

## ANNOTATIONS

### NOTES OF DECISIONS

**Purpose of law 1**

**1. Purpose of law**

Purpose of § 11190 et seq., providing for incarceration
of an inmate in any institution out of the state is to facilitate
successful rehabilitation of inmates. People v. Flower
(App. 2 Dist. 1976) 133 Cal.Rptr. 455, 62 Cal.App.3d 904.
Prisons ☞ 13.3

© 2007 Thomson/West. No claim to original U.S. Govt. works.

PENAL Sec. 11191, Commitment or transfer of inmate to institution within or without state; right to    **Page 1**
counsel; consent of inmate; revocation of consent

**\*97736 West's Ann.Cal.Penal Code § 11191**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

**§ 11191. Commitment or transfer of
inmate to institution within or
without state;    right to counsel;
consent of inmate;    revocation of
consent**

Any court or other agency or officer of this
state having power to commit or transfer an
inmate (as defined in Article II(d) of the
Interstate Corrections Compact or of the Western
Interstate Corrections Compact) to any institution
for confinement may commit or transfer such
inmate to any institution within or without this
state if this state has entered into a contract or
contracts for the confinement of inmates in said
institution pursuant to Article III of the Interstate
Corrections Compact or of the Western Interstate
Corrections Compact, but no inmate sentenced
under California law may be committed or
transferred to an institution outside of this state,
unless he has executed a written consent to the
transfer. The inmate shall have the right to a
private consultation with an attorney of his
choice, or with a public defender if the inmate
cannot afford counsel, concerning his rights and
obligations under this section, and shall be

informed of such right prior to executing the
written consent. At any time more than five
years after the transfer, the inmate shall be
entitled to revoke his consent and to transfer to
an institution in this state. In such cases, the
transfer shall occur within the next 30 days.

**CREDIT(S)**

*(Added by Stats.1961, c. 1397, p. 3199, § 1. Amended by
Stats.1976, c. 667, p. 1652, § 3.)*

<General Materials (GM) - References,
Annotations, or Tables>

**HISTORICAL NOTES**

**HISTORICAL AND STATUTORY
NOTES**

**2000 Main Volume**

The 1976 amendment rewrote the section, which
previously read:

"Any court or other agency or officer of this State having
power to commit or transfer an inmate (as defined in
Article II(d) of the Western Interstate Corrections
Compact) to any institution for confinement may commit or
transfer such inmate to any institution within or without
this State if this State has entered into a contract or
contracts for the confinement of inmates in said institution
pursuant to Article III of the Western Interstate Corrections
Compact, but no inmate sentenced under California law
may be transferred from an institution within this State to
an institution without this State, unless he has executed, in
the presence of the warden or other head of the institution
in this State in which he is confined, a written consent to
the transfer. An inmate may not revoke such consent."
**\*97737**

**REFERENCES**

**LIBRARY REFERENCES**

**2000 Main Volume**

Prisons ☞13.5(2).
Westlaw Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 130 to 137.
Cal Digest of Official Reports 3d Series Penal and
Correctional Institutions §§ 4, 11.

**RESEARCH REFERENCES**

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97738 West's Ann.Cal.Penal Code § 11192**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all*

*propositions appearing on the Nov. 7,
2006 ballot*

## § 11192. Enforcement of compact; powers

The courts, departments, agencies and officers of this State and its subdivisions shall enforce this compact and shall do all things appropriate to the effectuation of its purposes and intent which may be within their respective jurisdictions including but not limited to the making and submission of such reports as are required by the compact.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3199, § 1.)*

<General Materials (GM) - References,
Annotations, or Tables>

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97739 West's Ann.Cal.Penal Code § 11193**

WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11193. Hearings

Any inmate sentenced under California law
who is imprisoned in another state, pursuant to a
compact, shall be entitled to all hearings, within
120 days of the time and under the same
standards, which are normally accorded to
persons similarly sentenced who are confined in
institutions in this state. If the inmate consents in
writing, such hearings may be conducted by the
corresponding agencies or officials of such other
jurisdiction. The Board of Prison Terms or its
duly authorized representative is hereby
authorized and directed to hold such hearings as
may be requested by such other jurisdiction or
the inmate pursuant to this section or to Article
IV(f) of the Interstate Corrections Compact [FN1
] or of the Western Interstate Corrections
Compact. [FN2]

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3199, § 1. Amended by
Stats.1965, c. 238, p. 1221, § 19; Stats.1976, c. 667, p.
1653, § 4; Stats.1977, c. 165, p. 677, § 89, eff. June 29,
1977, operative July 1, 1977; Stats.1979, c. 255, p. 569, §
59.)*

[FN1] Section 11189.

[FN2] Section 11190.

<General Materials (GM) - References,
Annotations, or Tables>

### HISTORICAL NOTES

#### HISTORICAL AND STATUTORY
NOTES

##### 2000 Main Volume

As added, this section read:

"The Adult Authority, or the Board of Trustees,
California Institution for Women as appropriate, or its duly
authorized representative is hereby authorized and directed
to hold such hearings as may be requested by any other
party state pursuant to Article IV(f) of the Western
Interstate Corrections Compact."

The 1965 amendment substituted the "California
Women's Board of Terms and Parole" for the "Board of
Trustees, California Institution for Women".

\*97740 The 1976 amendment added the first two
sentences and substituted in the third sentence "such other
jurisdiction or the inmate pursuant to this section or to
Article IV(f) of the Interstate Corrections Compact or of
the Western Interstate Corrections Compact" for "any other
party state pursuant to Article IV(f) of the Western
Interstate Corrections Compact".

The 1977 amendment substituted in the third sentence
the "Community Release Board" for the "Adult Authority,
or the California Women's Board of Terms and Parole, as
appropriate".

The 1979 amendment substituted in the third sentence
"Board of Prison Terms" for "Community Release Board".

Legislative intent that Stats.1979, c. 255 only effect a
change of name from the community release board to the
board of prison terms, see Historical Note under Gov.C. §
11501.5.

### REFERENCES

#### CROSS REFERENCES

Board of prison terms, see Penal Code § 5075 et seq.
Transfer of prisoners, see Penal Code § 5080.

#### CODE OF REGULATIONS
REFERENCES

Documentation hearing, see 15 Cal. Code of Regs. § 2369.
Multijurisdiction prisoners located outside California;

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97741 West's Ann.Cal.Penal Code § 11194**

WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11194. Contracts

The Director of Corrections is hereby
empowered to enter into such contracts on behalf
of this state as may be appropriate to implement
the participation of this state in the Interstate
Corrections Compact [FN1] and the Western
Interstate Corrections Compact [FN2] pursuant
to Article III thereof. No such contract shall be
of any force or effect until approved by the
Director of General Services. Such contracts
may authorize confinement of inmates in, or
transfer of inmates from, only such institutions in
this state as are under the jurisdiction of the
Department of Corrections, and no such contract
may provide for transfer out of this state of any
person committed to the custody of the Director
of the Youth Authority. No such contract may
authorize the confinement of an inmate, who is
in the custody of the Director of Corrections, in
an institution of a state other than a state that is a
party to the Interstate Corrections Compact or to
the Western Interstate Corrections Compact. The
Director of Corrections, subject to the approval
of the Board of Prison Terms, must first
determine, on the basis of an inspection made by
his direction, that such institution of another state

is a suitable place for confinement of prisoners
committed to his custody before entering into a
contract permitting such confinement, and shall,
at least annually, redetermine the suitability of
such confinement. In determining the suitability
of such institution of another state, the director
shall assure himself that such institution
maintains standards of care and discipline not
incompatible with those of the State of California
and that all inmates therein are treated equitably,
regardless of race, religion, color, creed or
national origin.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3200, § 1. Amended by
Stats.1965, c. 371, p. 1588, § 253; Stats.1976, c. 667, p.
1653, § 6; Stats.1977, c. 165, p. 677, § 90, eff. June 29,
1977, operative July 1, 1977; Stats.1979, c. 255, p. 569, §
60.)*

**\*97742** [FN1] Section 11189.

[FN2] Section 11190.

<General Materials (GM) - References,
Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY
NOTES

#### 2000 Main Volume

The 1965 amendment substituted in the second sentence
the director of general services for the director of finance.

The 1976 amendment included "Interstate Corrections
Compact" in two places.

The 1977 amendment substituted in the fifth sentence
the approval of the "Community Release Board" (now the
Board of Prison Terms, see 1979 amendment note) for the
"Adult Authority or the California Women's Board of
Terms and Parole, as appropriate".

The 1979 amendment substituted in the fifth sentence
"Board of Prison Terms" for "Community Release Board".

Legislative intent that State.1979, c. 255 only effect a
change of name from the community release board to the
board of prison terms, see note under Gov.C. § 11501.5.

### REFERENCES

© 2007 Thomson/West. No claim to original U.S. Govt. works.

PENAL Sec. 11194.5, Contract; negotiation by county sheriff with officials of adjacent state;   **Page 1**
suitability of facilities and compatible standards of care and discipline; maintenance and expenses;
consent of prisoner; release

**\*97743 West's Ann.Cal.Penal Code § 11194.5**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

**§ 11194.5. Contract; negotiation by
county sheriff with officials of
adjacent state; suitability of facilities
and compatible standards of care
and discipline; maintenance and
expenses; consent of prisoner;
release**

(a) At the request of the board of supervisors
of any county that is adjacent to another state, the
county sheriff shall negotiate with the
appropriate officials of the adjacent state to
contract pursuant to the authority of Article III of
a compact executed under Section 11189 or
11190 for the confinement of county jail
prisoners in corresponding facilities located in

the adjacent state.  The sheriff shall determine
that the corresponding facilities are a suitable
place of confinement of prisoners submitted to
his or her custody and shall at least annually
redetermine the suitability as a precondition to
any contract under this section.  In determining
the suitability of the facilities of the other states,
the sheriff shall assure himself or herself that it
maintains standards of care and discipline not
incompatible with those of this state and that all
inmates therein are treated equally, regardless of
race, religion, color, creed, or national origin.

(b) With the approval of the board of
supervisors including agreement as to terms for
payments to be made for prisoner maintenance
and expenses, the county sheriff may enter into a
contract negotiated under subdivision (a).

(c) No prisoner may be transferred to an
institution outside of this state under this section
unless he or she has executed a written consent
to the transfer.

(d) Any person who was sent to another state
from a county under the authority of this section
shall be released within the territory of the
county unless the person, the sheriff of the
sending county, and the corresponding official or
agency of the other state shall agree upon release
in another place.  The county shall bear the cost
of transporting the person to the place of release.
**\*97744**

**CREDIT(S)**

*(Added by Stats.1986, c. 860, § 1, eff. Sept. 17, 1986.)*

<General Materials (GM) - References,
Annotations, or Tables>

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97745 West's Ann.Cal.Penal Code § 11195**

WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11195. Benefits of prisoner released from prison without state; release within territory of state, exception, transportation

Every prisoner released from a prison without this state to which he has been committed or transferred from this state pursuant to this article shall be entitled to the same benefits, including, but not limited to money and tools, as are allowed to a prisoner released from a prison in this state. Any person who has been sent to another state for confinement pursuant to this article shall be released within the territory of this state unless the person, the Director of Corrections of California, and the corresponding agency or official of the other state shall agree upon release in some other place. This state shall bear the cost of transporting the person to the place of release.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3200, § 1. Amended by Stats.1976, c. 667, p. 1654, § 7.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

#### 2000 Main Volume

The 1976 amendment substituted in the first sentence, "this article" for "the compact"; and added the second and third sentences.

### REFERENCES

### LIBRARY REFERENCES

#### 2000 Main Volume

Cal Digest of Official Reports 3d Series Penal and Correctional Institutions § 22.

### RESEARCH REFERENCES

Treatises and Practice Aids

3 Witkin Cal. Crim. L. 3d Punishment § 15, (S 15) Restrictions and Conditions.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97746 West's Ann.Cal.Penal Code § 11196**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11196. Severability

The provisions of this article shall be severable and if any phrase, clause, sentence, or provision of this article is declared to be unconstitutional or the applicability thereof to any state, agency, person or circumstance is held invalid, the constitutionality of this article and the applicability thereof to any other state, agency, person or circumstance shall, with respect to all severable matters, not be affected thereby. It is the legislative intent that the provisions of this article be reasonably and liberally construed.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3200, § 1.)*

<General Materials (GM) - References,
Annotations, or Tables>

### REFERENCES

#### LIBRARY REFERENCES

**2000 Main Volume**

Statutes ☞64.
Westlaw Topic No. 361.
C.J.S. Statutes § 92.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97747 West's Ann.Cal.Penal Code § 11197**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

**§   11197.   Competency   of   person
committed or transferred out of state
to   testify   in   state   prosecution;
counsel;     notice   and   interview;
compulsion to interview**

No person sentenced under California law
who is committed or transferred to an institution
outside of this state shall be competent to testify
for the prosecution in any criminal proceeding in
this state unless counsel for each defendant in
such proceeding is notified that the prosecution
may call the person as a witness and is given an
opportunity to interview the person no less than
10 days before the commencement of the
proceeding or, in the event the prosecution is not
at that time considering the possibility of using
such testimony, the notice and opportunity for
interview shall be given at the earliest possible
time. Nothing in this section shall be construed
to compel the prisoner to submit to such an
interview.

**CREDIT(S)**

*(Added by Stats.1976, c. 667, p. 1654, § 8.)*

<General Materials (GM) - References,
Annotations, or Tables>

**REFERENCES**

**LIBRARY REFERENCES**

**2000 Main Volume**

Criminal Law ⬤═629.
Westlaw Topic No. 110.
C.J.S. Criminal Law, §§ 451 to 453, 463 to 466.

**RESEARCH REFERENCES**

Treatises and Practice Aids

3 Witkin Cal. Crim. L. 3d Punishment § 15, (S 15)
Restrictions and Conditions.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97748 West's Ann.Cal.Penal Code § 11198**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11198. Criminal commitment of person sentenced under authority outside of California

(a) Except as authorized by California statute, no city, county, city and county, or private entity shall cause to be brought into, housed in, confined in, or detained in this state any person sentenced to serve a criminal commitment under the authority of any jurisdiction outside of California.

(b) It is the intent of the Legislature that this act shall neither prohibit nor authorize the confinement of federal prisoners in this state.

### CREDIT(S)

*(Added by Stats.1999, c. 707 (A.B.1222), § 2.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

#### 2000 Main Volume

Section 1 of Stats.1999, c. 707 (A.B.1222), provides:

"(a) The Legislature hereby finds and declares that this act, by ensuring continued public jurisdiction over correctional facilities, is necessary for the protection of the public safety of California residents and applies equally to both local and out-of-state private entities.

"(b) The Legislature further finds and declares that California has a legitimate interest in reserving, as exclusive unto itself, exercise of its sovereign power to recognize the authority of any jurisdiction, outside of this state, to enforce the housing, confinement, or detention of any person within the borders of California."

### REFERENCES

### RESEARCH REFERENCES

Encyclopedias

CA Jur. 3d Penal and Correctional Institutions § 33, Federal Prisoners.

Treatises and Practice Aids

3 Witkin Cal. Crim. L. 3d Punishment § 14, (S 14) Adoption and Nature of Compacts.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

# EXHIBIT B

# EXHIBIT B

State of California                                                    Department of Corrections and Rehabilitation

# Memorandum

ate    :    February 2, 2007

To     :    Associate Directors – Division of Adult Institutions
            Regional Medical Directors
            Regional Administrators, Division of Correctional Health Care Services
            Wardens
            Health Care Managers
            Classification Staff Representatives
            Classification and Parole Representatives
            Correctional Counselor IIIs-Reception Centers
            Correctional Case Records Manager

Subject:    CALIFORNIA OUT-OF-STATE CORRECTIONAL FACILITY PROGRAM, PHASE III

On October 31, 2006, the California Department of Corrections and Rehabilitation (CDCR) implemented Phase II of the California Out-of-State Correctional Facility (COCF) Program. Despite the enormous effort of interviewing every potential candidate for voluntary placement, insufficient numbers of inmates have volunteered for out-of-state placement. The purpose of this memorandum is to announce mandatory transfers in Phase III of the implementation of the COCF program and to instruct staff on the procedures for identification and transfer of inmates to out-of-state facilities. Please ensure a copy of this memorandum is provided for all Correctional Counselors (CC).

In accordance with the October 4, 2006, Governor's State of Emergency Proclamation, the CDCR Secretary is authorized to prioritize the mandatory transfer of inmates who meet the following criteria:

1. Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.
2. Inmates who are paroling outside of California.
3. Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.
4. Inmates who have family or supportive ties in a transfer state.
5. Other inmates as deemed appropriate by the CDCR Secretary.

The potential pool of eligible inmates who meet the criteria as set by the Governor's Emergency Proclamation shall be prioritized as follows:

1. Inmates who have active Immigration and Customs Enforcement (ICE) holds.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or Substance Abuse Treatment Program (SAP) assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending assignment.
      • Work Group/Privilege Group A1/A, pending assignment.
   D. All other inmates who have an active ICE hold.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 2

2. Inmates who have a potential ICE hold and have a conviction for an aggravated felony.
    A. The inmate has not had a visit in the last two years as reflected by the visiting records.
    B. The inmate has not had a visit in the last year as reflected by the visiting records.
    C. The inmate is not currently in a work, education, vocation, or SAP assignment.
        • Work Group/Privilege Group C/C.
        • Work Group/Privilege Group A2/B, pending job assignment.
        • Work Group/Privilege Group A1/A, pending job assignment.
    D. All other inmates who have a potential ICE hold and have a conviction for an aggravated felony.
3. Inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
    A. The inmate has not had a visit in the last two years as reflected by the visiting records.
    B. The inmate has not had a visit in the last year as reflected by the visiting records.
    C. The inmate is not currently in a work, education, vocation, or SAP assignment.
        • Work Group/Privilege Group C/C.
        • Work Group/Privilege Group A2/B, pending job assignment.
        • Work Group/Privilege Group A1/A, pending job assignment.
    D. All other inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
4. Inmates who were born in the United States or inmates who are naturalized citizens.
    A. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
    B. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.
    C. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
    D. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.

## MINIMUM CUSTODY NOTIFICATION

Inmates who currently have minimum custody or eligible for reduction to minimum custody are not eligible for involuntary transfer out of state; this includes inmates with an active or potential ICE hold. The Wardens are to ensure the affected inmates are aware of this decision. To attempt to eliminate the potential risk of flight, please advise the inmates and provide them with the English (Attachment A) or Spanish (Attachment B) handout which notifies the inmate that he is not subject to involuntary out-of-state transfer.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 3

## PHASE III PROCESS

Prior to implementing the Phase II mass screening of the potentially eligible population, the Classification and Parole Representative (C&PR) and the previously trained CC-III or CC-II provided training to all caseload carrying CCs on the screening process. The inmates who were identified as eligible, but did not volunteer pursuant to the Phase II mass screening are the population to be further screened at this point for placement. However, staff will continue to pursue voluntary placements as outlined in the Phase II memorandum.

The following is the Phase III step-by-step process for screening and the mandatory transferring of inmates into the COCF Program.

### Armstrong and Clark Class Members

Inmates who have been identified as qualifying for the Disability Placement Program (DPP) and/or Developmental Disability Program (DDP) shall not be involuntarily transferred to an out-of-state facility at this time.

### Classification Section

Inmates who volunteer to participate in the COCF Program shall be processed in accordance with the October 31, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II* and the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

The following provides direction on the mandatory placement process:

1. The Wardens will be provided an Activation Schedule and a list of inmates, using the criteria established by the Governor's proclamation (see page one), who are potentially eligible for the mandatory COCF Program for involuntary transfer in a subsequent memorandum.
2. The Warden shall ensure the lists are provided to the CC-Is or caseload carrying CC-IIs whose caseload includes identified potential COCF inmates.
3. The CC shall screen the Central Files (C-File) of the inmates who appear on the potentially eligible screening list to determine COCF eligibility.
4. The CC shall review the C-file for the presence of the pre-formatted CDC Form 128-B, *Chrono-General*, generated during the Phase II review process.
   - The CC shall ensure the eligibility status on the pre-formatted CDC Form 128-B has not changed. If the C-file does not contain a pre-formatted CDC Form 128-B or the current pre-formatted CDC Form 128-B is inaccurate, the CC shall generate a new pre-formatted CDC Form 128-B.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 4

- If the inmate is screened "Eligible", the CC shall mark which facilities the inmate may be housed.
- The CC shall forward the newly generated CDC Form 128-B to the C&PR.

5. The CC shall complete the pre-formatted CDC Form 128B, *Medical/Dental/Psychiatric Referral*, for all eligible screened inmates requesting a medical/dental/psychiatric evaluation for participation in the program.

- The CC shall document on the pre-formatted CDC Form 128B, any indication of mental health concerns notated in the Probation Officer's Report (POR), psychological reports for the court or Board of Parole Hearings, confidential and non-confidential psychiatric reports to include Parole Out-Patient Clinic reports, Criminal Identification and Information (CI&I), or Federal Bureau of Investigations (FBI) Rap Sheet.
- The C&PR or designee shall fax copies of all completed preformatted CDC Form 128B, *Medical/Dental/Psychiatric Referrals*, to Facility Captain (FC) David Higginbotham at (661) 863-6717.

6. The CC shall interview the potentially eligible COCF inmate.

- The CC shall ensure the identified potential COCF inmate is notified that he is being reviewed for mandatory transfer.
- The CC shall inform the inmate of his right to attorney consultation prior to Institution Classification Committee (ICC).
  - o The attorney may be of the inmate's choosing at his expense, or he may utilize the McGeorge School of Law Institute for Administrative Justice.
  - o The CC shall notify the C&PR or designee if an inmate requests legal consultation prior to ICC. The C&PR or designee shall arrange for the attorney consultation.
  - o The C&PR shall e-mail the list of inmates who have requested attorney consultation to CC-III Milliner at Phyllis.Milliner@cdcr.ca.gov.
  - o The COCF Unit shall notify the McGeorge School of Law Institute for Administrative Justice of the preliminary number of inmates requesting consultation pending medical clearance.
  - o The COCF Unit shall coordinate the attorney consultation with the institution for all medically cleared inmates.
- The CC shall provide the inmate with a CDC Form 128B-1, *Notice of Classification Hearing*, informing him that he will appear before ICC upon being medically / psychiatrically cleared.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 5

7. The C&PR or designee shall ensure a list with the inmate's name and number is submitted to Health Records personnel for COCF medical screening.
    • The C&PR or designee shall enter the "Eligible" screened inmates in the COCF Transfer Wait List.
8. Designated medical staff shall complete the Health Care Screening for Out-of-State Placement form in accordance with the Medical Section of the November 21, 2006; Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum*.
9. Upon receipt of the Health Care Screening for Out-of-State Placement form, the C&PR or designee shall enter the medical screening results in the COCF Transfer Wait List. If the inmate is medically eligible enter the date of the COCF Medical Screening form in the appropriate cell. If the inmate is medically rejected for out-of-state placement, enter "REJ" in the appropriate cell.
10. It is the responsibility of the Warden to ensure that inmates referred by the Registered Nurse (RN) for mental health screening are tracked and processed.
11. Inmates' cases, who are Medical / Mental Health cleared, shall be prepared for review by the ICC in accordance with current workload agreements.
12. The ICC shall review the case and recommend out-of-state placement for eligible inmates.
    • The ICC shall review the Automated Visiting Information System (AVIS) print out to validate the inmate's visiting status.
    • The ICC shall ensure inmates who are recommended for out-of-state placement are Medical / Mental Health cleared.
    • The ICC shall record the classification committee's actions on a pre-formatted CDC Form 128G, *Chrono – Classification*.
    • The call sheet shall be given to the C&PR.
13. The C&PR shall ensure an ICC recommended inmate is updated in the COCF Transfer Wait List. The C&PR shall e-mail the COCF Transfer Wait List and the pre-formatted CDC Form 128G to CC-III Milliner at Phyllis.Milliner@cdcr.ca.gov.
14. The COCF Unit shall notify the C&PR of which cases need to be ready for Classification Staff Representative (CSR) review.
15. The C&PR shall ensure the cases are presented to a CSR for out-of-state transfer consideration.
    • The C&PR shall ensure the case is ready and all required documentation is in the C-File prior to scheduling the CSR review.
    • The COCF Unit shall advise the Classification Services Unit (CSU) of the cases pending CSR review.
16. The CSR shall review the C-File and all supporting documentation of cases referred for transfer to the COCF Program.
17. The CSR shall ensure all required documentation has been completed and that the inmate meets COCF eligibility.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 6

18. The CSR shall complete the CDC Form 840, *CDC Reclassification Score Sheet*. The CDC Form 840 shall have all appropriate fields completed.
19. The C&PR or designee shall ensure the inmate receives a copy of the CDC Form 128G, *Endorsement Chrono*, by the next business day after the CSR action.
    • The institution shall be required to provide proof of practice that the inmate received his copy of the endorsement CDC Form 128G.
20. The C&PR shall ensure the endorsement information is entered into the COCF Transfer Wait List. The C&PR shall e-mail their institution's completed COCF Transfer Wait List to CC-III Milliner at Phyllis.Milliner@cdcr.ca.gov.
21. The C&PR shall fax endorsed inmates' CDC Forms 812, 812C, and the endorsement CDC Form 128G to CC-II Vanessa Miller, at (916) 323-1752.
22. The C&PR shall coordinate with the Correctional Case Records Manager (CCRM), Education Department, and Visiting to complete the Field File.
23. The C&PR shall coordinate with the CCRM to send the C-File to the COCF Records Office after the inmate has transferred from their facility.
24. The C&PR shall coordinate with the medical department to ensure the Unit Health Record (UHR) is sent to the HUB facility. The C&PR at the HUB facility shall ensure the UHR is sent overnight mail to the COCF Records Office upon the inmate's transfer to the out-of-state facility.

Reception Center Processing

The Reception Center (RC) Processing instructions are addressed in the October 31, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II*.

Inmates undergoing the RC processing, who have an active or potential ICE hold, shall be transferred to a receiving institution upon completion. The receiving institution shall evaluate the inmate for potential local ties utilizing the visiting records or any other official documentation. Potentially eligible inmates shall be processed in accordance with this memorandum.

Appeals Section

The CCR, Title 15, Subsection 3084.1(a) states in part, "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Inmates who are being transferred out-of-state involuntarily shall be allowed to appeal the transfer. Reasonable accommodation for effective communication shall be afforded inmates with disabilities. No inmate shall be transferred to an out-of-state facility prior to resolution of his second level appeal.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 7

If an inmate appeals his transfer to an out-of-state facility, the first level of appeal shall be waived. The institution shall be responsible for completing the second level response within 5 working days. If the COCF appeal process proves to be burdensome to any specific institution, the institution shall contact their Associate Director to discuss resource needs to ensure compliance.

If an inmate is dissatisfied with the second level response, the appellant may resubmit the appeal to the appeals coordinator who shall fax the documentation to the chief, inmate appeals for a third level review which shall be completed within five working days. The necessary documentation shall include, but is not limited to the CDC Form 602, *Inmate/Parolee Appeal Form*; the ICC CDC Form 128G; the CSR Endorsement CDC Form 128G; the CDC Form 850A, *Detainer Summary-United States Immigration and Naturalization Services (USINS)*; and the Automated Visiting Information System (AVIS) printout.

The second and/or third level appeal shall be returned to the appellant with a written response stating the appeal issue and reasons for the decision. Upon receipt of the completed second level appeal, the C&PR shall notify the COCF Unit if the inmate's appeal has been granted or denied. Additionally, the COCF Unit shall be immediately notified if an appeal is granted at the third level, requiring that the inmate be removed from the transfer list or returned to California.

### Sending Institution's Case Records Section

The Sending Institution's Case Records instructions are addressed in the October 31, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II* and the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

### California Out-of-State Correctional Facility Records Office

The California Out-of-State Correctional Facility Records Office instructions are addressed in the October 31, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II* and the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

### Medical Section

The Medical Section instructions are addressed in the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 8


## Transportation Section

The Transportation Section instructions are addressed in the October 18, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase I.*

## Property

The Property Section instructions are addressed in the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

- If you have any questions concerning the COCF, please contact Terri McDonald, Chief Deputy Administrator (A), COCF, at (916) 327-B375, or via e-mail at Terri.McDonald@cdcr.ca.gov.
- Classification questions should be directed to Lydia Romero, Associate Warden, COCF, at (916) 323-1776, or via e-mail at Lydia.Romero@cdcr.ca.gov.
- Case Records questions should be directed to Janet Rodriguez, Chief, Case Records Services (CRS), at (916) 324-2242, or via e-mail at Janet.Rodriguez@cdcr.ca.gov.
- Transportation questions should be directed to Jeff Macomber, Chief, Transportation Unit, at (916) 322-8729, or via e-mail at Jeff.Macomber@cdcr.ca.gov.
- Medical questions should be directed to Tim Rougeux, Project Director, DCHCS, at (916) 322-2278, or via e-mail at Tim.Rougeux@cdcr.ca.gov.


SCOTT KERNAN
Director
Division of Adult Institutions

Attachments

cc: Kingston Prunty        Dave Runnels          Bernard Warner
    Peter Farber-Szekrenyi  Tim Virga             Richard Kirkland
    Kathleen Keeshen        Thomas Hoffman        Lea Ann Chrones
    Kathleen Dickinson      Ombudsman's Office    Terri McDonald
    Janet Rodriguez         Jeff Macomber         Lydia Romero
    Rich Hawkins            Patricia Miller       Nola Grannis

# EXHIBIT C

# EXHIBIT C

AMENDED PENAL CODE SECTION 11191

Amended Per AB 900 (eff. May 2007)
Existing Code renumbered as paragraph
(a); added paragraphs (b) and (c)
~~Strike-through~~ = deletions
*Script* = added language


11191.  (a)  Any court or other agency or officer of this
state having power to commit or transfer an inmate (as defined in
Article II (d) of the Interstate Corrections Compact or of the
Western Interstate Corrections Compact) to any institution for
confinement may commit or transfer ~~such~~ *that* inmate to any
institution within or without this state if this state has
entered into a contract or contracts for the confinement of
inmates in ~~said~~ *that* institution pursuant to Article III of
the Interstate Corrections Compact or of the Western Interstate
Corrections Compact, ~~but no inmate sentenced under California law~~
~~may be committed or transferred to an institution outside of this~~
~~state, unless he has executed a written consent to the transfer.~~
The inmate shall have the right to a private consultation with an
attorney of his choice, or with a public defender if the inmate
cannot afford counsel, concerning his rights and obligations
under this section, and shall be informed of ~~such right~~ *those*
*rights* prior to executing the written consent.  At any time
more than five years after the transfer, the inmate shall be
entitled to revoke his consent and to transfer to an institution
in this state.  In ~~such cases~~ *which case*, the transfer shall
occur within the next 30 days.

*(b)  Notwithstanding subdivision (a), no inmate with serious*
*medical or mental health conditions, as determined by the Plata*
*Receiver, or an inmate in the mental health delivery system*
*at the Enhanced Outpatient Program level of care or higher may*
*be committed or transferred to an institution outside of this*
*state unless he has executed a written consent to the transfer.*

*(c)  This section shall remain in effect only until July 1,*
*2011, or until such time as the Department of Corrections and*
*Rehabilitation has replaced "temporary beds," as defined in*
*paragraph (3) of subdivision (a) of Section 15819.34 of the*
*Government Code, whichever is sooner, and as of January 1, 2012,*
*shall be repealed, unless a later enacted statute deletes or*
*extends that date.*

# EXHIBIT D

# EXHIBIT D

STATE OF CALIFORNIA
CORRECTIONAL TRAINING FACILITY

DEPARTMENT OF CORRECTIONS
INMATE APPEALS SCREENING FORM

*** YOUR APPEAL IS BEING HELD FOR THE FOLLOWING REASON(S) ***

| Name | CDC Number | Housing | Unit | Category |
|------|-----------|---------|------|----------|
| CENTEBONE | J-17051 | RB-201L | UNIT V | COCF 15-9 |

1. **Your Inmate/Parolee Form (CDC-602) does not have the proper documents needed for processing, per CCR 3084. CTF Appeals Office will hold your Inmate Appeal and will be helping you collect the below listed documents. This Screen Out Notice will serve as a notice that your Appeal has been received.**

   a. ☒ CDC 128C Medical Chrono
   b. ☒ CDC 128G ICC Chrono
   c. ☒ CDC 128G CSR Chrono
   d. ☒ OTHER:**CDC 840**

2. **The Appeals Office will notify you once we have all the needed documents and begin processing Appeal as an Emergency 2nd Level Appeal Response.**

3. **Present this form and attached documents to your assigned Counselor at ICC, if/once you are notified of CSR endorsement.**

4. **The Appeals Office will also be assisting you in expediting a 3rd Level Appeal Response.**

**P. Santiago / P. G. Dennis**
Appeals Coordinators

This screening decision may not be appealed unless you allege the above reason is inaccurate.

EMERGENCY APPEAL PER 15 CCR §3084.7 -- Transfer poses irreparable harm.

STATE OF CALIFORNIA                                                                          DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**         Location:   Institution/Parole Region        Log No.                    Category
**APPEAL FORM**                        1. _____                   1. _____             15-9
CDC 602 (12/87)                        2. _____                   2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: ___On 3/18/08, I was informed by C.C.I. Robinson that I am being considered

for an out-of-state transfer.  I have on-going litigation needs calling for extensive

research of California state law and access to the courts.  As such, I need full access

to the California law collection as found in the facilities within the state.  [¶]  It

is well-settled that the sending state authorities have the responsibility for providing

state legal materials to their prisoners incarcerated in out-of-state facilities.  (See

Boyd v. Wood, 52 F.3d 820 (CA9 1995); Clayton v. Tansy, 26 F.3d 980, 982 (CA10 1993);

Rich v. Zitnay, 644 F.2d 41, 43 (CA1 1981).)  It is equally well-settled that a California

If you need more space, attach one additional sheet.          (Continued on Attached Additional Page.)

B. Action Requested: ___That the Administration provide me with: 1) A Declaration, signed under the

penalty of perjury, assuring me that each of the out-of-state facilities that I may be

involuntarily transferred to is complying with the Gilmore v. Lynch consent decree; and,

2) A Certificate of Compliance from each of the out-of-state facilities to that effect.

Inmate/Parolee Signature: _James Centobene_                    Date Submitted: 3/24/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____                         Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed                 CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

RECEIVED
MAR 26 2008
CTF APPEALS

Centobene, J-17051, RB-201L, Continued from 602, Paragraph "A"

state prisoner housed out-of-state is entitled to the same rights and benefits he would
have received in California.  (Penal Code §11189, Art. IV(e).)

Accordingly, I am entitled to be housed in an out-of-state facility which meets
my legal needs.  In short, I am entitled to be housed in an out-of-state facility which
is in full compliance with the Gilmore v. Lynch consent decree governing the contents
of California state prison libraries.  (See Gilmore v. Lynch (N.D. Cal. Oct. 16, 1972),
No. 45878; reaffirmed in Gilmore v. California, 220 F.3d 987 (CA9 2000).)

The contents of the law library for a California state prisoner is found in the
Director's Operations Manual (DOM) §53060.11.  The collection of law books SHALL consist
of, but not necessarily be limited to, one complete and current set of each of the
following:

CODES       *   Deering's California Code Annotated or

            *   West's Annotated California Code.

            *   U.S. Code Service or

            *   U.S. Code Annotated.

DIGESTS     *   West's California Digest 1st and

            *   West's California Digest 2nd, or

            *   (McKinney's) California Digest Official Reports, 3rd Ser.

            *   Modern Federal Practice Digest.

            *   West's Federal Practice Digest 2nd.

            *   West's Federal Practice Digest 3rd.

            *   West's Federal Practice Digest 4th

REPORTERS   *   West's California Reporter, or

            *   California Official Reports 2nd Ser., Vol. 53-71, and

            *   California Official Reports, 3rd Ser., Vol. 1-Continuing, and

            *   California Appellate 2nd, Vol. 175-276, and

            *   California Appellate 3rd, Vol. 1-Continuing.

(Continued on Back Side per C.C.R. §3084.2(a)(1).)

REPORTERS
(Cont'd)

* Federal Reporter, Vol. 176-Continuing.

* Federal Supplement, Vol. 180-Continuing.

* U.S. Reports, Vol. 269-Continuing, or

* U.S. Supreme Court Reports, Lawyers Ed., Vol. 1-Continuing, or

* Supreme Court Reporter, Vol. 70-Continuing.

SHEPARDS

* U.S. Citations.

* Federal Citations.

* California Citations.

SECONDARY
SOURCES

* Appeals and Writs in Criminal Cases, 1982 with newest update.

* Ballentine's Law Dictionary, or

* Black's Law Dictionary, 6th Ed.

* California Criminal Law Procedures and Practices, 1986 with newest update.

* California Jurisprudence 3rd.

* Harvard Law Review Developments on Habeas Corpus 1970 Ed.

* Sokol, Handbook on Federal Habeas Corpus 2nd Ed.

* U.S. Law Week (Newspaper) with 1 year back-file.

* Witkin's California Criminal Law, 2nd Ed.

The contents of the law library as listed above is REQUIRED to be available and ON-HAND. The above collection does not include the contents of the circulating law library which is also to be available to California state prisoners. (See DOM §53060.14.)

Respectfully submitted,

James Centobene, J-17051

DATED: 3/24/08

# EXHIBIT E

# EXHIBIT E

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

| | Location: Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. _____ | 1. _____ | _____ |
| | 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

**A. Describe Problem:** I have been informed that I am being considered for an involuntary out-of-state transfer by the Administration pursuant to the Governor's Emergency Proclamation of October 4, 2006 regarding prison overcrowding. Under the Governor's Proclamation and its subsequent revisions -- and the recent amendment of Penal Code §11191 -- the California Department of Corrections and Rehabilitation (CDCR) is seeking to involuntarily transfer as many as 8,000 inmates to out-of-state facilities by March of 2009. [¶] However, the state of California, the Governor, and the CDCR are engaged in the practice of state-sponsored kidnapping in violation of Title 18, §§ 1201(a)(1), 1201(b) and 1201(c)

If you need more space, attach one additional sheet.     (Continued on Attached Additional Page)

**B. Action Requested:** That ONE: California and the Department of Corrections and Rehabilitation abandon its illegal practice of involuntarily transferring inmates to out-of-state facilities; and, TWO: The Administration cease and desists its attempts to involuntarily transfer me to an out-of-state facility.

Inmate/Parolee Signature: _____     Date Submitted: 4/10/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____     Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

Centobene, J-17051, RB-201L, Continued from Paragraph "A"

of the United States Code.

The recent amendment to Penal Code §11191 authorizing the involuntary transfer of inmates to out-of-state facilities does not supersede federal law.  Under the Supremacy Clause of U.S. Const., Art. VI, cl. 2, where there is a conflict between state and federal law -- federal law prevails!!!  As such, the federal kidnapping statutes which prohibit the involuntary transportation of persons across state lines for "ransom, or reward, or otherwise" (such as $63.00 per day, per person) is Supreme and overrides the California statute authorizing the involuntary transfer of state prisoners.

Furthermore, the amended Penal Code §11191 is part of the Interstate Corrections Compact (ICC) agreement.  (Penal Code §§ 11189 through 11198.)  As the newly amended Penal Code section seeks to materially and substantially alter the terms of the ICC agreement -- AND TO INFRINGE UPON THE SOVEREIGNTY OF THE UNITED STATES AND ITS LAWS -- the compact agreement must be approved by congress pursuant to Art. I, §10, cl. 3 of the U.S. Const.

In addition, the ICC agreements between California and participating states are mutual and mirrored contracts -- i.e., the terms of the contract are the same for both of the participating states; and properly reflected in the respective state's statutes.

As California has materially altered the ICC agreement, the contract is of null effect until it has been approved and ratified in its new form by the legislature of the participating state.  California's contract with a private entity within an allegedly participating state does not equal an express or implied approval, nor ratification, of the altered ICC agreement by that state's legislature; and California's involuntary transfer of state prisoners to out-of-state facilities encroaches upon the 11th Amendment sovereignty of the receiving state.

Finally, California's act of involuntarily transferring an inmate to an out-of-state facility is akin to a FORCED EXTRADITION and SUBJUGATION to the receiving state's jurisdiction.  Pursuant to the ICC agreement, an inmate is subject to the laws and jurisdiction of the receiving state.  (Penal Code §11189, Art. V; §11190, Art. V.) However, an involuntarily transferred inmate has not conceded, accepted, nor recognized the receiving state's jurisdiction.  In fact, the only reason the inmate is there is because he was kidnapped and placed within the receiving state's jurisdiction.

The means of "extraditing" an inmate to another state's jurisdiction is governed by the Interstate Agreement on Detainers (IAD) act.  (Title 18, United States Code, Appendix 2, §§ 1-9.)  An extradition is initiated by either request by an inmate or the prosecuting officer of the receiving state.  (18 U.S.C., App. 2, §2, Art.'s III and IV.)  As neither an inmate nor an officer of the receiving state has sought extradition, California inmates are not properly subject to the jurisdiction of the receiving state.

In fact, as the IAD act is an established federal law and approved by congress (see Cuyler v. Adams, 449 U.S. 433 (1981)), any act or contract by California which tends to circumvent its operation must be approved by Congress pursuant to Art. I, §10, cl. 3 of the U.S. Constitution.

In conclusion, California's involuntary transfer of inmates to out-of-state facilities is violative of the laws and constitution of the United States and may subject its violators to prosecution under the kidnapping provisions of the United States Code.

_____   Dated:  4/10/08
James Centobene

# EXHIBIT F

# EXHIBIT F

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | | 1. | |
| 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: __On March 24, 2008, I filed an appeal regarding what the contents of an__
out-of-state law library must contain for its California state prisoners.  (See attached.)
On April 1, 2008 (following the Cesar Chavez holiday), I received a screening form stating
that my 602 will be held pending the accumulation of various chronos.  (See attached.)
THIS IS WRONG!!!  There is NO REASON that my 602 cannot be processed.  I am not appealing
an endorsement, I am appealing the lack of a law library in these out-of-state facilities
which complies with California law.  YOU DO NOT NEED MY CHRONOS TO RULE ON THIS ISSUE!!!

If you need more space, attach one additional sheet.

B. Action Requested: __That my March 24, 2008 appeal regarding out-of-state facility law libraries__
be processed as it should have been when it was first submitted.

Inmate/Parolee Signature: _____    Date Submitted: 4/14/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

STATE OF CALIFORNIA
CORRECTIONAL TRAINING FACILITY

DEPARTMENT OF CORRECTIONS
INMATE APPEALS SCREENING FORM

### *** YOUR APPEAL IS BEING HELD FOR THE FOLLOWING REASON(S) ***

| Name | CDC Number | Housing | Unit | Category |
|------|-----------|---------|------|----------|
| CENTEBONE | J-17051 | RB-201L | UNIT V | COCF 15-9 |

1. Your Inmate/Parolee Form (CDC-602) does not have the proper documents needed for processing, per CCR 3084. CTF Appeals Office will hold your Inmate Appeal and will be helping you collect the below listed documents. This Screen Out Notice will serve as a notice that your Appeal has been received.

    a. ☒   CDC 128C Medical Chrono
    b. ☒   CDC 128G ICC Chrono
    c. ☒   CDC 128G CSR Chrono
    d. ☒   OTHER:**CDC 840**

2. The Appeals Office will notify you once we have all the needed documents and begin processing Appeal as an Emergency 2nd Level Appeal Response.

3. Present this form and attached documents to your assigned Counselor at ICC, if/once you are notified of CSR endorsement.

4. The Appeals Office will also be assisting you in expediting a 3rd Level Appeal Response.

---

P. Santiago / P. G. Dennis
Appeals Coordinators

EMERGENCY APPEAL PER 15 CCR §3084.7 -- Transfer poses irreparable harm.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location:  Institution/Parole Region          Log No.                    Category

1. _____      1. _____      15-9

2. _____      2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: ___ On 3/18/08, I was informed by C.C.I. Robinson that I am being considered for an out-of-state transfer. I have on-going litigation needs calling for extensive research of California state law and access to the courts. As such, I need full access to the California law collection as found in the facilities within the state.  [¶]  It is well-settled that the sending state authorities have the responsibility for providing state legal materials to their prisoners incarcerated in out-of-state facilities.  (See Boyd v. Wood, 52 F.3d 820 (CA9 1995); Clayton v. Tansy, 26 F.3d 980, 982 (CA10 1993); Rich v. Zitnay, 644 F.2d 41, 43 (CA1 1981).)  It is equally well-settled that a California

If you need more space, attach one additional sheet.          (Continued on Attached Additional Page.)

B. Action Requested: ___ That the Administration provide me with: 1) A Declaration, signed under the penalty of perjury, assuring me that each of the out-of-state facilities that I may be involuntarily transferred to is complying with the Gilmore v. Lynch consent decree; and, 2) A Certificate of Compliance from each of the out-of-state facilities to that effect.

Inmate/Parolee Signature: _James Centobene_          Date Submitted: 3/24/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim          CDC Appeal Number:

RECEIVED
MAR 26 2008
CTF APPEALS

Centobene, J-17051, RB-201L, Continued from 602, Paragraph "A"

state prisoner housed out-of-state is entitled to the same rights and benefits he would have received in California. (Penal Code §11189, Art. IV(e).)

Accordingly, I am entitled to be housed in an out-of-state facility which meets my legal needs. In short, I am entitled to be housed in an out-of-state facility which is in full compliance with the Gilmore v. Lynch consent decree governing the contents of California state prison libraries. (See Gilmore v. Lynch (N.D. Cal. Oct. 16, 1972), No. 45878; reaffirmed in Gilmore v. California, 220 F.3d 987 (CA9 2000).)

The contents of the law library for a California state prisoner is found in the Director's Operations Manual (DOM) §53060.11. The collection of law books SHALL consist of, but not necessarily be limited to, one complete and current set of each of the following:

| CODES | * | Deering's California Code Annotated or |
| | * | West's Annotated California Code. |
| | * | U.S. Code Service or |
| | * | U.S. Code Annotated. |
| DIGESTS | * | West's California Digest 1st and |
| | * | West's California Digest 2nd, or |
| | * | (McKinney's) California Digest Official Reports, 3rd Ser. |
| | * | Modern Federal Practice Digest. |
| | * | West's Federal Practice Digest 2nd. |
| | * | West's Federal Practice Digest 3rd. |
| | * | West's Federal Practice Digest 4th |
| REPORTERS | * | West's California Reporter, or |
| | * | California Official Reports 2nd Ser., Vol. 53-71, and |
| | * | California Official Reports, 3rd Ser., Vol. 1-Continuing, and |
| | * | California Appellate 2nd, Vol. 175-276, and |
| | * | California Appellate 3rd, Vol. 1-Continuing. |

(Continued on Back Side per C.C.R. §3084.2(a)(1).)

| | | |
|---|---|---|
| REPORTERS<br>(Cont'd) | * | Federal Reporter, Vol. 176-Continuing. |
| | * | Federal Supplement, Vol. 180-Continuing. |
| | * | U.S. Reports, Vol. 269-Continuing, or |
| | * | U.S. Supreme Court Reports, Lawyers Ed., Vol. 1-Continuing, or |
| | * | Supreme Court Reporter, Vol. 70-Continuing. |
| SHEPARDS | * | U.S. Citations. |
| | * | Federal Citations. |
| | * | California Citations. |
| SECONDARY<br>SOURCES | * | Appeals and Writs in Criminal Cases, 1982 with newest update. |
| | * | Ballentine's Law Dictionary, or |
| | * | Black's Law Dictionary, 6th Ed. |
| | * | California Criminal Law Procedures and Practices, 1986 with newest update. |
| | * | California Jurisprudence 3rd. |
| | * | Harvard Law Review Developments on Habeas Corpus 1970 Ed. |
| | * | Sokol, Handbook on Federal Habeas Corpus 2nd Ed. |
| | * | U.S. Law Week (Newspaper) with 1 year back-file. |
| | * | Witkin's California Criminal Law, 2nd Ed. |

The contents of the law library as listed above is REQUIRED to be available and ON-HAND. The above collection does not include the contents of the circulating law library which is also to be available to California state prisoners. (See DOM §53060.14.)

Respectfully submitted,

*[signature]*

James Centobene, J-17051

DATED: 3/24/08

# EXHIBIT G

# EXHIBIT G

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| | Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|---|
| | 1. | _____ | 1. _____ | _____ |
| | 2. | _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: ___ It appears that the Administration is continuing its pattern of retaliation and denial of access to the Inmate Appeal System for ANY appeal which appears to involve the Out-of-State Transfer Program. [¶] On April 2, 2008 I submitted an appeal regarding the Administration's attempt to transfer me out-of-state in an apparent retaliation for my use of the Inmate Appeal System. (See attached.) It has been over two weeks now and I still haven't received a Log Number or any other form of acknowledgment that my 602 Appeal has been received. [¶] In addition, even the fact that I am being considered for an out-of-state transfer just reeks of retaliation. According to the Governor's

If you need more space, attach one additional sheet.        (Continued on Attached Additional Page)

B. Action Requested: ___ That, **ONE:** My April 2, 2008 Inmate Appeal is acknowledged and processed -- and a Log Number issued; and, **TWO:** That this present appeal is acknowledged, processed, a Log Number issued and a decision reached on the merits; and, **THREE:** That the Administration cease and desists its attempts to involuntarily transfer me out-of-state.

Inmate/Parolee Signature: _____ Date Submitted: 4/15/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____ Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____ Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

Centobene, J-17051, RB-201L, Continued from Paragraph "A"

October 4, 2006 Emergency Proclamation, inmate selection for out-of-state transfers start with: First, inmates who have previously been deported, or are subject to deportation; Second, inmates who are paroling outside of California; and then Third (as applicable to me), inmates who have limited supportive ties in California as based on visitation records. (See attached Memorandum dated Feb. 2, 2007, p. 1.)

Among these groups of potentially eligible inmates, the criteria is prioritized as follows: First, those inmates with an active immigration hold; Second, those inmates with a potential immigration hold and an aggravated felony; Third, those inmates with a potential immigration hold that do not have an aggravated felony; and Fourth, those inmates born in the United States. (See Memorandum, pp. 1-2.)

Even then, among those inmates in the FOURTH GROUP to be considered, those inmates which DO NOT HAVE A JOB ASSIGNMENT are to be considered first. (See Memorandum, p. 2, No. 4.)

As of August 2000, with a population of approximately 161,000 inmates, there were a staggering 22,000 inmates with immigration holds placed on them. (See Forward, CA State Prisoners Handbook, 3rd Ed. (2001).) Add to this number, the vast number of inmates which DO NOT HAVE A JOB ASSIGNMENT and you have a tremendous pool of eligible inmates (easily exceeding 70,000 inmates) which must be considered before this Administration can even consider me.

However, this has not happened. At this time, I am the only inmate I know of who has a job and is still being considered for an out-of-state transfer. (Even if I'm not, that does not excuse the Administration and the CDCR from properly considering those higher priority inmates before me.)

As it stands now, it appears that the Administration has targeted me for transfer in retaliation for my use of the Inmate Appeal System. I have submitted three inmate appeals: One, challenging the state's coerced racial integration; the second challenging the illegal collection of "Use" taxes on inmate purchases; and the third challenging the arbitrary denial of visits to entire classes of inmates. -- Appeals which can impact the entire CDCR system.

After being asked by the Administration to withdraw my appeal, two days later I am told that I'm being considered for an out-of-state transfer -- ahead of the 70,000 other inmates who have a greater priority than myself.

The retaliation speaks for itself.

_James Centobene_    Dated: 4/15/08

James Centobene

STATE OF CALIFORNIA                                                                DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region        Log No.              Category

1. _____        1. _____

2. _____        2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: It appears that the Administration is retaliating against me for my use of the Inmate Appeal system in violation of the U.S. Constitution -- 1st, 8th and 14th Amendments. On 3/16/08, Sgt. Verdesoto interviewed me regarding a visiting 602. After informing me that my 602 would not be granted, Sgt. Verdesoto asked me if I wanted to withdraw my 602 and I declined. TWO DAYS LATER on 3/18/08, C.C.I. Robinson came to my cell door and told me that I am facing an involuntary out-of-state transfer.

If you need more space, attach one additional sheet.

B. Action Requested: That the Administration stops retaliating against me for my use of the Inmate Appeal system and cease and desists its attempts to involuntarily transfer me out-of-state.

Inmate/Parolee Signature: _____     Date Submitted: 4/2/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____     Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed     CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

State of California                                                     Department of Corrections and Rehabilitation

# Memorandum

ate    :    February 2, 2007

To     :    Associate Directors – Division of Adult Institutions
            Regional Medical Directors
            Regional Administrators, Division of Correctional Health Care Services
            Wardens
            Health Care Managers
            Classification Staff Representatives
            Classification and Parole Representatives
            Correctional Counselor IIIs-Reception Centers
            Correctional Case Records Manager

Subject:    CALIFORNIA OUT-OF-STATE CORRECTIONAL FACILITY PROGRAM, PHASE III

On October 31, 2006, the California Department of Corrections and Rehabilitation (CDCR) implemented Phase II of the California Out-of-State Correctional Facility (COCF) Program. Despite the enormous effort of interviewing every potential candidate for voluntary placement, insufficient numbers of inmates have volunteered for out-of-state placement. The purpose of this memorandum is to announce mandatory transfers in Phase III of the implementation of the COCF program and to instruct staff on the procedures for identification and transfer of inmates to out-of-state facilities. Please ensure a copy of this memorandum is provided for all Correctional Counselors (CC).

In accordance with the October 4, 2006, Governor's State of Emergency Proclamation, the CDCR Secretary is authorized to prioritize the mandatory transfer of inmates who meet the following criteria:

1. Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.
2. Inmates who are paroling outside of California.
3. Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.
4. Inmates who have family or supportive ties in a transfer state.
5. Other inmates as deemed appropriate by the CDCR Secretary.

The potential pool of eligible inmates who meet the criteria as set by the Governor's Emergency Proclamation shall be prioritized as follows:

1. Inmates who have active Immigration and Customs Enforcement (ICE) holds.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or Substance Abuse Treatment Program (SAP) assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending assignment.
      • Work Group/Privilege Group A1/A, pending assignment.
   D. All other inmates who have an active ICE hold.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 2

2. Inmates who have a potential ICE hold and have a conviction for an aggravated felony.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or SAP assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending job assignment.
      • Work Group/Privilege Group A1/A, pending job assignment.
   D. All other inmates who have a potential ICE hold and have a conviction for an aggravated felony.
3. Inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or SAP assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending job assignment.
      • Work Group/Privilege Group A1/A, pending job assignment.
   D. All other inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
4. Inmates who were born in the United States or inmates who are naturalized citizens.
   A. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
   D. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.

## MINIMUM CUSTODY NOTIFICATION

Inmates who currently have minimum custody or eligible for reduction to minimum custody are not eligible for involuntary transfer out of state; this includes inmates with an active or potential ICE hold. The Wardens are to ensure the affected inmates are aware of this decision. To attempt to eliminate the potential risk of flight, please advise the inmates and provide them with the English (Attachment A) or Spanish (Attachment B) handout which notifies the inmate that he is not subject to involuntary out-of-state transfer.

# EXHIBIT H

# EXHIBIT H

EMERGENCY APPEAL PER 15 CCR §3084.7 -- Transfer poses irreparable harm.

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. _____ | 1. _____ | _____ |
| | 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: _____ This Administration is denying every White and Northern Mexican inmate the ability to be free from arbitrary and retaliatory decision making procedures regarding out-of-state transfers in violation of the 8th and 14th Amendments of the U.S. Const. According to the Governor's Emergency Proclamation and the February 2, 2007 Memorandum issued by Director Scott Kernan, the Administration is to screen for eligible out-of-state transfer inmates based on the following criteria (given in order of priority):  First, those inmates with an active immigration hold; Second, those inmates with a potential immigration hold and an aggravated felony; Third, those inmates with a potential immigra-

If you need more space, attach one additional sheet.        (Continued on Attached Additional Page)

B. Action Requested: _____ **ONE:**  I am CREDITED with the two visits the Administration prevented me from having; **TWO:**  The Administration cease and desists its attempts to transfer me out-of-state; and, **THREE:** The Administration extend its consideration period for visits by the five months which they have been denied to all similarly situated inmates.

Inmate/Parolee Signature: _____    Date Submitted: 4/17/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

Centobene, J-17051, RB-201L, Continued from Paragraph "A"

tion hold that do not have an aggravated felony; and Fourth, those inmates born in the United States. (See attached Memorandum, pp. 1-2.)

In each category of inmates, the dominant factor used to determine whether an inmate is eligible for an out-of-state transfer is whether they have had a visit within the last year or two. (See Memorandum, pp. 1-2.) It is with regard to this most crucial factor, i.e., visits, that the Administration is rendering its arbitrary and retaliatory decisions.

Since November 28, 2007, in response to a stabbing incident and two separate riots between White and Northern Mexican inmates, all visits have been denied to these groups of inmates. While the Administration holds that the decision was made for "safety and security" purposes, nothing prevents the Administration from providing visits to White and Northern Mexican inmates on a rotating basis -- the same as was being done for Medical, Dental and Law Library access. As it stands now, the only inmates being denied visits are those inmates which had no involvement in the original incidents.

Now turning to the issue at hand -- i.e., the selection process for out-of-state eligible inmates -- this Administration is relying on the visiting records of potentially eligible inmates to decide whether or not to transfer an inmate out-of-state. After denying all visits to all White and Northern Mexican inmates for NEARLY FIVE MONTHS, the Administration now says they want to transfer those very same inmates out-of-state FOR NOT HAVING THE VISITS THE ADMINISTRATION PREVENTED!!! This is the most basest denial of fundamental due process and fair play as envisioned by the 14th Amendment of the U.S. Constitution.

Back in early December, 2007 (about two or three weeks before Christmas), I received a letter from my very close friend, John Williams, stating that he would like to come and visit me -- as a Christmas visit/present. Unfortunately, I had to tell him that I was on lockdown and that I was unable to visit with him.

Then nearly four months later on March 28, 2008, John writes me again and tells me that he would like to visit me. (See attached letter.) Again, I was forced to tell him that I am still on lockdown (even though I did nothing wrong) and unable to visit with him.

There is no doubt that the Administration's denial of visits to all White and Northern Mexican inmates was in retaliation for the actions of a relatively few inmates. It is equally well-settled that the suspension of all visits to White and Northern Mexican inmates was not pursuant to any disciplinary proceeding AND that the Administration could have provided those visits on a rotating basis; thus relieving any safety and security concerns.

Nonetheless, the Administration now seeks to compound that error by making a White or Northern Mexican inmate eligible for an out-of-state transfer based on the lack of visits which the Administration prevented. The retaliatory denial of visits has now become, by extension, a retaliatory out-of-state transfer (the fruit of the poisonous tree) in violation of the 8th Amendment of the U.S. Constitution and the denial of fundamental due process in violation of the 14th Amendment of the U.S. Constitution.

Dated: 4/17/08

James Centobene

Dear James  March 28 2008

I got your letter of March 23 today and I have ordered the goods from Walkenhorsts. Order #46723
Unfortunately it is probably too late to be counted in first quarter. SO!
I am concerned about your risk of transfer. I suppose I could reduce this by making a visit. But it really is hard for me. The journey is 1 ½ hours each way. But that is not the problem. It is the wait to be processed and the crowd on Sundays that would exhaust me. Is there any other day that visiting is allowed?
I am traveling to UK in May for three weeks. I will be home for June, July and August.
I do hope you will succeed in your appeal and that your fight to change segregation is successful. It will keep you very busy.

Do not worry about a check. Accept this parcel as a birthday gift. If you want another this year then you can send a check anytime. The total cost was $95.26.
Isopine conditioning shampoo was not available (out of stock).

Good luck   John

State of California                                          Department of Corrections and Rehabilitation

# Memorandum

Date    :    February 2, 2007

To      :    Associate Directors – Division of Adult Institutions
             Regional Medical Directors
             Regional Administrators, Division of Correctional Health Care Services
             Wardens
             Health Care Managers
             Classification Staff Representatives
             Classification and Parole Representatives
             Correctional Counselor IIIs-Reception Centers
             Correctional Case Records Manager

Subject:    CALIFORNIA OUT-OF-STATE CORRECTIONAL FACILITY PROGRAM, PHASE III

On October 31, 2006, the California Department of Corrections and Rehabilitation (CDCR) implemented Phase II of the California Out-of-State Correctional Facility (COCF) Program. Despite the enormous effort of interviewing every potential candidate for voluntary placement, insufficient numbers of inmates have volunteered for out-of-state placement. The purpose of this memorandum is to announce mandatory transfers in Phase III of the implementation of the COCF program and to instruct staff on the procedures for identification and transfer of inmates to out-of-state facilities. Please ensure a copy of this memorandum is provided for all Correctional Counselors (CC).

In accordance with the October 4, 2006, Governor's State of Emergency Proclamation, the CDCR Secretary is authorized to prioritize the mandatory transfer of inmates who meet the following criteria:

1. Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.
2. Inmates who are paroling outside of California.
3. Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.
4. Inmates who have family or supportive ties in a transfer state.
5. Other inmates as deemed appropriate by the CDCR Secretary.

The potential pool of eligible inmates who meet the criteria as set by the Governor's Emergency Proclamation shall be prioritized as follows:

1. Inmates who have active Immigration and Customs Enforcement (ICE) holds.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or Substance Abuse Treatment Program (SAP) assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending assignment.
      • Work Group/Privilege Group A1/A, pending assignment.
   D. All other inmates who have an active ICE hold.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 2

2. Inmates who have a potential ICE hold and have a conviction for an aggravated felony.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or SAP assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending job assignment.
      • Work Group/Privilege Group A1/A, pending job assignment.
   D. All other inmates who have a potential ICE hold and have a conviction for an aggravated felony.
3. Inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or SAP assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending job assignment.
      • Work Group/Privilege Group A1/A, pending job assignment.
   D. All other inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
4. Inmates who were born in the United States or inmates who are naturalized citizens.
   A. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
   D. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.

MINIMUM CUSTODY NOTIFICATION

Inmates who currently have minimum custody or eligible for reduction to minimum custody are not eligible for involuntary transfer out of state; this includes inmates with an active or potential ICE hold. The Wardens are to ensure the affected inmates are aware of this decision. To attempt to eliminate the potential risk of flight, please advise the inmates and provide them with the English (Attachment A) or Spanish (Attachment B) handout which notifies the inmate that he is not subject to involuntary out-of-state transfer.

# EXHIBIT I

# EXHIBIT I

Date: April 10, 2008

To: DUNWORTH        F12115        RB-248L

Subject: **SECOND LEVEL APPEAL RESPONSE LOG # CTF-S-08-01349**

**ISSUE: COCF TRANSFER**

The Appellant requests to be excluded from out-of-state transfer for the following reasons:

☐ Inaccurate/missing or new information        ☐ Program/Assignments

☐ Subject to Armstrong, Coleman or Clark        ☐ Visits

☐ Medical/Mental Health concerns        ☒ Other **Family/Legality**

The appellant was interviewed on **April 9, 2008** by **P. Santiago, Appeals Coordinator.** At that time he provided the following information in support of his argument that he should not be transferred and/or that the information contained on his CDC 128 G (Referral chrono) dated **3/28/08** was incomplete or in error, and/or that his case factors have changed since his referral such that he is now excluded. The inmate states that: **My Mother passed away (2/29/08) and I need to be in California to help settle her estate with my Brothers. It is cruel and unusual punishment on my Family to transfer me Out-of-State, all my family ties are here in California.**

**DOES THE INMATE REQUIRE AN ACCOMMODATION TO ESTABLISH EFFECTIVE COMMUNICATION?** (check one)
YES ☐ NO ☒. If "yes", note the accommodation provided:

DISCUSSION: *Appellant has not established that there is incomplete/in error/or that his case factors have changed since his referral dated April 3, 2008. The appellant does meet the current Phase III criteria.*

After consideration of the appellant's position and the evidence presented, a review was conducted to determine whether the documentation and information provided supports the transfer referral or might exclude the appellant from transfer. A determination has been made that the appellant:

☒ **is not** excluded from out-of-state transfer.

☐ **may be** excluded from out of state transfer based upon further review for the following reason(s):

☐ Refer to **Classification staff**        ☐ Refer to **Case Records**

☐ Refer to **Health Care staff**        ☐ Refer to **Visiting**

☐ Refer to **Mental Health** Services        ☐ Other

**DECISION:** Based upon the above information the appeal is:

☒ **Denied:** The appellant has failed to demonstrate why he should be excluded from out of state transfer. A review of the information currently available indicates that the appellant is eligible for transfer and that the transfer does not pose a threat to his safety.
*Denial of this appeal at the 2nd level will not prevent transfer pending 3rd level review. However, if the appellant wishes to appeal to 3rd level, they should fill out Section "H" of the CDC Form 602 (Inmate Appeal Form) and immediately return to the Appeals Coordinator for emergency processing.*

☐ **Partially Granted:** Transfer will be postponed pending review by staff. If an exclusionary factor is identified during the review, the case will be returned to ICC for re-referral to the CSR. If no exclusionary factor is identified, or if subsequent to review eligibility is reaffirmed by ICC and/or the CSR, the appellant will be notified as soon as their eligibility for transfer is restored. The appellant may then send his appeal to the Appeals Coordinator for emergency processing at the Director's Level.

Warden Signature _____        Date 4/10/08

CTF Institution



James Centobene, J-17051
P.O. Box 705, RB-201L
CTF - North Facility
Soledad, CA 93960-0705

CONFIDENTIAL
LEGAL MAIL

TO

Clerk's Office of the
United State District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102