1 | James Centobene, J-17051
P.O. Box 705, RB-201L
2 | CTF - North Facility
Soledad, CA  93960-0705
3
Telephone: N/A
4
Plaintiff, Propria Persona
5

6 | **FILED**

7 | MAY **2 9** 2008

8 | UNITED STATES DISTRICT **RICHARD W. WIEKING**
CLERK, U.S. DISTRICT COURT
9 | NORTHERN DISTRICT OF CALIFORNIA NORTHERN DISTRICT OF CALIFORNIA

10

11 | JAMES CENTOBENE,                    )    No. _____

12 |          Plaintiff,                )              **WHA**

13 |    v.                              )    **(PR)**
                                        )    PLAINTIFF'S MOTION FOR A
14 | ARNOLD SCHWARZENEGGER, Governor,    )    TEMPORARY RESTRAINING ORDER
State of California; JAMES          )    AND PRELIMINARY INJUNCTION;
15 | TILTON, Secretary, Dept. of        )    DECLARATION; MEMORANDUM OF
Corrections and Rehabilitation;     )    POINTS AND AUTHORITIES;
16 | SCOTT KERNAN, Director, Division    )    AND, EXHIBITS
of Adult Institutions, Dept. of     )
17 | Corrections and Rehabilitation;    )
TERRI McDONALD, Chief Deputy        )
18 | Administrator, California Out-     )
of-State Correctional Facilities    )
19 | Unit, Dept. of Corrections and    )
Rehabilitation; BEN CURRY,          )
20 | Warden, Correctional Training      )
Facility; and, DOES 1 through 5,    )
21 |                                     )
         Defendants.                 )
22 | _____ )

23

24 |    Plaintiff, James Centobene ("Centobene"), hereby moves the

25 | Court for a Temporary Restraining Order ("TRO") and a Preliminary

26 | Injunction enjoining Defendants JAMES TILTON, SCOTT KERNAN, TERRI

27 | McDONALD and BEN CURRY from transferring Plaintiff Centobene

28 | either out-of-state, inter-institution, inter-facility, or inter-

1   housing unit (bed move), unless consented to by Centobene, for
2   the duration of this action.

3        A TRO/Preliminary Injunction is necessary to maintain the
4   status quo and to prevent the irreparable harm that a transfer
5   poses to Centobene. An out-of-state transfer, as alleged in the
6   accompanying complaint, violates numerous federal constitutional
7   and statutory provisions and is, in itself, irreparable harm.
8   In addition, an out-of-state transfer will result in the loss of
9   access to California state case law, directories and other legal
10  guides normally found in California state law libraries --
11  preventing Centobene from completing and submitting his state
12  habeas corpus petition. Any other transfers will result in
13  delays in the prosecution of this action, loss of legal property,
14  loss of access to a law library, potential property damage and
15  potential delays in the return of Centobene's property.

16       Furthermore, due to the high level of public interest this
17  case may generate, justice is best served by maintaining the
18  status quo of the parties and ensuring that there is no foul play
19  on the part of the defendants. Accordingly, a TRO/Preliminary
20  Injunction should issue.

21       This motion is based on this notice of motion, Centobene's
22  declaration, the memorandum of points and authorities, and the
23  exhibits attached hereto.

24  DATED: *May 22, 2008*

25                                    Respectfully submitted,

26
27
28                                    James Centobene,
                                      Plaintiff, Propria Persona

                                   2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF PLAINTIFF

I, James Centobene, declare as follows:

1.   I am the plaintiff in the attached action.   I make this declaration in support of my motion for a Temporary Restraining Order ("TRO") and a Preliminary Injunction enjoining defendants from transferring me out-of-state pursuant to voided and breached contracts between the State of California and The GEO Group ("GEO") and the Correctional Corporation of America ("CCA"). The operation of these contracts also violates other federal constitutional and statutory provisions.

2.   I also ask that the TRO and Preliminary Injunction include, not only out-of-state transfers, but all transfers that may be imposed -- whether out-of-state, inter-institution, inter-facility or inter-housing unit (bed moves) -- unless I consent to it, throughout the remainder of these proceedings. This expansion of the TRO/Preliminary Injunction is necessary to maintain the status quo of the parties and to prevent the potential loss of my legal property, delays in the prosecution of this action and potential retaliation by the defendants. (E.g., "bus therapy;" where an inmate is repeatedly transferred while his property never quite catches up to him.)

General Allegations

3.   As alleged in the complaint, on October 4, 2006, Governor Schwarzenegger issued an Emergency Proclamation and declared that all 33 prisons of the California Department of

3.

1   Corrections and Rehabilitation ("CDCR") were at or above maximum

2   operational capacity and posed a serious threat to the health

3   and safety of both prisoners and prison staff.  To address this

4   overcrowding, the Governor ordered CDCR officials to enter into

5   contracts to transfer adult California prisoners to out-of-state

6   prisons operated by private companies and/or state and county

7   agencies.

8       4.   On or about October 19, 2006, the CDCR entered into two

9   contracts.   The first entitled "Offender Relocation/Housing -

10  Agreement between State of California and The GEO Group, Inc."

11  The  second  entitled  "Offender  Relocation/Housing  -  Agreement

12  between  State  of  California  and  Corrections  Corporation  of

13  America."  These two contracts provided that inmates currently

14  incarcerated by the CDCR may be transferred and housed in private

15  correctional  facilities  ran  by  the  GEO  and  CCA  in  Indiana,

16  Arizona, Mississippi, Oklahoma or Tennessee.

17      5.   On October 31, 2006, the CDCR implemented Phase II

18  of  its  California  Out-of-State  Correctional  Facility  ("COCF")

19  program and started transferring volunteer California prisoners

20  to out-of-state facilities.  (Memorandum, p. 1, Ex. A.)

21      6.   On February 2, 2007, the Director of the Division of

22  Adult Institutions issued a memorandum implementing Phase III of

23  the COCF program.   Under Phase III, the CDCR started mandatory,

24  INVOLUNTARY,  transfers  of  California  prisoners  to  out-of-state

25  facilities.  (Memorandum, p. 1, Ex. A.)

26      7.   On February 20, 2007, the Sacramento County Superior

27  Court  ruled  that  the  Governor  had  "acted  in  excess  of  his

28  authority in issuing the Proclamation of Emergency" and issued

4.

1 an injunction forbidding the CDCR from transferring prisoners

2 out-of-state. (California Correctional Peace Officers' Assoc.

3 v. Schwarzenegger (Sac. Sup. Ct.) No. 06CS01568, Order filed

4 February 20, 2007.)

5    8.   On February 22, 2007, the California Legislature

6 proposed Assembly Bill 900 ("AB 900"). AB 900 proposed, inter

7 alia, to amend Penal Code § 11191, striking the section providing

8 that no inmate may be transferred to an out-of-state facility

9 unless he has executed a written consent to the transfer.

10 (Amended Penal Code § 11191, Ex. B.) AB 900 was passed, signed

11 into law and became effective on May 3, 2007.

12    9.   On or about July 23, 2007, the California Court of

13 Appeal for the Third Appellate District issued a stay of the

14 injunction forbidding the CDCR from transferring prisoners out-

15 of-state. (California Correctional Peace Officers' Assoc.,

16 et al. v. Arnold Schwarzenegger, et al., No. C055327, on-line

17 docket as of July 23, 2007.)

18    10.   In late July of 2007, the CDCR announced that it will

19 resume out-of-state transfers. (CDCR, Press Release: CDCR

20 Continues Temporary Out of State Transfers (July 20, 2007).)

21

22 Plaintiff Is Threatened With Irreparable Harm

23    11.   On March 18, 2008, at approximately 3:00 p.m.,

24 Correctional Counselor I ("CCI") Robinson approached my cell

25 door and told me that I am being considered for an involuntary

26 out-of-state transfer.

27    12.   On March 24, 2008, I filed an Inmate Appeal stating

28 that I have on-going litigation needs calling for extensive

1  research of California state law and access to the courts.
2  (3/24/08 Inmate Appeal, Ex. C.)  On April 1, 2008, I received
3  a Screening Form stating that my appeal is being held pending
4  a CSR endorsement.  (Ex. C.)

5  13.  On April 10, 2008, I filed an Inmate Appeal alleging
6  that the Administration is engaged in the practice of state-
7  sponsored kidnapping.  I also alleged that out-of-state transfers
8  are a form of forced extradition and is being enforced pursuant
9  to a void contract.  (4/10/08 Inmate Appeal, Ex. D.)

10  14.  On April 14, 2008, I filed an Inmate Appeal challenging
11  the rejection of my March 24, 2008 appeal.  I stated that there
12  was no reason why my appeal could not be processed, that I am
13  not appealing an endorsement, but rather that the out-of-state
14  facilities lack a law library which complies with the library
15  requirements for California state prisoners.  (4/14/08 Inmate
16  Appeal, Ex. E.)

17  15.  On April 15, 2008, I filed an Inmate Appeal alleging
18  that I had been improperly targeted for transfer, contrary to the
19  guidelines issued by the Director of the Division of Adult
20  Institutions on February 2, 2007.  (4/15/08 Inmate Appeal,
21  Ex. F.)

22  16.  On April 17, 2008, I filed an Inmate Appeal alleging
23  that the 5 month denial of visits due to an extended lockdown
24  -- during which time I lost 2 visits -- had now unfairly made
25  me eligible for an out-of-state transfer.  (4/17/08 Inmate
26  Appeal, Ex. G.)

27  17.  As of May 5, 2008 (nearly 6 weeks after my first Inmate
28  Appeal was filed), the Administration still has not processed

1 | nor reached the merits of <u>ANY</u> of my Inmate Appeals.

2 | 18. <u>I AM BEING DENIED ALL ACCESS TO THE APPEAL PROCESS</u>
3 | for any appeal which challenges the out-of-state transfer
4 | program.

5 | 19. Apparently, the only time that the Administration
6 | will consider an Inmate Appeal challenging an out-of-state
7 | transfer is <u>AFTER</u> that inmate has been endorsed for transfer.
8 | (See Screening Form, 3/24/08 Inmate Appeal, Ex. C.)

9 | 20. Once an inmate has been endorsed, he shall be allowed
10 | to appeal the transfer. (Memorandum, pp. 6-7, Ex. A.) The
11 | appeal will be processed within 5 working days at the second
12 | level. (I.e., Warden's level; <u>ibid</u>.) If dissatisfied, the
13 | inmate may then appeal to the third level. (I.e., Director's
14 | level; <u>ibid</u>.)

15 | 21. However, this limited access to the appeal system
16 | is <u>INADEQUATE TO PREVENT THE IRREPARABLE HARM OF AN OUT-OF-STATE</u>
17 | <u>TRANSFER</u>. Once an appeal is denied at the second level (Warden's
18 | level), that inmate is then immediately available for transfer.
19 | (Memorandum, p. 7, Ex. A; see also "Denied," Second Level Appeal
20 | Response, Inmate Dunworth, Ex. H [noting that 3rd level review
21 | will <u>not</u> <u>prevent</u> <u>transfer</u>].)

22 | 22. <u>I FACE IRREPARABLE HARM IF TRANSFERRED</u>. I have just
23 | recently learned that my state sentence is illegal and was
24 | imposed in excess of jurisdiction. In addition, it was imposed
25 | in violation of my right to counsel. (I was sentenced without an
26 | attorney in spite of my requests for counsel.) I was preparing
27 | my state habeas corpus petition when I was told that I am facing
28 | an out-of-state transfer.

23. I have been told, and believe, that the law libraries in these out-of-state facilities contain only minimal law library collections AND DO NOT comply with the law library requirements imposed by the Gilmore v. Lynch consent decree for California state prisoners. (See 3/24/08 Inmate Appeal, Ex. C.)

24. The issues to be raised in my state habeas corpus petition are complex and involve detailed research of both California and federal law. The issues include: factual jury findings contrary to judgment; actual innocence; unauthorized sentence; excess of jurisdiction; right to counsel; and, the exceptions to procedural bars. A transfer to an out-of-state facility which does not contain an adequate law library with sufficient California based case law, statutes and digests will severely hinder my ability to file a meaningful state habeas corpus petition AND CONSTITUTES IRREPARABLE HARM.

25. As a last note, my Inmate Appeals are generally LEGAL CHALLENGES to the out-of-state transfer program. As such, the Warden lacks the authority to grant my legal challenges to a program which the Governor and the State Legislature have imposed. As a result, my appeals will be denied at the second level and I will be facing an out-of-state transfer. On May 2, 2008, I was sent to see the psychologist, Dr. Zika, and I was medically cleared by the mental health department for transfer. AN OUT-OF-STATE TRANSFER IS IMMINENT AND I AM FACING IRREPARABLE HARM.

////

////

1  Balance Of Hardships Favors The Plaintiff

2      26.  I am seeking a TRO/Preliminary Injunction enjoining
3  the defendants from transferring me anywhere -- within or without
4  of the State -- throughout the remainder of these proceedings.
5  This order does not present any hardship to the defendants.
6  I have been housed at the Correctional Training Facility for
7  over seven (7) years and any order maintaining that status quo
8  is nothing more than business as usual.

9      27.  On the other hand, if I am transferred out-of-state,
10 I will lose all my visits, my access to California state case
11 law, digests and legal guides, the ability to file a meaningful
12 state habeas corpus petition and the potential loss of the legal
13 property that I own.

14     28.  Even if I am transferred just within the State during
15 these proceedings, I stand to lose legal and personal property,
16 delays in the prosecution of this action, delays in my access
17 to a law library, delays in the return of my property and the
18 possibility of missing important court deadlines.

19     29.  ACCORDINGLY, the balance of hardships tip strongly
20 in my favor and a TRO/Preliminary Injunction should issue.

21

22 Plaintiff Is Likely To Succeed On Merits

23

24                    A. Void Contract

25     30.  On or about October 19, 2006, the CDCR entered into
26 contracts with the GEO and the CCA to house California state
27 prisoners in out-of-state facilities ran by the GEO and the CCA
28 in Indiana, Arizona, Mississippi, Oklahoma and Tennessee.

31.   These  two  contracts  are  governed  by  the  Interstate Corrections  Compact  ("ICC")  and  Western  Interstate  Corrections Compact  ("WICC").  (Penal  Code  §§  11189  and  11190,  respectively, Ex.  I.)   In  fact,  no  contract  may  be  entered  with  any  entity to  house  California  state  prisoners  in  any  other  state  which is  not  a  party  to  the  ICC  or  WICC  agreements.  (Penal  Code § 11194, Ex. I.)

32.   Incidental  to,  and  a  necessary  part  of,  these  contracts with  the  GEO  and  the  CCA  is  the  provision  of  Penal  Code  §  11191 which  provides  that  no  inmate  may  be  transferred  outside  of  this state  unless  he  has  executed  a  written  consent  to  the  transfer. (See  Ex.  I.)   This  is  because  at  the  time  the  contracts  were entered  (around  October  19,  2006),  Penal  Code  §  11191,  mandating an  inmate's  written  consent  to  an  out-of-state  transfer,  was the  applicable  law  and  the  contract  could  not  be  enforced  without complying with that provision.  (Civil Code § 1656.)

33.   On  or  about  May  3,  2007,  AB  900  was  signed  into  law and  became  effective.   AB  900  amended  Penal  Code  §  11191  striking the  provision  which  mandated  that  an  inmate  must  execute  a written  consent  to  an  out-of-state  transfer.   (Amended  Penal Code § 11191, Ex. B.)

34.   When  California  amended  Penal  Code  §  11191  allowing for  the  transfer  of  state  prisoners  to  out-of-state  facilities without  their  consent,  it  constituted  a  material  and  substantial alteration  of  the  existing  contract  which  renders  it  void  and unenforceable unless ratified.  (Civil Code §§ 1700, 1588.)

35.   However,  it  is  not  enough  for  the  GEO  and  the  CCA to  ratify  the  contracts.   As  California's  amendment  has  modified

1  a forty (40) year old agreement with the receiving states (see

2  "Credit," Penal Code § 11191, Ex. I), AND those states have

3  enacted Complimentary Legislation (see "Historical Notes," Penal

4  Code §§ 11189 and 11190, Ex. I), these material and substantial

5  departures from the accepted public policy governing the ICC

6  and WICC agreements must be ratified by the receiving states'

7  legislatures.  As no such express ratification has taken place,

8  these contracts are void by operation of law.

9

10              B. Breached Contract -- Gilmore v. Lynch

11       36.  On or about October 19, 2006, the State of California

12  entered into contracts with the GEO and the CCA to house

13  California state prisoners in private institutions ran by the

14  GEO and the CCA in the states of Indiana, Arizona, Mississippi,

15  Oklahoma and Tennessee.  These contracts were entered according

16  to the ICC and WICC agreements.  (Penal Code §§ 11189 and 11190,

17  respectively, Ex. I; see also Penal Code § 11194, Ex. I.)

18       37.  Pursuant to the ICC and WICC agreements, a California

19  state inmate confined in a receiving state SHALL NOT BE DEPRIVED

20  of any legal right said inmate would have had if confined in

21  a California state prison.  (Penal Code § 11189, Art. IV(e)

22  and § 11190, Art. IV(e), Ex. I.)

23       38.  In 1972, the State of California entered into a consent

24  decree in the case of Gilmore v. Lynch (N.D. Cal.), No. 45878

25  (reaffirmed in Gilmore v. California, 220 F.3d 987 (CA9 2000))

26  governing the contents of law libraries for California state

27  prisoners.  The contracted minimum collection of this consent

28  decree is itemized in the Director's Operations Manual ("DOM")

1 | § 53060.11 and the attached additional page (front and back)
2 | of the 3/24/08 Inmate Appeal attached here at Exhibit C.

3 |     39. Accordingly, under California law, California state
4 | prisoners have the legal right to be housed in a correctional
5 | facility which maintains the minimum legal collection itemized
6 | in DOM § 53060.11.

7 |     40. I am informed and believe that these out-of-state
8 | facilities maintain only a minimal legal collection and <u>clearly</u>
9 | do not comply with the <u>Gilmore v. Lynch</u> consent decree. (**Note:**
10 | This information was received from two separate inmates that
11 | I had met through chance encounters while at the North Facility
12 | Medical Department. At the time I did not think to obtain
13 | declarations and their identities are unknown.) While this
14 | information is, admittedly, hearsay, it is further supported
15 | by the Administration's refusal to process either one of my
16 | two Inmate Appeals attempting to address the legal collection
17 | of the out-of-state facilities. (See 3/24/08 Inmate Appeal,
18 | Ex. C and 4/14/08 Inmate Appeal, Ex. E.) A situation which
19 | is easily remedied through discovery.

20 |     41. California maintains the legal obligation to ensure
21 | that California state prisoners are housed in an out-of-state
22 | facility which has a law library that complies with the minimum
23 | legal collection agreed to in the <u>Gilmore v. Lynch</u> consent
24 | decree. By failing to do so, California has breached its
25 | contracts pursuant to the ICC and WICC agreements. (See Penal
26 | Code §§ 11189, Art. III(a)(2) and 11190, Art. III(a)(2), Ex. I.)
27 | ////
28 | ////

C. State-Sponsored Kidnapping

42.  On or about May 3, 2007, AB 900 was signed into law and became effective.  AB 900 amended Penal Code § 11191 striking the provision which mandated that an inmate must execute a written consent to an out-of-state transfer.  (Amended Penal Code § 11191, Ex. B.)

43.  In late July of 2007, the CDCR announced that it will resume out-of-state transfers.  (CDCR, <u>Press Release:  CDCR Continues Temporary Out of State Transfers</u> (July 20, 2007).) These out-of-state transfers were mandatory, <u>INVOLUNTARY</u> transfers pursuant to Phase III of the California Out-of-State Correctional Facility ("COCF") program.  (Memorandum, Ex. A.)

44.  Title 18 of the United States Code ("USC") § 1201(a)(1) provides in pertinent part, "Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, ... when the person is willfully transported in interstate or foreign commerce, ... when transported across a State boundary, ... shall be punished by imprisonment ..."

45.  California is engaged in the practice of State-sponsored kidnapping.  This is evident where California is <u>unlawfully</u> (pursuant to voided and breached contracts, and other constitutional violations) <u>kidnapping</u> <u>and</u> <u>carrying</u> <u>away</u> California state prisoners (<u>INVOLUNTARY</u> transfers pursuant to Phase III of the COCF program) <u>across</u> <u>State</u> <u>boundaries</u> (to out-of-state correctional facilities) <u>for</u> <u>ransom</u>, <u>reward</u> <u>or</u> <u>other</u> ($63.00 per day, per person).

////

13.

## D. Unconstitutional Exercise Of Jurisdiction

46.  Pursuant to the ICC and WICC agreements, an inmate transferred to an out-of-state facility is subject to prosecution for any criminal offense which may occur while the inmate is in the jurisdiction of the receiving state. (Penal Code § 11189, Art. V(a) and § 11190, Art. V(a), respectively, Ex. I.)

47.  For over forty (40) years, pursuant to the 1961 and 1976 versions of Penal Code § 11191, an inmate wishing to transfer to an out-of-state facility pursuant to the ICC and WICC agreements had to execute a written consent to the transfer. (See "Credit" and "Historical Notes," Penal Code § 11191, Ex. I.)

48.  When an inmate consents in writing to an out-of-state transfer, he expressly accepts the terms of the ICC and WICC agreements; including the obligation to abide by the laws of the receiving state. This obligation carries with it the understanding that the inmate may be subject to prosecution for any criminal offense he may commit while in the receiving state's custody. In short, the inmate has consented to the exercise of the receiving state's jurisdiction.

49.  By contrast, when California <u>involuntarily</u> transfers an inmate to an out-of-state facility, that inmate <u>HAS</u> <u>NOT</u> <u>ACCEPTED</u>, <u>NOR</u> <u>CONSENTED</u> <u>TO</u>, the exercise of the receiving state's jurisdiction.

50.  The Interstate Act on Detainers is the means by which a receiving state is able to involuntarily exercise its jurisdiction over an unwilling person and to subject that person to prosecution. This act is governed by federal law and approved by Congress. (Title 18 USC, App. 2, §§ 1 through 9; <u>Cuyler</u>

14.

1 | v. Adams, 449 U.S. 433, 440 (1981).)

2    51.  California has exceeded its authority by using State law to _involuntarily_ transfer and subject an inmate to the jurisdiction of another state where that inmate may be prosecuted for criminal offenses.  This state action infringes upon the province and exercise of the Interstate Act on Detainers, is governed by federal law and, therefore, must be approved by Congress.  (U.S. Constitution, Art. I, § 10, cl. 3.)

TRO/Preliminary Injunction Serves The Public Interest

52.  I am suing for a permanent injunction of California's unconstitutional practice of involuntary transfers of state prisoners to out-of-state facilities pursuant to the ICC and WICC agreements.  These actions effect thousands of inmates and the public interest is best served by maintaining the status quo of the parties and ensuring that the defendants don't gain an even greater advantage through unnecessary transfers.

////

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct of my own knowledge, except where stated upon information and belief, and as to those facts, I believe them to be true, and that I executed this declaration this 22nd day of May, 2008, at the Correctional Training Facility in Soledad, California.

James Centobene,
Plaintiff, Propria Persona

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3    Statement Of The Case

4         This is an action seeking declaratory and injunctive relief
5    brought pursuant to 42 U.S.C. § 1983 against Governor Arnold
6    Schwarzenegger and various state agents, alleging that the use of
7    the newly amended Penal Code § 11191 to authorize the <u>involuntary</u>
8    transfer of state prisoners to out-of-state facilities is
9    unconstitutional as it conflicts with multiple federal statutory
10   and constitutional provisions.

11        Plaintiff also seeks a Temporary Restraining Order and
12   a Preliminary Injunction prohibiting any transfer of plaintiff
13   -- including out-of-state, inter-institution, inter-facility and
14   inter-housing unit (bed move) transfers, unless consented to by
15   the plaintiff -- pending the termination of this action.

16

17   Statement Of Facts

18        On October 4, 2006, Governor Schwarzenegger issued an
19   Emergency Proclamation declaring that all 33 prisons of the
20   California Dept. of Corrections and Rehabilitation ("CDCR")
21   were at or above operational capacity and posed a serious threat
22   to the health and safety of both prisoners and prison staff.
23   To address this overcrowding, the Governor ordered CDCR officials
24   to enter into contracts to transfer adult California prisoners
25   to out-of-state prisons operated by private companies and/or
26   state or county agencies. (Declaration ("Decl.") ¶ 3.)

27        On or about October 19, 2006, the CDCR entered into two
28   contracts. The first was with The GEO Group ("GEO"), and the

                                  16.

1   second was with the Correctional Corporation of America ("CCA").

2   These two contracts provided that inmates currently incarcerated

3   by the CDCR may be transferred and housed in private correctional

4   facilities ran by the GEO and CCA in Indiana, Arizona, Oklahoma,

5   Mississippi and Tennessee.    (Decl. ¶ 4.)    These contracts are

6   governed by the Interstate Corrections Compact ("ICC") and the

7   Western Interstate Corrections Compact ("WICC").   (Decl. ¶ 31.)

8        When these contracts were signed, the CDCR was restricted

9   to only voluntary transfers pursuant to Penal Code § 11191.

10  (Decl. ¶ 32.)  To overcome this limitation, the State Legislature

11  amended Penal Code § 11191 striking the provision that no inmate

12  may be transferred to an out-of-state facility unless he has

13  executed a written consent to the transfer.    (Decl. ¶ 8; Exhibit

14  ("Ex.") B.)

15       On or about July 23, 2007 (after the stay of an injunction

16  pending appeal), the CDCR announced it would resume out-of-state

17  transfers.    (Decl. ¶¶ 7, 9-10.)   These transfers are mandatory,

18  INVOLUNTARY, transfers pursuant to Phase III of the California

19  Out-of-State Correctional Facility ("COCF") program.     (Decl.

20  ¶ 5.)

21

22                              I.

23           THE PLAINTIFF IS ENTITLED TO A TEMPORARY

24        RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

25

26       In determining whether a party is entitled to a temporary

27  restraining order or a preliminary injunction, courts generally

28  consider several factors:    (1)  whether the party will suffer

1   irreparable injury; (2) the "balance of hardships" between the
2   parties; (3) the likelihood of success on the merits; and (4) the
3   public interest.   Stanley v. University of Southern California,
4   13 F.3d 1313, 1319 (CA9 1994).   Each of these factors favors
5   the grant of this motion.

6

7   A.   Plaintiff Is Threatened With Irreparable Harm

8        As stated in the declaration, the plaintiff ("Centobene")
9   is facing the imminent threat of transfer to an out-of-state
10  facility.  (Decl. ¶ 25; generally, ¶¶ 11-25.)  Centobene alleges
11  that the out-of-state transfers are being made pursuant to a
12  voided and breached contract, and involves state-sponsored
13  kidnapping and the unconstitutional exercise of jurisdiction.
14  (Decl. ¶¶ 30-51.)   If true, then out-of-state transfers are
15  unlawful and unconstitutional, and an injunction should issue.
16  (See, Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976)
17  [the continuing deprivation of constitutional rights constitutes
18  irreparable harm].)

19       Centobene also seeks to restrain any other prison transfers
20  (between institutions, facilities, etc.), unless consented to,
21  throughout the remainder of these proceedings.   (Decl. ¶ 2.)
22  This is due to the increased risk of losing legal and personal
23  property, delays in the return of his property and delays in
24  prosecuting this action which may result in missed deadlines;
25  all of which directly effects Centobene's access to court.
26  (Decl ¶¶ 2, 26-28.)

27       This is reasonable request.   Centobene has been housed at
28  the Correctional Training Facility ("CTF") for over seven (7)

18.

1   years and this request merely maintains the status quo. (Decl.
2   ¶ 26.)   Furthermore, given the history of the CDCR and the
3   potential strong opposition to this lawsuit, the defendants
4   should be enjoined from any activity which may impede Centobene's
5   access to the courts. (See, e.g., Diamontiney v. Borg, 918 F.2d
6   793, 795-96 (CA9 1990) [preliminary injunction issued against
7   prison officials for practices interfering with plaintiff's
8   access to court].)

9       **WHEREFORE**, a TRO/Preliminary Injunction should issue.

10

11  B.    Balance Of Hardships Favors The Plaintiff

12      In deciding whether a TRO and a preliminary injunction
13  should issue, the court must weigh whether the "balance of
14  hardships" favors Centobene. I.e., the defendants will not be
15  harmed more than Centobene is helped by the injunction. (Martin
16  v. Int'l Olympic Committee, 740 F.2d 670, 674-75 (CA9 1984).)

17      As stated in his declaration, if transferred, Centobene
18  faces the loss of his access to a law library with adequate
19  California law (including case law, digests and state legal
20  guides), loss of legal and personal property, delays in the
21  return of his property, delays in prosecuting this action and
22  possibly missing court deadlines. (Decl. ¶¶ 2, 22-24, 27-28.)

23      By contrast, if an injunction is issued, the defendants
24  lose nothing. Centobene has already spent seven (7) years housed
25  at the CTF and an injunction ensuring that Centobene stays there
26  is nothing more than business as usual. (Decl. ¶ 26.)

27      **ACCORDINGLY**, the "balance of hardships" tips strongly in
28  Centobene's favor and a TRO/Preliminary Injunction should issue.

19.

C.    Plaintiff Is Likely To Succeed On Merits

     When a plaintiff moves for a TRO and preliminary injunction, the court generally weighs: (1) the threat of irreparable injury; (2) the "balance of hardships;" (3) the likelihood of success on the merits; and (4) the public interest. (Stanley, supra, 13 F.3d at 1319.)

     Alternatively, a court may issue a preliminary injunction if the moving party demonstrates EITHER a combination of success on the merits and the possibility of irreparable injury OR that serious questions are raised and the balance of hardships tips sharply in his favor. (Martin, supra, 740 F.2d at 674-75.)

     Under either test, Centobene has demonstrated the likelihood of irreparable injury and that the balance of hardships tips strongly in his favor.  Nonetheless, even though the balance of hardships tips decidedly in his favor, Centobene must show as an irreducible minimum that there is a fair chance of success on the merits. (Stanley, supra, 13 F.3d at 1319; Martin, supra, 740 F.2d at 675.)

     The following discussions will demonstrate that there is a good chance of success on the merits.


                              1.    Void Contract

     On or about October 19, 2006, California entered into contracts with The GEO Group ("GEO") and Corrections Corporation of America ("CCA") to house California state prisoners in private institutions ran by the GEO and the CCA in Indiana, Arizona, Mississippi, Oklahoma and Tennessee. (Decl. ¶ 4.)  The contracts were entered pursuant to the Interstate Corrections Compact

                                    20.

1 ("ICC") and the Western Interstate Corrections Compact ("WICC").

2 (Decl. ¶ 31; Penal Code §§ 11189 and 11190, Ex. I.)

3      "Under statutory rules of contract interpretation, the

4 mutual intention of the parties at the time the contract is

5 formed governs interpretation. Such intent is to be inferred,

6 if possible, solely from the written provisions of the contract."

7 (AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 821-22, 274

8 Cal.Rptr. 820 (1990).)   However, "a contract includes not only

9 the promises set forth in express words, but in addition, all

10 such implied provisions as are indispensable to effectuate the

11 intention of the parties and as arise from the language of the

12 contract and the circumstances under which it was made."

13 (Frankel v. Board of Dental Examiners, 46 Cal.App.4th 534, 544-

14 45, 54 Cal.Rptr.2d 128 (1996).)

15      This rule is codified in Section 1656 of the Civil Code.

16 The section provides in pertinent part:  "All things that in

17 law or usage are considered as incidental to a contract, or as

18 necessary to carry it into effect, are implied therefrom ..."

19      At the time the contracts were entered, pursuant to Penal

20 Code § 11191, no inmate could be transferred out-of-state unless

21 he consented, in writing, to the transfer.  This provision which

22 had been in effect for over forty (40) years (see "Credits"

23 and "Historical and Statutory Notes," Ex. I), was statutorily

24 imposed and necessary to the operation of the contract.  (Civil

25 Code § 1656.)

26      **ACCORDINGLY**, the GEO and CCA contracts entered on or about

27 October 19, 2006 necessarily included the provision that an

28 inmate must execute a written consent to the transfer.  (See

1  e.g., <u>Frankel</u>, supra, 46 Cal.App.4th at 544, 54 Cal.Rptr.2d

2  128 ["That which is necessarily implied in the language of a

3  contract is as much a part of it as that which is expressed"];

4  accord, <u>Flora Crane Service, Inc. v. Ross</u>, 61 Cal.2d 199, 208,

5  37 Cal.Rptr. 425 (1964).)

6      However, in May of 2007, the California State Legislature

7  amended Penal Code § 11191 striking the forty (40) year old

8  provision that no inmate may be transferred out-of-state without

9  his written consent. (Amended Penal Code § 11191, Ex. B.)

10  This action has resulted in a substantial and material alteration

11  of the contract and has rendered it void and unenforceable by

12  operation of law unless ratified by the receiving states. (Civil

13  Code §§ 1700 and 1588.)

14      Nonetheless, it is not enough for GEO and CCA to ratify

15  their contracts with California to accept the modified term. GEO

16  and CCA are private corporations and lack the authority to modify

17  a contract so that it conflicts with state law. (See e.g., Civil

18  Code § 1656 [state law is incidental to a contract]; <u>Little v.</u>

19  <u>Auto Stiegler, Inc.</u>, 29 Cal.4th 1064, 1074, 130 Cal.Rptr.2d

20  892 ["If the central purpose of the contract is tainted with

21  illegality, then the contract as a whole cannot be enforced."].)

22      As California's amendment has modified a forty (40) year

23  old agreement with the receiving states (see "Credits," Penal

24  Code § 11191, Ex. I), <u>AND</u> those states have enacted <u>Complimentary</u>

25  <u>Legislation</u> (see "Historical Notes," Penal Code §§ 11189 and

26  11190, Ex. I), these material and substantial departures from

27  the accepted public policy governing the ICC and WICC agreements

28  must be ratified by the receiving states legislatures. As no

1 such express ratification has taken place, these contracts are
2 void by operation of law.

3 California's <u>involuntary</u> transfers of state prisoners to
4 out-of-state facilities is being enforced pursuant to a <u>VOID</u>
5 <u>CONTRACT</u> and is illegal under state law (Civil Code §§ 1700,
6 1588) and unconstitutional under the Due Process Clauses of
7 the 5th and 14th Amendments.

8 **ACCORDINGLY**, a TRO/Preliminary Injunction should issue.
9 (See e.g., <u>Bryan v. Hall Chemical Co.</u>, 993 F.2d 831, 835 (CA11
10 1993) [Preliminary injunction issued to prevent enforcement
11 of a void contract].)

12
13                2.  Breached Contract -- Gilmore v. Lynch

14 On or about October 19, 2006, the State of California
15 entered into contracts with the GEO and CCA to house California
16 state prisoners in private institutions ran by the GEO and CCA
17 in the states of Indiana, Arizona, Mississippi, Oklahoma and
18 Tennessee. These contracts were entered according to the ICC
19 and WICC agreements. (Decl. ¶ 36; Penal Code §§ 11189 and 11190,
20 respectively, Ex. I; see also Penal Code § 11194, Ex. I.)

21 Pursuant to the ICC and WICC agreements, a California state
22 inmate confined in a receiving state <u>SHALL</u> <u>NOT</u> <u>BE</u> <u>DEPRIVED</u> of
23 any legal right said inmate would have had if confined in a
24 California state prison. (Penal Code § 11189, Art. IV(e) and
25 §11190, Art. IV(e), Ex. I.)

26 In 1972, the State of California entered into a consent
27 decree in <u>Gilmore v. Lynch</u> (N.D. Cal.), No. 45878 (reaffirmed
28 in <u>Gilmore v. California</u>, 220 F.3d 987 (CA9 2000)) governing

23.

1  the contents of law libraries for California prisoners. The
2  contents of this consent decree are itemized in the Director's
3  Operation Manual ("DOM") § 53060.11 and the 3/24/08 Inmate Appeal
4  attached here at Exhibit C.  (Decl. ¶ 38.)

5      A consent decree is considered the final judgment of the
6  district court and is binding on the parties. (Molski v. Gleich,
7  307 F.3d 1155, 1164 (CA9 2002).)  Accordingly, California state
8  prisoners have the legal right to he housed in a correctional
9  facility which maintains the minimum legal collection itemized
10 in DOM § 53060.11  (See 3/24/08 Inmate Appeal, Ex. C.)

11     The contracts with the GEO and CCA were enacted pursuant
12 to an Emergency Proclamation issued by the Governor on October 4,
13 2006.  (Decl. ¶ 3.)  As a result of this expedited enforcement,
14 California has yet to provide the out-of-state facilities with
15 the minimum legal collection guaranteed to California's prisoners
16 by the Gilmore v. Lynch consent decree.  (Decl. ¶ 40.)

17     ·  California maintains the legal obligation to ensure that its
18 prisoners housed in out-of-state facilities receive the same
19 rights and privileges as an inmate housed in California.  (Penal
20 Code §§ 11189, Art. IV(e) and 11190, Art. IV(e).)  This includes
21 the minimum legal collection agreed to in the Gilmore v. Lynch
22 consent decree.  (Molski, supra, 307 F.3d at 1164 [parties will
23 be bound by its consent decree].)

24     By failing to do so, California has breached its contracts
25 pursuant to the ICC and WICC agreements (see Penal Code § 11189,
26 Art. III(a)(2) and (5), § 11190, Art. III(a)(2) and (5), Ex. I)
27 and has rendered them void and unenforceable.

28     ACCORDINGLY, a TRO/Preliminary Injunction should issue.

24.

### 3.  State-Sponsored Kidnapping

On or about May 3, 2007, AB 900 was signed into law and became effective.  AB 900 amended Penal Code § 11191 striking the provision which mandated that an inmate must execute a written consent to an out-of-state transfer.  (Amended Penal Code § 11191, Ex. B.)

Armed with this new legislation and following the stay of a temporary injunction, in late July of 2007, the CDCR announced it will resume out-of-state transfers.  (Decl. ¶¶ 9-10.)  These transfers were mandatory, INVOLUNTARY transfers pursuant to Phase III of the California Out-of-State Correctional Facility ("COCF") program.  (Memorandum, Ex. A.)

Title 18 of the United States Code ("USC") § 1201(a)(1) provides in pertinent part, "Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, ... when the person is willfully transported in interstate or foreign commerce, ... when transported across a State boundary, ... shall be punished by imprisonment ..."

California, through the CDCR, is engaged in the practice of state-sponsored kidnapping.  This is evident where California is **unlawfully** (pursuant to voided and breached contracts, and other constitutional violations) **kidnapping and carrying away** California state prisoners (INVOLUNTARY transfers pursuant to Phase III of the COCF program) **across State boundaries** (to out-of-state correctional facilities) **for ransom, reward or other** ($63.00 per day, per person).

The Supremacy Clause of the U.S. Constitution, Art. VI,

1 | cl. 2, mandates that any state legislation which is in direct
2 | conflict with a congressional enactment must give way to the
3 | federal law. (<u>Jones v. Rath Packing Co.</u>, 430 U.S. 519, 525-26
4 | (1977).)  Here, California's <u>involuntary</u> transfer provision of
5 | the ICC and WICC agreements conflict with federal law.  As such,
6 | it is unconstitutional and the transfers made under its authority
7 | violate the Due Process Clauses of the 5th and 14th Amendments.

8 | **ACCORDINGLY**, a TRO/Preliminary Injunction should issue.

9 |

10 | 4.  Unconstitutional Exercise Of Jurisdiction

11 | For over forty (40) years, pursuant to the 1961 and 1976
12 | versions of Penal Code § 11191, an inmate wishing to transfer to
13 | an out-of-state facility pursuant to the ICC and WICC agreements
14 | had to execute a written consent to the transfer.  (See "Credits"
15 | and "Historical Notes," Penal Code § 11191, Ex. I.)

16 | When an inmate consents in writing to an out-of-state
17 | transfer, he expressly accepts the terms of the ICC and WICC
18 | agreements; including the obligation to abide by the laws of
19 | the receiving state.  This obligation carries with it the
20 | understanding that the inmate may be subject to prosecution
21 | for any criminal offense he may commit while in the receiving
22 | state's custody.  (Penal Code § 11189, Art. V(a) and § 11190,
23 | Art. V(a), Ex. I.)  In short, the inmate has consented to the
24 | exercise of the receiving state's jurisdiction.

25 | However, in July of 2007, following the passage of AB 900
26 | and the stay of a temporary injunction, the CDCR announced it
27 | would resume out-of-state transfers.  (Decl. ¶¶ 8-10.)  These
28 | transfers were mandatory, <u>involuntary</u> transfers pursuant to Phase

1   III of the COCF program.   (Memorandum, Ex. A.)   As a result,
2   California began to transfer thousands of inmates to out-of-state
3   facilities where that inmate HAS NOT ACCEPTED, NOR CONSENTED TO,
4   the exercise of the receiving state's jurisdiction.

5        State and federal law provide varying means for the
6   involuntary rendition of a California state resident to the
7   custody and jurisdiction of another state.   These acts include
8   but are not limited to:   The Uniform Interstate Family Support
9   Act (Family Code §§ 4900-4976); The Uniform Act to Secure the
10  Attendance of Witnesses from Without the State in Criminal Cases
11  (Penal Code §§ 1334-1334.6); The Interstate Act on Detainers
12  (Penal Code §§ 1389-1389.8, codifying 18 U.S.C. Appendix 2,
13  §§ 1-9); and, The Uniform Criminal Extradition Act (Penal Code
14  §§ 1547-1558).

15       In each of these interstate acts, the procedure used to
16  involuntarily remove a California state resident to the custody
17  and jurisdiction of another state begins with a demand by the
18  receiving state.   (Family Code §§ 4970 and 4971; Penal Code
19  §§ 1334.2, 1389, Art. IV, 1549 and 1549.1; 18 U.S.C. Appendix
20  2, §2, Art. IV.)   In each case, the affected person has had
21  some prior contact with the receiving state.

22       Pursuant to the ICC and WICC agreements, an inmate
23  transferred to an out-of-state facility is subject to prosecution
24  for any criminal offense which may occur while the inmate is
25  in the jurisdiction of the receiving state.   (Penal Code § 11189,
26  Art. V(a) and § 11190, Art. V(a), respectively, Ex. I.)   These
27  offenses include many acts which are common in a prison setting;
28  assaults, batteries, drug possessions, etc.   (California Code of

27.

1 Regulations ("CCR"), Title 15, §§ 3315(a)(1), 3316(a) and 3323.)

2   Nonetheless, the Interstate Act on Detainers remains the
3 means by which a receiving state may involuntarily exercise
4 its jurisdiction over an unwilling person and to subject that
5 person to prosecution. (Title 18 U.S.C., Appendix 2, §§ 1-9.)
6 This act is established federal law and was approved by Congress.
7 (Cuyler v. Adams, 449 U.S. 433, 440 (1981).)

8   As California's use of amended Penal Code § 11191 to
9 authorize the involuntary transfer of state prisoners to another
10 state's jurisdiction where that inmate is subject to prosecution
11 infringes upon the Interstate Act on Detainers and tends to
12 encroach upon the just supremacy of the United States, this
13 interstate compact must be approved by Congress. (U.S. Const.,
14 Art. I, § 10, cl. 3; Cuyler, supra, 449 U.S. at 440.)

15   Accordingly, until Congress has approved California's use
16 of the ICC and WICC interstate compact agreements, with their
17 provision allowing for involuntary transfers to another state's
18 jurisdiction, the act remains unconstitutional and prohibited
19 under the Due Process Clauses of the 5th and 14th Amendments.

20   **WHEREFORE**, a TRO/Preliminary Injunction should issue.

21

22 D.   TRO/Preliminary Injunction Serves The Public Interest

23   Centobene is an inmate proceeding in propria persona. He
24 is challenging a state action that effects thousands of inmates.
25 Therefore, the public interest is best served by maintaining the
26 status quo of the parties and ensuring that the defendants don't
27 gain an even greater advantage through disruptive transfers.

28   **ACCORDINGLY**, a TRO/Preliminary Injunction should issue.

28.

II.

## THE PLAINTIFF SHOULD BE REQUIRED TO
## POST ONLY A NOMINAL, OR NO, SECURITY

Usually a litigant who obtains interim injunctive relief is asked to post security. (Fed.R.Civ.P., Rule 65(c).) However, the court has discretion to excuse an impoverished litigant from posting security. (Orantes-Hernandez v. Smith, 541 F.Supp. 351, 385, n. 30 (C.D. Cal. 1982); Doctor's Associates, Inc. v. Stuart, 85 F.3d 975 (CA2 1996) [affirming district court's decision not to require bond].)

In Centobene's case, an injunction prohibiting any transfers does not cost the defendants anything. Enjoining an out-of-state transfer merely stays a transfer of Centobene while this litigation is pending and does not stop the out-of-state transfer program; therefore, the defendants suffer no injury. Enjoining any other transfers merely maintains the status quo of the parties and prevents any disruptive transfers; again, the defendants suffer no injury.

Furthermore, Centobene is properly housed within level at the CTF and an injunction just ensures that Centobene's access to the court remains unimpeded.

**WHEREFORE**, Centobene respectfully requests the Court waive his obligation to post a security in this action. Alternatively, Centobene requests that only a nominal security be imposed.

////

////

29.

1

## PRAYER FOR RELIEF

2

3      Centobene submits that each of the factors to be considered

4   favors the grant of a TRO/Preliminary Injunction.  Nonetheless,

5   the Court should be aware that Centobene has been on lockdown

6   for the past six months with access to the law library maybe

7   once a week.  On March 18, 2008, Centobene was informed that

8   he may be involuntarily transferred out-of-state and immediately

9   began to work on the accompanying lawsuit.

10      The issues presented herein are complex.  However, given

11   the relatively short time since Centobene's notice of transfer,

12   the urgency of a TRO/Preliminary Injunction and his limited

13   access to the law library, Centobene has not been able to as

14   fully develop the issues as he would like.

15      Accordingly, Centobene respectfully requests that the Court

16   liberally construe the claims submitted herein.

17   ////

18   ////

19

20      **WHEREFORE**, for the foregoing reasons, Centobene respectfully

21   requests that a Temporary Restraining Order and a Preliminary

22   Injunction issue.

23   DATED:  *May 22, 2008*

24                                  Respectfully submitted,

25

26

27                                  James Centobene,
                                    Plaintiff, Propria Persona

28

# TABLE OF CONTENTS

Page

PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION          1

DECLARATION OF PLAINTIFF          3

General Allegations          3

Plaintiff Is Threatened With Irreparable Harm          5

Balance Of Hardships Favors The Plaintiff          9

Plaintiff Is Likely To Succeed On Merits          9

A.   Void Contract          9

B.   Breached Contract -- Gilmore v. Lynch          11

C.   State-Sponsored Kidnapping          13

D.   Unconstitutional Exercise Of Jurisdiction          14

TRO/Preliminary Injunction Serves The Public Interest          15

MEMORANDUM OF POINTS AND AUTHORITIES          16

Statement Of The Case          16

Statement Of Facts          16

I.   THE PLAINTIFF IS ENTITLED TO A TEMPORARY
     RESTRAINING ORDER AND A PRELIMINARY INJUNCTION          17

     A.   Plaintiff Is Threatened With Irreparable Harm          18

     B.   Balance Of Hardships Favors The Plaintiff          19

     C.   Plaintiff Is Likely To Succeed On Merits          20

          1.   Void Contract          20

          2.   Breached Contract -- Gilmore v. Lynch          23

          3.   State-Sponsored Kidnapping          25

          4.   Unconstitutional Exercise Of Jurisdiction          26

     D.   TRO/Preliminary Injunction Serves The Public Interest          28

i

1

**TABLE OF CONTENTS**

2

Page

3

4  II. THE PLAINTIFF SHOULD BE REQUIRED TO
       POST ONLY A NOMINAL, OR NO, SECURITY                    29

5

   PRAYER FOR RELIEF                                           30

6

   Memorandum, Director of the Division of
7  Adult Institutions, dated February 2, 2007          Exhibit A

8  Amended Penal Code § 11191                          Exhibit B

9  3/24/08 Inmate Appeal                               Exhibit C

10 4/10/08 Inmate Appeal                               Exhibit D

11 4/14/08 Inmate Appeal                               Exhibit E

12 4/15/08 Inmate Appeal                               Exhibit F

13 4/17/08 Inmate Appeal                               Exhibit G

14 Second Level Appeal Response,
   Inmate Dunworth, F-12115                            Exhibit H
15
   2006 Penal Code §§ 11189 through 11198              Exhibit I
16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# EXHIBIT A

State of California

Department of Corrections and Rehabilitation

# Memorandum

ate    :    February 2, 2007

To    :    Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Manager

Subject:    CALIFORNIA OUT-OF-STATE CORRECTIONAL FACILITY PROGRAM, PHASE III

On October 31, 2006, the California Department of Corrections and Rehabilitation (CDCR) implemented Phase II of the California Out-of-State Correctional Facility (COCF) Program. Despite the enormous effort of interviewing every potential candidate for voluntary placement, insufficient numbers of inmates have volunteered for out-of-state placement. The purpose of this memorandum is to announce mandatory transfers in Phase III of the implementation of the COCF program and to instruct staff on the procedures for identification and transfer of inmates to out-of-state facilities. Please ensure a copy of this memorandum is provided for all Correctional Counselors (CC).

In accordance with the October 4, 2006, Governor's State of Emergency Proclamation, the CDCR Secretary is authorized to prioritize the mandatory transfer of inmates who meet the following criteria:

1. Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.
2. Inmates who are paroling outside of California.
3. Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.
4. Inmates who have family or supportive ties in a transfer state.
5. Other inmates as deemed appropriate by the CDCR Secretary.

The potential pool of eligible inmates who meet the criteria as set by the Governor's Emergency Proclamation shall be prioritized as follows:

1. Inmates who have active Immigration and Customs Enforcement (ICE) holds.
    A. The inmate has not had a visit in the last two years as reflected by the visiting records.
    B. The inmate has not had a visit in the last year as reflected by the visiting records.
    C. The inmate is not currently in a work, education, vocation, or Substance Abuse Treatment Program (SAP) assignment.
        • Work Group/Privilege Group C/C.
        • Work Group/Privilege Group A2/B, pending assignment.
        • Work Group/Privilege Group A1/A, pending assignment.
    D. All other inmates who have an active ICE hold.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 2

2.  Inmates who have a potential ICE hold and have a conviction for an aggravated felony.
    A.  The inmate has not had a visit in the last two years as reflected by the visiting records.
    B.  The inmate has not had a visit in the last year as reflected by the visiting records.
    C.  The inmate is not currently in a work, education, vocation, or SAP assignment.
        • Work Group/Privilege Group C/C.
        • Work Group/Privilege Group A2/B, pending job assignment.
        • Work Group/Privilege Group A1/A, pending job assignment.
    D.  All other inmates who have a potential ICE hold and have a conviction for an aggravated felony.
3.  Inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
    A.  The inmate has not had a visit in the last two years as reflected by the visiting records.
    B.  The inmate has not had a visit in the last year as reflected by the visiting records.
    C.  The inmate is not currently in a work, education, vocation, or SAP assignment.
        • Work Group/Privilege Group C/C.
        • Work Group/Privilege Group A2/B, pending job assignment.
        • Work Group/Privilege Group A1/A, pending job assignment.
    D.  All other inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
4.  Inmates who were born in the United States or inmates who are naturalized citizens.
    A.  The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
    B.  The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.
    C.  The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
    D.  The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.

## MINIMUM CUSTODY NOTIFICATION

Inmates who currently have minimum custody or eligible for reduction to minimum custody are not eligible for involuntary transfer out of state; this includes inmates with an active or potential ICE hold. The Wardens are to ensure the affected inmates are aware of this decision. To attempt to eliminate the potential risk of flight, please advise the inmates and provide them with the English (Attachment A) or Spanish (Attachment B) handout which notifies the inmate that he is not subject to involuntary out-of-state transfer.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIls-Reception Centers
Correctional Case Records Managers
Page 3

## PHASE III PROCESS

Prior to implementing the Phase II mass screening of the potentially eligible population, the Classification and Parole Representative (C&PR) and the previously trained CC-III or CC-II provided training to all caseload carrying CCs on the screening process. The inmates who were identified as eligible, but did not volunteer pursuant to the Phase II mass screening are the population to be further screened at this point for placement. However, staff will continue to pursue voluntary placements as outlined in the Phase II memorandum.

The following is the Phase III step-by-step process for screening and the mandatory transferring of inmates into the COCF Program.

### Armstrong and Clark Class Members

Inmates who have been identified as qualifying for the Disability Placement Program (DPP) and/or Developmental Disability Program (DDP) shall not be involuntarily transferred to an out-of-state facility at this time.

### Classification Section

Inmates who volunteer to participate in the COCF Program shall be processed in accordance with the October 31, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II* and the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum*.

The following provides direction on the mandatory placement process:

1. The Wardens will be provided an Activation Schedule and a list of inmates, using the criteria established by the Governor's proclamation (see page one), who are potentially eligible for the mandatory COCF Program for involuntary transfer in a subsequent memorandum.
2. The Warden shall ensure the lists are provided to the CC-Is or caseload carrying CC-IIs whose caseload includes identified potential COCF inmates.
3. The CC shall screen the Central Files (C-File) of the inmates who appear on the potentially eligible screening list to determine COCF eligibility.
4. The CC shall review the C-file for the presence of the pre-formatted CDC Form 128-B, *Chrono-General*, generated during the Phase II review process.
   - The CC shall ensure the eligibility status on the pre-formatted CDC Form 128-B has not changed. If the C-file does not contain a pre-formatted CDC Form 128-B or the current pre-formatted CDC Form 128-B is inaccurate, the CC shall generate a new pre-formatted CDC Form 128-B.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 4

- • If the inmate is screened "Eligible", the CC shall mark which facilities the inmate may be housed.
- • The CC shall forward the newly generated CDC Form 128-B to the C&PR.

5. The CC shall complete the pre-formatted CDC Form 128B, *Medical/Dental/Psychiatric Referral*, for all eligible screened inmates requesting a medical/dental/psychiatric evaluation for participation in the program.
  - • The CC shall document on the pre-formatted CDC Form 128B, any indication of mental health concerns notated in the Probation Officer's Report (POR), psychological reports for the court or Board of Parole Hearings, confidential and non-confidential psychiatric reports to include Parole Out-Patient Clinic reports, Criminal Identification and Information (CI&I), or Federal Bureau of Investigations (FBI) Rap Sheet.
  - • The C&PR or designee shall fax copies of all completed preformatted CDC Form 128B, *Medical/Dental/Psychiatric Referrals*, to Facility Captain (FC) David Higginbotham at (661) 863-6717.

6. The CC shall interview the potentially eligible COCF inmate.
  - • The CC shall ensure the identified potential COCF inmate is notified that he is being reviewed for mandatory transfer.
  - • The CC shall inform the inmate of his right to attorney consultation prior to Institution Classification Committee (ICC).
    - o The attorney may be of the inmate's choosing at his expense, or he may utilize the McGeorge School of Law Institute for Administrative Justice.
    - o The CC shall notify the C&PR or designee if an inmate requests legal consultation prior to ICC. The C&PR or designee shall arrange for the attorney consultation.
    - o The C&PR shall e-mail the list of inmates who have requested attorney consultation to CC-III Milliner at Phyllis.Milliner@cdcr.ca.gov.
    - o The COCF Unit shall notify the McGeorge School of Law Institute for Administrative Justice of the preliminary number of inmates requesting consultation pending medical clearance.
    - o The COCF Unit shall coordinate the attorney consultation with the institution for all medically cleared inmates.
  - • The CC shall provide the inmate with a CDC Form 128B-1, *Notice of Classification Hearing*, informing him that he will appear before ICC upon being medically / psychiatrically cleared.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 5

7. The C&PR or designee shall ensure a list with the inmate's name and number is submitted to Health Records personnel for COCF medical screening.
   - The C&PR or designee shall enter the "Eligible" screened inmates in the COCF Transfer Wait List.
8. Designated medical staff shall complete the Health Care Screening for Out-of-State Placement form in accordance with the Medical Section of the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*
9. Upon receipt of the Health Care Screening for Out-of-State Placement form, the C&PR or designee shall enter the medical screening results in the COCF Transfer Wait List. If the inmate is medically eligible enter the date of the COCF Medical Screening form in the appropriate cell. If the inmate is medically rejected for out-of-state placement, enter "REJ" in the appropriate cell.
10. It is the responsibility of the Warden to ensure that inmates referred by the Registered Nurse (RN) for mental health screening are tracked and processed.
11. Inmates' cases, who are Medical / Mental Health cleared, shall be prepared for review by the ICC in accordance with current workload agreements.
12. The ICC shall review the case and recommend out-of-state placement for eligible inmates.
    - The ICC shall review the Automated Visiting Information System (AVIS) print out to validate the inmate's visiting status.
    - The ICC shall ensure inmates who are recommended for out-of-state placement are Medical / Mental Health cleared.
    - The ICC shall record the classification committee's actions on a pre-formatted CDC Form 128G, *Chrono – Classification.*
    - The call sheet shall be given to the C&PR.
13. The C&PR shall ensure an ICC recommended inmate is updated in the COCF Transfer Wait List. The C&PR shall e-mail the COCF Transfer Wait List and the pre-formatted CDC Form 128G to CC-III Milliner at Phyllis.Milliner@cdcr.ca.gov.
14. The COCF Unit shall notify the C&PR of which cases need to be ready for Classification Staff Representative (CSR) review.
15. The C&PR shall ensure the cases are presented to a CSR for out-of-state transfer consideration.
    - The C&PR shall ensure the case is ready and all required documentation is in the C-File prior to scheduling the CSR review.
    - The COCF Unit shall advise the Classification Services Unit (CSU) of the cases pending CSR review.
16. The CSR shall review the C-File and all supporting documentation of cases referred for transfer to the COCF Program.
17. The CSR shall ensure all required documentation has been completed and that the inmate meets COCF eligibility.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 6

18. The CSR shall complete the CDC Form 840, *CDC Reclassification Score Sheet.* The CDC Form 840 shall have all appropriate fields completed.
19. The C&PR or designee shall ensure the inmate receives a copy of the CDC Form 128G, *Endorsement Chrono,* by the next business day after the CSR action.
    • The institution shall be required to provide proof of practice that the inmate received his copy of the endorsement CDC Form 128G.
20. The C&PR shall ensure the endorsement information is entered into the COCF Transfer Wait List. The C&PR shall e-mail their institution's completed COCF Transfer Wait List to CC-III Milliner at Phyllis.Milliner@cdcr.ca.gov.
21. The C&PR shall fax endorsed inmates' CDC Forms 812, 812C, and the endorsement CDC Form 128G to (916) 323-1752.
22. The C&PR shall coordinate with the Correctional Case Records Manager (CCRM), Education Department, and Visiting to complete the Field File.
23. The C&PR shall coordinate with the CCRM to send the C-File to the COCF Records Office after the inmate has transferred from their facility.
24. The C&PR shall coordinate with the medical department to ensure the Unit Health Record (UHR) is sent to the HUB facility. The C&PR at the HUB facility shall ensure the UHR is sent overnight mail to the COCF Records Office upon the inmate's transfer to the out-of-state facility.

## Reception Center Processing

The Reception Center (RC) Processing instructions are addressed in the October 31, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II.*

Inmates undergoing the RC processing, who have an active or potential ICE hold, shall be transferred to a receiving institution upon completion. The receiving institution shall evaluate the inmate for potential local ties utilizing the visiting records or any other official documentation. Potentially eligible inmates shall be processed in accordance with this memorandum.

## Appeals Section

The CCR, Title 15, Subsection 3084.1(a) states in part, "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Inmates who are being transferred out-of-state involuntarily shall be allowed to appeal the transfer. Reasonable accommodation for effective communication shall be afforded inmates with disabilities. No inmate shall be transferred to an out-of-state facility prior to resolution of his second level appeal.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 7

If an inmate appeals his transfer to an out-of-state facility, the first level of appeal shall be waived. The institution shall be responsible for completing the second level response within 5 working days. If the COCF appeal process proves to be burdensome to any specific institution, the institution shall contact their Associate Director to discuss resource needs to ensure compliance.

If an inmate is dissatisfied with the second level response, the appellant may resubmit the appeal to the appeals coordinator who shall fax the documentation to the chief, inmate appeals for a third level review which shall be completed within five working days. The necessary documentation shall include, but is not limited to the CDC Form 602, *Inmate/Parolee Appeal Form*; the ICC CDC Form 128G; the CSR Endorsement CDC Form 128G; the CDC Form 850A, *Detainer Summary-United States Immigration and Naturalization Services (USINS)*; and the Automated Visiting Information System (AVIS) printout.

The second and/or third level appeal shall be returned to the appellant with a written response stating the appeal issue and reasons for the decision. Upon receipt of the completed second level appeal, the C&PR shall notify the COCF Unit if the inmate's appeal has been granted or denied. Additionally, the COCF Unit shall be immediately notified if an appeal is granted at the third level, requiring that the inmate be removed from the transfer list or returned to California.

## Sending Institution's Case Records Section

The Sending Institution's Case Records instructions are addressed in the October 31, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II* and the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

## California Out-of-State Correctional Facility Records Office

The California Out-of-State Correctional Facility Records Office instructions are addressed in the October 31, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II* and the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

## Medical Section

The Medical Section instructions are addressed in the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 8

### Transportation Section

The Transportation Section instructions are addressed in the October 18, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase I.*

### Property

The Property Section instructions are addressed in the November 21, 2006, Deputy Director Memorandum titled, *California Out-of-State Correctional Facility, Phase II Addendum.*

- If you have any questions concerning the COCF, please contact Terri McDonald, Chief Deputy Administrator (A), COCF, at (916) 327-B375, or via e-mail at Terri.McDonald@cdcr.ca.gov.
- Classification questions should be directed to Lydia Romero, Associate Warden, COCF, at (916) 323-1776, or via e-mail at Lydia.Romero@cdcr.ca.gov.
- Case Records questions should be directed to Janet Rodriguez, Chief, Case Records Services (CRS), at (916) 324-2242, or via e-mail at Janet.Rodriguez@cdcr.ca.gov.
- Transportation questions should be directed to Jeff Macomber, Chief, Transportation Unit, at (916) 322-8729, or via e-mail at Jeff.Macomber@cdcr.ca.gov.
- Medical questions should be directed to Tim Rougeux, Project Director, DCHCS, at (916) 322-2278, or via e-mail at Tim.Rougeux@cdcr.ca.gov.

SCOTT KERNAN
Director
Division of Adult Institutions

Attachments

cc: Kingston Prunly
Peter Farber-Szekrenyi
Kathleen Keeshen
Kathleen Dickinson
Janet Rodriguez
Rich Hawkins

Dave Runnels
Tim Virga
Thomas Hoffman
Ombudsman's Office
Jeff Macomber
Patricia Miller

Bernard Warner
Richard Kirkland
Lea Ann Chrones
Terri McDonald
Lydia Romero
Nola Grannis

# EXHIBIT B

# EXHIBIT B

**AMENDED PENAL CODE SECTION 11191**

Amended Per AB 900 (eff. May 2007)
Existing Code renumbered as paragraph
(a); added paragraphs (b) and (c)
~~Strike-through~~ = deletions
*Script* = added language

    11191.   (a)   Any court or other agency or officer of this
state having power to commit or transfer an inmate (as defined in
Article II (d) of the Interstate Corrections Compact or of the
Western Interstate Corrections Compact) to any institution for
confinement may commit or transfer ~~such~~ *that* inmate to any
institution within or without this state if this state has
entered into a contract or contracts for the confinement of
inmates in ~~said~~ *that* institution pursuant to Article III of
the Interstate Corrections Compact or of the Western Interstate
Corrections Compact, ~~but no inmate sentenced under California law~~
~~may be committed or transferred to an institution outside of this~~
~~state, unless he has executed a written consent to the transfer.~~
The inmate shall have the right to a private consultation with an
attorney of his choice, or with a public defender if the inmate
cannot afford counsel, concerning his rights and obligations
under this section, and shall be informed of ~~such right~~ *those*
*rights* prior to executing the written consent.   At any time
more than five years after the transfer, the inmate shall be
entitled to revoke his consent and to transfer to an institution
in this state.   In ~~such cases~~ *which case*, the transfer shall
occur within the next 30 days.

    *(b)  Notwithstanding subdivision (a), no inmate with serious*
*medical or mental health conditions, as determined by the Plata*
*Receiver, or an inmate in the mental health delivery system*
*at the Enhanced Outpatient Program level of care or higher may*
*be committed or transferred to an institution outside of this*
*state unless he has executed a written consent to the transfer.*

    *(c)  This section shall remain in effect only until July 1,*
*2011, or until such time as the Department of Corrections and*
*Rehabilitation has replaced "temporary beds," as defined in*
*paragraph (3) of subdivision (a) of Section 15819.34 of the*
*Government Code, whichever is sooner, and as of January 1, 2012,*
*shall be repealed, unless a later enacted statute deletes or*
*extends that date.*

# EXHIBIT C

# EXHIBIT C

**\*\*\* YOUR APPEAL IS BEING HELD FOR THE FOLLOWING REASON(S) \*\*\***

| Name | CDC Number | Housing | Unit | Category |
|------|-----------|---------|------|----------|
| CENTEBONE | J-17051 | RB-201L | UNIT V | COCF 15-9 |

1. **Your Inmate/Parolee Form (CDC-602) does not have the proper documents needed for processing, per CCR 3084. CTF Appeals Office will hold your Inmate Appeal and will be helping you collect the below listed documents. This Screen Out Notice will serve as a notice that your Appeal has been received.**

    a. ☒   CDC 128C Medical Chrono
    b. ☒   CDC 128G ICC Chrono
    c. ☒   CDC 128G CSR Chrono
    d. ☒   OTHER:**CDC 840**

2. **The Appeals Office will notify you once we have all the needed documents and begin processing Appeal as an Emergency 2nd Level Appeal Response.**

3. **Present this form and attached documents to your assigned Counselor at ICC, if/once you are notified of CSR endorsement.**

4. **The Appeals Office will also be assisting you in expediting a 3rd Level Appeal Response.**

**P. Santiago / P. G. Dennis**
Appeals Coordinators

This screening decision may not be appealed unless you allege the above reason is inaccurate.

EMERGENCY APPEAL PER 15 CCR §3084.7 -- Transfer poses irreparable harm.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|
| | 1. _____ | 1. _____ | | $15-9$ |
| | 2. _____ | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: On 3/18/08, I was informed by C.C.I. Robinson that I am being considered for an out-of-state transfer. I have on-going litigation needs calling for extensive research of California state law and access to the courts. As such, I need full access to the California law collection as found in the facilities within the state. [¶] It is well-settled that the sending state authorities have the responsibility for providing state legal materials to their prisoners incarcerated in out-of-state facilities. (See Boyd v. Wood, 52 F.3d 820 (CA9 1995); Clayton v. Tansy, 26 F.3d 980, 982 (CA10 1993); Rich v. Zitnay, 644 F.2d 41, 43 (CA1 1981).) It is equally well-settled that a California

If you need more space, attach one additional sheet.          (Continued on Attached Additional Page.)

B. Action Requested: That the Administration provide me with: 1) A Declaration, signed under the penalty of perjury, assuring me that each of the out-of-state facilities that I may be involuntarily transferred to is complying with the Gilmore v. Lynch consent decree; and, 2) A Certificate of Compliance from each of the out-of-state facilities to that effect.

Inmate/Parolee Signature: _Jimmm Cortobene_          Date Submitted: 3/24/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____          Date Submitted: _____ _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

RECEIVED
MAR 26 2008
CTF APPEALS

CDC Appeal Number:

_____

Centobene, J-17051, RB-201L, Continued from 602, Paragraph "A"

state prisoner housed out-of-state is entitled to the same rights and benefits he would have received in California.  (Penal Code §11189, Art. IV(e).)

Accordingly, I am entitled to be housed in an out-of-state facility which meets my legal needs.  In short, I am entitled to be housed in an out-of-state facility which is in full compliance with the Gilmore v. Lynch consent decree governing the contents of California state prison libraries.  (See Gilmore v. Lynch (N.D. Cal. Oct. 16, 1972), No. 45878; reaffirmed in Gilmore v. California, 220 F.3d 987 (CA9 2000).)

The contents of the law library for a California state prisoner is found in the Director's Operations Manual (DOM) §53060.11.  The collection of law books SHALL consist of, but not necessarily be limited to, one complete and current set of each of the following:

CODES           *    Deering's California Code Annotated or

                *    West's Annotated California Code.

                *    U.S. Code Service or

                *    U.S. Code Annotated.

DIGESTS         *    West's California Digest 1st and

                *    West's California Digest 2nd, or

                *    (McKinney's) California Digest Official Reports, 3rd Ser.

                *    Modern Federal Practice Digest.

                *    West's Federal Practice Digest 2nd.

                *    West's Federal Practice Digest 3rd.

                *    West's Federal Practice Digest 4th

REPORTERS       *    West's California Reporter, or

                *    California Official Reports 2nd Ser., Vol. 53-71, and

                *    California Official Reports, 3rd Ser., Vol. 1-Continuing, and

                *    California Appellate 2nd, Vol. 175-276, and

                *    California Appellate 3rd, Vol. 1-Continuing.

(Continued on Back Side per C.C.R. §3084.2(a)(1).)

REPORTERS     *  Federal Reporter, Vol. 176-Continuing.
(Cont'd)
              *  Federal Supplement, Vol. 180-Continuing.

              *  U.S. Reports, Vol. 269-Continuing, or

              *  U.S. Supreme Court Reports, Lawyers Ed., Vol. 1-Continuing, or

              *  Supreme Court Reporter, Vol. 70-Continuing.

SHEPARDS      *  U.S. Citations.

              *  Federal Citations.

              *  California Citations.

SECONDARY     *  Appeals and Writs in Criminal Cases, 1982 with newest update.
SOURCES
              *  Ballentine's Law Dictionary, or

              *  Black's Law Dictionary, 6th Ed.

              *  California Criminal Law Procedures and Practices, 1986 with
                 newest update.

              *  California Jurisprudence 3rd.

              *  Harvard Law Review Developments on Habeas Corpus 1970 Ed.

              *  Sokol, Handbook on Federal Habeas Corpus 2nd Ed.

              *  U.S. Law Week (Newspaper) with 1 year back-file.

              *  Witkin's California Criminal Law, 2nd Ed.


    The contents of the law library as listed above is REQUIRED to be available and
ON-HAND.  The above collection does not include the contents of the circulating law
library which is also to be available to California state prisoners.  (See DOM §53060.14.)

Respectfully submitted,

_James Centobene_

DATED: 3/24/08

James Centobene, J-17051

# EXHIBIT D

# EXHIBIT D

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. | 1. | |
| | 2. | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: I have been informed that I am being considered for an involuntary out-of-state transfer by the Administration pursuant to the Governor's Emergency Proclamation of October 4, 2006 regarding prison overcrowding. Under the Governor's Proclamation and its subsequent revisions -- and the recent amendment of Penal Code §11191 -- the California Department of Corrections and Rehabilitation (CDCR) is seeking to involuntarily transfer as many as 8,000 inmates to out-of-state facilities by March of 2009. [¶] However, the state of California, the Governor, and the CDCR are engaged in the practice of state-sponsored kidnapping in violation of Title 18, §§ 1201(a)(1), 1201(b) and 1201(c)

If you need more space, attach one additional sheet.    (Continued on Attached Additional Page)

B. Action Requested: That **ONE:** California and the Department of Corrections and Rehabilitation abandon its illegal practice of involuntarily transferring inmates to out-of-state facilities; and, **TWO:** The Administration cease and desists its attempts to involuntarily transfer me to an out-of-state facility.

Inmate/Parolee Signature: _____    Date Submitted: 4/10/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

Centobene, J-17051, RB-201L, Continued from Paragraph "A"

of the United States Code.

The recent amendment to Penal Code §11191 authorizing the involuntary transfer of inmates to out-of-state facilities does not supersede federal law. Under the Supremacy Clause of U.S. Const., Art. VI, cl. 2, where there is a conflict between state and federal law -- federal law prevails!!! As such, the federal kidnapping statutes which prohibit the involuntary transportation of persons across state lines for "ransom, or reward, or otherwise" (such as $63.00 per day, per person) is Supreme and overrides the California statute authorizing the involuntary transfer of state prisoners.

Furthermore, the amended Penal Code §11191 is part of the Interstate Corrections Compact (ICC) agreement. (Penal Code §§ 11189 through 11198.) As the newly amended Penal Code section seeks to materially and substantially alter the terms of the ICC agreement -- AND TO INFRINGE UPON THE SOVEREIGNTY OF THE UNITED STATES AND ITS LAWS -- the compact agreement must be approved by congress pursuant to Art. I, §10, cl. 3 of the U.S. Const.

In addition, the ICC agreements between California and participating states are mutual and mirrored contracts -- i.e., the terms of the contract are the same for both of the participating states; and properly reflected in the respective state's statutes.

As California has materially altered the ICC agreement, the contract is of null effect until it has been approved and ratified in its new form by the legislature of the participating state. California's contract with a private entity within an allegedly participating state does not equal an express or implied approval, nor ratification, of the altered ICC agreement by that state's legislature; and California's involuntary transfer of state prisoners to out-of-state facilities encroaches upon the 11th Amendment sovereignty of the receiving state.

Finally, California's act of involuntarily transferring an inmate to an out-of-state facility is akin to a FORCED EXTRADITION and SUBJUGATION to the receiving state's jurisdiction. Pursuant to the ICC agreement, an inmate is subject to the laws and jurisdiction of the receiving state. (Penal Code §11189, Art. V; §11190, Art. V.) However, an involuntarily transferred inmate has not conceded, accepted, nor recognized the receiving state's jurisdiction. In fact, the only reason the inmate is there is because he was kidnapped and placed within the receiving state's jurisdiction.

The means of "extraditing" an inmate to another state's jurisdiction is governed by the Interstate Agreement on Detainers (IAD) act. (Title 18, United States Code, Appendix 2, §§ 1-9.) An extradition is initiated by either request by an inmate or the prosecuting officer of the receiving state. (18 U.S.C., App. 2, §2, Art.'s III and IV.) As neither an inmate nor an officer of the receiving state has sought extradition, California inmates are not properly subject to the jurisdiction of the receiving state.

In fact, as the IAD act is an established federal law and approved by congress (see Cuyler v. Adams, 449 U.S. 433 (1981)), any act or contract by California which tends to circumvent its operation must be approved by Congress pursuant to Art. I, §10, cl. 3 of the U.S. Constitution.

In conclusion, California's involuntary transfer of inmates to out-of-state facilities is violative of the laws and constitution of the United States and may subject its violators to prosecution under the kidnapping provisions of the United States Code.

_____   Dated:  7/10/08
James Centobene

# EXHIBIT E

# EXHIBIT E

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| | Location: Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. _____ | 1. _____ | _____ |
| | 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: __On March 24, 2008, I filed an appeal regarding what the contents of an__
__out-of-state law library must contain for its California state prisoners.  (See attached.)__
__On April 1, 2008 (following the Cesar Chavez holiday), I received a screening form stating__
__that my 602 will be held pending the accumulation of various chronos.  (See attached.)__
__THIS IS WRONG!!!  There is NO REASON that my 602 cannot be processed.  I am not appealing__
__an endorsement, I am appealing the lack of a law library in these out-of-state facilities__
__which complies with California law.  YOU DO NOT NEED MY CHRONOS TO RULE ON THIS ISSUE!!!__

If you need more space, attach one additional sheet.

B. Action Requested: __That my March 24, 2008 appeal regarding out-of-state facility law libraries__
__be processed as it should have been when it was first submitted.__

Inmate/Parolee Signature: _____     Date Submitted: _4/14/08_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed     CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

STATE OF CALIFORNIA
CORRECTIONAL TRAINING FACILITY

DEPARTMENT OF CORRECTIONS
INMATE APPEALS SCREENING FORM

## *** YOUR APPEAL IS BEING HELD FOR THE FOLLOWING REASON(S) ***

| Name | CDC Number | Housing | Unit | Category |
|------|-----------|---------|------|----------|
| CENTEBONE | J-17051 | RB-201L | UNIT V | COCF 15-9 |

1. Your Inmate/Parolee Form (CDC-602) does not have the proper documents needed for processing, per CCR 3084. CTF Appeals Office will hold your Inmate Appeal and will be helping you collect the below listed documents. This Screen Out Notice will serve as a notice that your Appeal has been received.

   a. ☒   CDC 128C Medical Chrono
   b. ☒   CDC 128G ICC Chrono
   c. ☒   CDC 128G CSR Chrono
   d. ☒   OTHER: **CDC 840**

2. The Appeals Office will notify you once we have all the needed documents and begin processing Appeal as an Emergency 2nd Level Appeal Response.

3. Present this form and attached documents to your assigned Counselor at ICC, if/once you are notified of CSR endorsement.

4. The Appeals Office will also be assisting you in expediting a 3rd Level Appeal Response.

P. Santiago / P. G. Dennis
Appeals Coordinators

CDC 695        This screening decision may not be appealed unless you allege the above reason is inaccurate.

EMERGENCY APPEAL PER 15 CCR §3084.7 -- Transfer poses irreparable harm.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location:    Institution/Parole Region         Log No.                    Category

1. _____    1. _____    $15-9$

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: ___On 3/18/08, I was informed by C.C.I. Robinson that I am being considered for an out-of-state transfer. I have on-going litigation needs calling for extensive research of California state law and access to the courts. As such, I need full access to the California law collection as found in the facilities within the state. [¶] It is well-settled that the sending state authorities have the responsibility for providing state legal materials to their prisoners incarcerated in out-of-state facilities. (See Boyd v. Wood, 52 F.3d 820 (CA9 1995); Clayton v. Tansy, 26 F.3d 980, 982 (CA10 1993); Rich v. Zitnay, 644 F.2d 41, 43 (CA1 1981).) It is equally well-settled that a California___

If you need more space, attach one additional sheet.          (Continued on Attached Additional Page.)

B. Action Requested: ___That the Administration provide me with: 1) A Declaration, signed under the penalty of perjury, assuring me that each of the out-of-state facilities that I may be involuntarily transferred to is complying with the Gilmore v. Lynch consent decree; and, 2) A Certificate of Compliance from each of the out-of-state facilities to that effect.___

Inmate/Parolee Signature: _James Centobene_          Date Submitted: _3/24/08_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____          Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

RECEIVED
MAR 26 2008
APPEALS

CDC Appeal Number:

Centobene, J-17051, RB-201L, Continued from 602, Paragraph "A"

state prisoner housed out-of-state is entitled to the same rights and benefits he would have received in California. (Penal Code §11189, Art. IV(e).)

Accordingly, I am entitled to be housed in an out-of-state facility which meets my legal needs. In short, I am entitled to be housed in an out-of-state facility which is in full compliance with the Gilmore v. Lynch consent decree governing the contents of California state prison libraries. (See Gilmore v. Lynch (N.D. Cal. Oct. 16, 1972), No. 45878; reaffirmed in Gilmore v. California, 220 F.3d 987 (CA9 2000).)

The contents of the law library for a California state prisoner is found in the Director's Operations Manual (DOM) §53060.11. The collection of law books SHALL consist of, but not necessarily be limited to, one complete and current set of each of the following:

CODES
* Deering's California Code Annotated or

* West's Annotated California Code.

* U.S. Code Service or

* U.S. Code Annotated.

DIGESTS
* West's California Digest 1st and

* West's California Digest 2nd, or

* (McKinney's) California Digest Official Reports, 3rd Ser.

* Modern Federal Practice Digest.

* West's Federal Practice Digest 2nd.

* West's Federal Practice Digest 3rd.

* West's Federal Practice Digest 4th

REPORTERS
* West's California Reporter, or

* California Official Reports 2nd Ser., Vol. 53-71, and

* California Official Reports, 3rd Ser., Vol. 1-Continuing, and

* California Appellate 2nd, Vol. 175-276, and

* California Appellate 3rd, Vol. 1-Continuing.

(Continued on Back Side per C.C.R. §3084.2(a)(1).)

| | | |
|---|---|---|
| REPORTERS<br>(Cont'd) | * | Federal Reporter, Vol. 176–Continuing. |
| | * | Federal Supplement, Vol. 180–Continuing. |
| | * | U.S. Reports, Vol. 269–Continuing, or |
| | * | U.S. Supreme Court Reports, Lawyers Ed., Vol. 1–Continuing, or |
| | * | Supreme Court Reporter, Vol. 70–Continuing. |
| SHEPARDS | * | U.S. Citations. |
| | * | Federal Citations. |
| | * | California Citations. |
| SECONDARY<br>SOURCES | * | Appeals and Writs in Criminal Cases, 1982 with newest update. |
| | * | Ballentine's Law Dictionary, or |
| | * | Black's Law Dictionary, 6th Ed. |
| | * | California Criminal Law Procedures and Practices, 1986 with newest update. |
| | * | California Jurisprudence 3rd. |
| | * | Harvard Law Review Developments on Habeas Corpus 1970 Ed. |
| | * | Sokol, Handbook on Federal Habeas Corpus 2nd Ed. |
| | * | U.S. Law Week (Newspaper) with 1 year back-file. |
| | * | Witkin's California Criminal Law, 2nd Ed. |

The contents of the law library as listed above is REQUIRED to be available and ON-HAND. The above collection does not include the contents of the circulating law library which is also to be available to California state prisoners. (See DOM §53060.14.)

Respectfully submitted,

_James Centobene_

James Centobene, J-17051

DATED: 3/24/08

# EXHIBIT F

# EXHIBIT F

**EMERGENCY APPEAL PER 15 CCR §3084.7 -- Transfer poses irreparable harm.**

STATE OF CALIFORNIA                                                                 DEPARTMENT OF CORRECTIONS

| **INMATE/PAROLEE** | Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|---|
| **APPEAL FORM** | | 1. _____ | 1. _____ | |
| CDC 602 (12/87) | | 2. _____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: _____It appears that the Administration is continuing its pattern of retaliation and denial of access to the Inmate Appeal System for ANY appeal which appears to involve the Out-of-State Transfer Program.   [¶]   On April 2, 2008 I submitted an appeal regarding the Administration's attempt to transfer me out-of-state in an apparent retaliation for my use of the Inmate Appeal System.   (See attached.)   It has been over two weeks now and I still haven't received a Log Number or any other form of acknowledgment that my 602 Appeal has been received.   [¶]   In addition, even the fact that I am being considered for an out-of-state transfer just reeks of retaliation.   According to the Governor's

If you need more space, attach one additional sheet.   (Continued on Attached Additional Page)

B. Action Requested: _____That, **ONE:**  My April 2, 2008 Inmate Appeal is acknowledged and processed -- and a Log Number issued; and, **TWO:**  That this present appeal is acknowledged, processed, a Log Number issued and a decision reached on the merits; and, **THREE:**  That the Administration cease and desists its attempts to involuntarily transfer me out-of-state.

Inmate/Parolee Signature: _____   Date Submitted: 4/15/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____   Date Returned to Inmate: _____

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed   CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

Centobene, J-17051, RB-201L, Continued from Paragraph "A"

October 4, 2006 Emergency Proclamation, inmate selection for out-of-state transfers start with: First, inmates who have previously been deported, or are subject to deportation; Second, inmates who are paroling outside of California; and then Third (as applicable to me), inmates who have limited supportive ties in California as based on visitation records. (See attached Memorandum dated Feb. 2, 2007, p. 1.)

Among these groups of potentially eligible inmates, the criteria is prioritized as follows: First, those inmates with an active immigration hold; Second, those inmates with a potential immigration hold and an aggravated felony; Third, those inmates with a potential immigration hold that do not have an aggravated felony; and Fourth, those inmates born in the United States. (See Memorandum, pp. 1-2.)

Even then, among those inmates in the **FOURTH GROUP** to be considered, those inmates which DO NOT HAVE A JOB ASSIGNMENT are to be considered first. (See Memorandum, p. 2, No. 4.)

As of August 2000, with a population of approximately 161,000 inmates, there were a staggering 22,000 inmates with immigration holds placed on them. (See Forward, CA State Prisoners Handbook, 3rd Ed. (2001).) Add to this number, the vast number of inmates which DO NOT HAVE A JOB ASSIGNMENT and you have a tremendous pool of eligible inmates (easily exceeding 70,000 inmates) which must be considered before this Administration can even consider me.

However, this has not happened. At this time, I am the only inmate I know of who has a job and is still being considered for an out-of-state transfer. (Even if I'm not, that does not excuse the Administration and the CDCR from properly considering those higher priority inmates before me.)

As it stands now, it appears that the Administration has targeted me for transfer in retaliation for my use of the Inmate Appeal System. I have submitted three inmate appeals: One, challenging the state's coerced racial integration; the second challenging the illegal collection of "Use" taxes on inmate purchases; and the third challenging the arbitrary denial of visits to entire classes of inmates. -- Appeals which can impact the entire CDCR system.

After being asked by the Administration to withdraw my appeal, two days later I am told that I'm being considered for an out-of-state transfer -- ahead of the 70,000 other inmates who have a greater priority than myself.

The retaliation speaks for itself.

_James Centobene_  Dated: 4/15/08

James Centobene

STATE OF CALIFORNIA                                                                  DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| | Location: Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| | 1. _____ ____ | 1. __ _____ . | |
| | 2. _____ ____ | 2. _____ | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: It appears that the Administration is retaliating against me for my use of the Inmate Appeal system in violation of the U.S. Constitution -- 1st, 8th and 14th Amendments. On 3/16/08, Sgt. Verdesoto interviewed me regarding a visiting 602. After informing me that my 602 would not be granted, Sgt. Verdesoto asked me if I wanted to withdraw my 602 and I declined. TWO DAYS LATER on 3/18/08, C.C.I. Robinson came to my cell door and told me that I am facing an involuntary out-of-state transfer.

If you need more space, attach one additional sheet.

B. Action Requested: That the Administration stops retaliating against me for my use of the Inmate Appeal system and cease and desists its attempts to involuntarily transfer me out-of-state.

Inmate/Parolee Signature: _____    Date Submitted: 4/2/08

C. INFORMAL LEVEL (Date Received: _____ _____ _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: ___ _____    Date Submitted: ___ ___ _____

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

State of California                                                                    Department of Corrections and Rehabilitation

# Memorandum

ate    :   February 2, 2007

To      :   Associate Directors – Division of Adult Institutions
            Regional Medical Directors
            Regional Administrators, Division of Correctional Health Care Services
            Wardens
            Health Care Managers
            Classification Staff Representatives
            Classification and Parole Representatives
            Correctional Counselor IIIs-Reception Centers
            Correctional Case Records Manager

Subject:   CALIFORNIA OUT-OF-STATE CORRECTIONAL FACILITY PROGRAM, PHASE III

On October 31, 2006, the California Department of Corrections and Rehabilitation (CDCR) implemented Phase II of the California Out-of-State Correctional Facility (COCF) Program. Despite the enormous effort of interviewing every potential candidate for voluntary placement, insufficient numbers of inmates have volunteered for out-of-state placement. The purpose of this memorandum is to announce mandatory transfers in Phase III of the implementation of the COCF program and to instruct staff on the procedures for identification and transfer of inmates to out-of-state facilities. Please ensure a copy of this memorandum is provided for all Correctional Counselors (CC).

In accordance with the October 4, 2006, Governor's State of Emergency Proclamation, the CDCR Secretary is authorized to prioritize the mandatory transfer of inmates who meet the following criteria:

1. Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.
2. Inmates who are paroling outside of California.
3. Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.
4. Inmates who have family or supportive ties in a transfer state.
5. Other inmates as deemed appropriate by the CDCR Secretary.

The potential pool of eligible inmates who meet the criteria as set by the Governor's Emergency Proclamation shall be prioritized as follows:

1. Inmates who have active Immigration and Customs Enforcement (ICE) holds.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or Substance Abuse Treatment Program (SAP) assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending assignment.
      • Work Group/Privilege Group A1/A, pending assignment.
   D. All other inmates who have an active ICE hold.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 2

2. Inmates who have a potential ICE hold and have a conviction for an aggravated felony.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or SAP assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending job assignment.
      • Work Group/Privilege Group A1/A, pending job assignment.
   D. All other inmates who have a potential ICE hold and have a conviction for an aggravated felony.

3. Inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or SAP assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending job assignment.
      • Work Group/Privilege Group A1/A, pending job assignment.
   D. All other inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.

4. Inmates who were born in the United States or inmates who are naturalized citizens.
   A. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
   D. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.

## MINIMUM CUSTODY NOTIFICATION

Inmates who currently have minimum custody or eligible for reduction to minimum custody are not eligible for involuntary transfer out of state; this includes inmates with an active or potential ICE hold. The Wardens are to ensure the affected inmates are aware of this decision. To attempt to eliminate the potential risk of flight, please advise the inmates and provide them with the English (Attachment A) or Spanish (Attachment B) handout which notifies the inmate that he is not subject to involuntary out-of-state transfer.

# EXHIBIT G

# EXHIBIT G

**INMATE/PAROLEE APPEAL FORM**

CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | | 1. | |
| 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Centobene | J-17051 | 3rd Watch Porter | RB-201L |

A. Describe Problem: This Administration is denying every White and Northern Mexican inmate the ability to be free from arbitrary and retaliatory decision making procedures regarding out-of-state transfers in violation of the 8th and 14th Amendments of the U.S. Const. According to the Governor's Emergency Proclamation and the February 2, 2007 Memorandum issued by Director Scott Kernan, the Administration is to screen for eligible out-of-state transfer inmates based on the following criteria (given in order of priority): First, those inmates with an active immigration hold; Second, those inmates with a potential immigration hold and an aggravated felony; Third, those inmates with a potential immigra-

If you need more space, attach one additional sheet.        (Continued on Attached Additional Page)

B. Action Requested: **ONE:** I am CREDITED with the two visits the Administration prevented me from having; **TWO:** The Administration cease and desists its attempts to transfer me out-of-state; and, **THREE:** The Administration extend its consideration period for visits by the five months which they have been denied to all similarly situated inmates.

Inmate/Parolee Signature: _____        Date Submitted: 4/17/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____        Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

Centobene, J-17051, RB-201L, Continued from Paragraph "A"

tion hold that do not have an aggravated felony; and Fourth, those inmates born in the United States.  (See attached Memorandum, pp. 1-2.)

In each category of inmates, the dominant factor used to determine whether an inmate is eligible for an out-of-state transfer is whether they have had a visit within the last year or two.  (See Memorandum, pp. 1-2.)  It is with regard to this most crucial factor, i.e., visits, that the Administration is rendering its arbitrary and retaliatory decisions.

Since November 28, 2007, in response to a stabbing incident and two separate riots between White and Northern Mexican inmates, all visits have been denied to these groups of inmates.  While the Administration holds that the decision was made for "safety and security" purposes, nothing prevents the Administration from providing visits to White and Northern Mexican inmates on a rotating basis -- the same as was being done for Medical, Dental and Law Library access.  As it stands now, the only inmates being denied visits are those inmates which had no involvement in the original incidents.

Now turning to the issue at hand -- i.e., the selection process for out-of-state eligible inmates -- this Administration is relying on the visiting records of potentially eligible inmates to decide whether or not to transfer an inmate out-of-state.  After denying all visits to all White and Northern Mexican inmates for NEARLY FIVE MONTHS, the Administration now says they want to transfer those very same inmates out-of-state FOR NOT HAVING THE VISITS THE ADMINISTRATION PREVENTED!!!  This is the most basest denial of fundamental due process and fair play as envisioned by the 14th Amendment of the U.S. Constitution.

Back in early December, 2007 (about two or three weeks before Christmas), I received a letter from my very close friend, John Williams, stating that he would like to come and visit me -- as a Christmas visit/present.  Unfortunately, I had to tell him that I was on lockdown and that I was unable to visit with him.

Then nearly four months later on March 28, 2008, John writes me again and tells me that he would like to visit me.  (See attached letter.)  Again, I was forced to tell him that I am still on lockdown (even though I did nothing wrong) and unable to visit with him.

There is no doubt that the Administration's denial of visits to all White and Northern Mexican inmates was in retaliation for the actions of a relatively few inmates.  It is equally well-settled that the suspension of all visits to White and Northern Mexican inmates was not pursuant to any disciplinary proceeding AND that the Administration could have provided those visits on a rotating basis; thus relieving any safety and security concerns.

Nonetheless, the Administration now seeks to compound that error by making a White or Northern Mexican inmate eligible for an out-of-state transfer based on the lack of visits which the Administration prevented.  The retaliatory denial of visits has now become, by extension, a retaliatory out-of-state transfer (the fruit of the poisonous tree) in violation of the 8th Amendment of the U.S. Constitution and the denial of fundamental due process in violation of the 14th Amendment of the U.S. Constitution.

_James Centobene_ Dated: 4/17/08

James Centobene

**Dear James  March 28 2008**

I got your letter of March 23 today and I have ordered the goods from Walkenhorsts. Order #46723
Unfortunately it is probably too late to be counted in first quarter. SO!
I am concerned about your risk of transfer. I suppose I could reduce this by making a visit. But it really is hard for me. The journey is 1 ½ hours each way. But that is not the problem. It is the wait to be processed and the crowd on Sundays that would exhaust me. Is there any other day that visiting is allowed?
I am traveling to UK in May for three weeks. I will be home for June, July and August.
I do hope you will succeed in your appeal and that your fight to change segregation is successful. It will keep you very busy.

Do not worry about a check. Accept this parcel as a birthday gift. If you want another this year then you can send a check anytime. The total cost was $95.26.
Isopine conditioning shampoo was not available (out of stock).

**Good luck   John**

State of California                                          Department of Corrections and Rehabilitation

## Memorandum

ate   :   February 2, 2007

To    :   Associate Directors – Division of Adult Institutions
          Regional Medical Directors
          Regional Administrators, Division of Correctional Health Care Services
          Wardens
          Health Care Managers
          Classification Staff Representatives
          Classification and Parole Representatives
          Correctional Counselor IIIs-Reception Centers
          Correctional Case Records Manager

Subject:   CALIFORNIA OUT-OF-STATE CORRECTIONAL FACILITY PROGRAM, PHASE III

On October 31, 2006, the California Department of Corrections and Rehabilitation (CDCR) implemented Phase II of the California Out-of-State Correctional Facility (COCF) Program. Despite the enormous effort of interviewing every potential candidate for voluntary placement, insufficient numbers of inmates have volunteered for out-of-state placement. The purpose of this memorandum is to announce mandatory transfers in Phase III of the implementation of the COCF program and to instruct staff on the procedures for identification and transfer of inmates to out-of-state facilities. Please ensure a copy of this memorandum is provided for all Correctional Counselors (CC).

In accordance with the October 4, 2006, Governor's State of Emergency Proclamation, the CDCR Secretary is authorized to prioritize the mandatory transfer of inmates who meet the following criteria:

1. Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.
2. Inmates who are paroling outside of California.
3. Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.
4. Inmates who have family or supportive ties in a transfer state.
5. Other inmates as deemed appropriate by the CDCR Secretary.

The potential pool of eligible inmates who meet the criteria as set by the Governor's Emergency Proclamation shall be prioritized as follows:

1. Inmates who have active Immigration and Customs Enforcement (ICE) holds.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or Substance Abuse Treatment Program (SAP) assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending assignment.
      • Work Group/Privilege Group A1/A, pending assignment.
   D. All other inmates who have an active ICE hold.

Associate Directors – Division of Adult Institutions
Regional Medical Directors
Regional Administrators, Division of Correctional Health Care Services
Wardens
Health Care Managers
Classification Staff Representatives
Classification and Parole Representatives
Correctional Counselor IIIs-Reception Centers
Correctional Case Records Managers
Page 2

2. Inmates who have a potential ICE hold and have a conviction for an aggravated felony.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or SAP assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending job assignment.
      • Work Group/Privilege Group A1/A, pending job assignment.
   D. All other inmates who have a potential ICE hold and have a conviction for an aggravated felony.

3. Inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
   A. The inmate has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is not currently in a work, education, vocation, or SAP assignment.
      • Work Group/Privilege Group C/C.
      • Work Group/Privilege Group A2/B, pending job assignment.
      • Work Group/Privilege Group A1/A, pending job assignment.
   D. All other inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.

4. Inmates who were born in the United States or inmates who are naturalized citizens.
   A. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
   B. The inmate is not currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.
   C. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last two years as reflected by the visiting records.
   D. The inmate is currently in a work, education, vocation, or SAP assignment and he has not had a visit in the last year as reflected by the visiting records.

## MINIMUM CUSTODY NOTIFICATION

Inmates who currently have minimum custody or eligible for reduction to minimum custody are not eligible for involuntary transfer out of state; this includes inmates with an active or potential ICE hold. The Wardens are to ensure the affected inmates are aware of this decision. To attempt to eliminate the potential risk of flight, please advise the inmates and provide them with the English (Attachment A) or Spanish (Attachment B) handout which notifies the inmate that he is not subject to involuntary out-of-state transfer.

# EXHIBIT H

# EXHIBIT H

Date: April 10, 2008

To: DUNWORTH          F12115          RB-248L

Subject: **SECOND LEVEL APPEAL RESPONSE LOG # CTF-S-08-01349**

### ISSUE: COCF TRANSFER

The Appellant requests to be excluded from out-of-state transfer for the following reasons:

☐ Inaccurate/missing or new information          ☐ Program/Assignments

☐ Subject to Armstrong, Coleman or Clark          ☐ Visits

☐ Medical/Mental Health concerns          ☒ Other **Family/Legality**

The appellant was interviewed on **April 9, 2008** by P. Santiago, Appeals Coordinator. At that time he provided the following information in support of his argument that he should not be transferred and/or that the information contained on his CDC 128 G (Referral chrono) dated **3/28/08** was incomplete or in error, and/or that his case factors have changed since his referral such that he is now excluded. The inmate states that: My Mother passed away (2/29/08) and I need to be in California to help settle her estate with my Brothers. It is cruel and unusual punishment on my Family to transfer me Out-of-State, all my family ties are here in California.

**DOES THE INMATE REQUIRE AN ACCOMMODATION TO ESTABLISH EFFECTIVE COMMUNICATION?**   (check one) YES ☐   NO☒. If "yes", note the accommodation provided:

**DISCUSSION:** *Appellant has not established that there is incomplete/in error/or that his case factors have changed since his referral dated April 3, 2008. The appellant does meet the current Phase III criteria.*

After consideration of the appellant's position and the evidence presented, a review was conducted to determine whether the documentation and information provided supports the transfer referral or might exclude the appellant from transfer. A determination has been made that the appellant:

☒ **is not** excluded from out-of-state transfer.

☐ **may be** excluded from out-of-state transfer based upon further review for the following reason(s):

☐ Refer to **Classification** staff          ☐ Refer to **Case Records**

☐ Refer to **Health Care** staff          ☐ Refer to **Visiting**

☐ Refer to **Mental Health** Services          ☐ Other

**DECISION:** Based upon the above information the appeal is:

☒ **Denied:** The appellant has failed to demonstrate why he should be excluded from out of state transfer. A review of the information currently available indicates that the appellant is eligible for transfer and that the transfer does not pose a threat to his safety.
*Denial of this appeal at the 2nd level will not prevent transfer pending 3rd level review. However, if the appellant wishes to appeal to 3rd level, they should fill out Section "H" of the CDC Form 602 (Inmate Appeal Form) and immediately return to the Appeals Coordinator for emergency processing.*

☐ **Partially Granted:** Transfer will be postponed pending review by staff. If an exclusionary factor is identified during the review, the case will be returned to ICC for re-referral to the CSR. If no exclusionary factor is identified, or if subsequent to review eligibility is reaffirmed by ICC and/or the CSR, the appellant will be notified as soon as their eligibility for transfer is restored. The appellant may then send his appeal to the Appeals Coordinator for emergency processing at the Director's Level.

Warden Signature _____          Date 4/10/08

CTF Institution

STATE OF CALIFORNIA
CORRECTIONAL TRAINING FACILITY

DEPARTMENT OF CORRECTIONS
INMATE APPEALS SCREENING FORM

### *** YOUR APPEAL IS BEING HELD FOR THE FOLLOWING REASON(S) ***

| Name | CDC Number | Housing | Unit | Category |
|------|-----------|---------|------|----------|
| DUNWORTH | F-12115 | RB-248U | UNIT V | COCF 15-9 |

1. Your Inmate/Parolee Form (CDC-602) does not have the proper documents needed for processing, per CCR 3084. CTF Appeals Office will hold your Inmate Appeal and will be helping you collect the below listed documents. This Screen Out Notice will serve as a notice that your Appeal has been received.

   a. ☒  CDC 128C Medical Chrono
   b. ☒  CDC 128G ICC Chrono
   c. ☒  CDC 128G CSR Chrono
   d. ☒  OTHER:**CDC 840**

2. The Appeals Office will notify you once we have all the needed documents and begin processing Appeal as an Emergency 2nd Level Appeal Response.

3. Present this form and attached documents to your assigned Counselor at ICC, if/once you are notified of CSR endorsement.

4. The Appeals Office will also be assisting you in expediting a 3rd Level Appeal Response.

**P. Santiago / P. G. Dennis**
**Appeals Coordinators**

This screening decision may not be appealed unless you allege the above reason is inaccurate

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

2ND LEVEL

Location: Institution/Parole Region    APR 10 2008    Log No.    Category

1. CTF-S    1. 08-01349    15-9
2.    2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Dunworth J. | NUMBER F-12115 | ASSIGNMENT | UNIT/ROOM NUMBER R.B-B-248 |

**A. Describe Problem:** Involuntary transfer out of State. 8th Amend Cruel & unusal punishment all my Family ties are here. Death in family 2-29-08 mother, estate must be settled Grandma lives in Sunnyvale need to be near she's over 80. I will be paroleing to mariposa were all 3 of my Brothers live. I can get visit from my family know, before I was to far away up at Susanville I was working at Susanville A-1-A Inp-Adv-Tranfer They Closed the GYM. Strong family ties to central California, Other placement Would cause hard Ship.

If you need more space, attach one additional sheet.    Continued on attached Page

**B. Action Requested:** To be taken off the Involuntary transfer List. and allow me to remaining central California Prison, Placed into own town "SCC" to continue maintaining family and Community Connections Process all appeals before transfer

Inmate/Parolee Signature: Jack Dunwitt    Date Submitted: 3-24-08

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

RECEIVED
APR - 7 2008
CTF APPEALS

RECEIVED
MAR 26 2008
CTF APPEALS

08-01349

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

BYPASS

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:    Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

BYPASS

Signature: _____ Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____    **APR 14 2008**

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **APR 07 2008**    Due Date: APR 18 2008

☒ See Attached Letter

Signature: _____ Appeals Coordinator    Date Completed: 4-10-08

Warden/Superintendent Signature: _____    Date Returned to Inmate: **APR 10 2008**

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

☐ See Attached Letter

Date: _____

CDC 602 (12/87)

3-24-08

I'm on the work list for a Job, school list I would like to be put in Sap in California. I've been told Sap has pre-release and re-entry in Cal, not Some state thousand of miles away. This transfer fails to take into account people who want to go or who have no family ties to California, I have family, I get Quarterly Packages, I use the phone mail. And win we get off lock down my Brothers would like to Come see Me.

Thank you for your time.

Josh Dunworth F-12115

moreover, a Sacramento County Superior Court Judge Gail Ohanesian has already ruled against prison transfers. The Court ruled that transfers violated the emergency act and a provision in the state Constitution. To transfer me against my will after that ruling violates the separation of power clause of $ the state and federal Constitutions An out-of-state transfer will be adverse in nature for all reasons stated in this 602. Transfering me out-of-state against my will, thus, Constituting Cruel and unusual punishment in violation of the state's and federal (8th Amendment) Constitutions Clauses prohibiting cruel and unusual punishment. California Due Process "Cal. Const. Art. 1 §7) "freedom from arbitrary adjudicative procedures is a substantive element of ones liberty" Saleeby vs. State, California Inmates have an obvious interest in not being transferred to a prison hundreds or thousands of miles from their homes and families and thus being deprived of the possibility of visits from them. And California Constitutional, statutory and regulatory law all recognize and protect the rights of prisoners to maintain Contact with their families. See In Re Smith 112 Cal. App. 3d 956, 968-69 (1980) Cal. Penal Code § 5068, 2; 15 Cal. Code Reg 3170

over

Given the importance of these interests - and the legal protect-
ions our laws accord them -- due process requires that the CDCR
implement procedures so that it "having elected to exercise the
discretion conferred upon it by the legislature, will exercise that
discretion in a nonarbitrary, nondiscriminatory fashion".
Saleeby, 39 Cal.3d at 535. Inmates thus have a right to
have the procedures established to regulate the transfer program
followed in an accurate and meaningful manner.

**VALLEY ADULT SCHOOL**

CHANGE TIME TO KNOWLEDGE



# EXHIBIT I

# EXHIBIT I

**\*97721 West's Ann.Cal.Penal Code § 11189**

WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11189. Interstate corrections compact; form; contents

The Interstate Corrections Compact as set forth in this section is hereby adopted and entered into with all other jurisdictions joining therein. The provisions of the interstate compact are as follows:

### INTERSTATE CORRECTIONS COMPACT

This section may be cited as the Interstate Corrections Compact.

The Interstate Corrections Compact is hereby enacted into law and entered into by this state with any other states legally joining therein in the form substantially as follows:

### INTERSTATE CORRECTIONS COMPACT

#### ARTICLE I

#### Purpose and Policy

The party states, desiring by common action to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of cooperation with one another, thereby serving the best interests of such offenders and of society and effecting economies in capital expenditures and operational costs. The purpose of this compact is to provide for the mutual development and execution of such programs of cooperation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources.

#### Article II

#### Definitions

As used in this compact, unless the context clearly requires otherwise:

(a) "State" means a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico.

**\*97722** (b) "Sending state" means a state party to this compact in which conviction or court commitment was had.

(c) "Receiving state" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction or court commitment was had.

(d) "Inmate" means a male or female offender who is committed, under sentence to or confined in a penal or correctional institution.

(e) "Institution" means any penal or correctional facility, including but not limited to a facility for the mentally ill or mentally defective, in which inmates as defined in (d) above may lawfully be confined.

#### Article III

© 2007 Thomson/West. No claim to original U.S. Govt. works.

### Contracts

(a) Each party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in institutions situated within receiving states. Any such contract shall provide for:

1. Its duration.

2. Payments to be made to the receiving state by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities, programs or treatment not reasonably included as part of normal maintenance.

3. Participation in programs of inmate employment, if any; the disposition or crediting of any payments received by inmates on account thereof; and the crediting of proceeds from or disposal of any products resulting therefrom.

4. Delivery and retaking of inmates.

5. Such other matters as may be necessary and appropriate to fix the obligations, responsibilities and rights of the sending and receiving states.

(b) The terms and provisions of this compact shall be a part of any contract entered into by the authority of or pursuant thereto, and nothing in any such contract shall be inconsistent therewith.

### Article IV

### Procedures and Rights

*97723 (a) Whenever the duly constituted authorities in a state party to this compact, and which has entered into a contract pursuant to Article III, shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

(b) The appropriate officials of any state party to this compact shall have access, at all reasonable times, to any institution in which it has a contractual right to confine inmates for the purpose of inspecting the facilities thereof and visiting such of its inmates as may be confined in the institution.

(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state; provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

(d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact including a conduct record of each inmate and certify said record to the official designated by the sending state, in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

(e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an

© 2007 Thomson/West. No claim to original U.S. Govt. works.

appropriate institution of the sending state.

(f) Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state. The receiving state shall provide adequate facilities for such hearings as may be conducted by the appropriate officials of a sending state. In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made. Said record together with any recommendations of the hearing officials shall be transmitted forthwith to the official or officials before whom the hearing would have been had if it had taken place in the sending state. In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state.

**\*97724** (g) Any inmate confined pursuant to this compact shall be released within the territory of the sending state unless the inmate, and the sending and receiving states, shall agree upon release in some other place. The sending state shall bear the cost of such return to its territory.

(h) Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state.

(i) The parent, guardian, trustee, or other person or persons entitled under the laws of the sending state to act for, advise, or otherwise function with respect to any inmate shall not be deprived of or restricted in his exercise of any power in respect of any inmate confined pursuant

to the terms of this compact.

### Article V

## Acts Not Reviewable in Receiving State: Extradition

(a) Any decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not reviewable within the receiving state, but if at the time the sending state seeks to remove an inmate from an institution in the receiving state there is pending against the inmate within such state any criminal charge or if the inmate is formally accused of having committed within such state a criminal offense, the inmate shall not be returned without the consent of the receiving state until discharged from prosecution or other form of proceeding, imprisonment or detention for such offense. The duly accredited officers of the sending state shall be permitted to transport inmates pursuant to this compact through any and all states party to this compact without interference.

(b) An inmate who escapes from an institution in which he is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for institution of extradition or rendition proceedings shall be that of the sending state, but nothing contained herein shall be construed to prevent or affect the activities of officers and agencies of any jurisdiction directed toward the apprehension and return of an escapee.

### \*97725 Article VI

#### Federal Aid

Any state party to this compact may accept federal aid for use in connection with any institution or program, the use of which is or may be affected by this compact or any contract pursuant hereto and any inmate in a receiving state pursuant to this compact may participate in

© 2007 Thomson/West. No claim to original U.S. Govt. works.

any such federally aided program or activity for which the sending and receiving states have made contractual provision, provided that if such program or activity is not part of the customary correctional regimen, the express consent of the appropriate official of the sending state shall be required therefor.

## Article VII

### Entry Into Force

This compact shall enter into force and become effective and binding upon the states so acting when it has been enacted into law by any two states. Thereafter, this compact shall enter into force and become effective and binding as to any other of said states upon similar action by such state.

## Article VIII

### Withdrawal and Termination

This compact shall continue in force and remain binding upon a party state until it shall have enacted a statute repealing the same and providing for the sending of formal written notice of withdrawal from the compact to the appropriate officials of all other party states. An actual withdrawal shall not take effect until one year after the notices provided in said statute have been sent. Such withdrawal shall not relieve the withdrawing state from its obligations assumed hereunder prior to the effective date of withdrawal. Before the effective date of withdrawal, a withdrawing state shall remove to its territory, at its own expense, such inmates as it may have confined pursuant to the provisions of this compact.

## Article IX

### Other Arrangements Unaffected

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a nonparty state for the confinement, rehabilitation or treatment of inmates nor to repeal any other laws of a party state authorizing the making of cooperative institutional arrangements.

## *97726 Article X

### Construction and Severability

The provisions of this compact shall be liberally construed and shall be severable. If any phrase, clause, sentence or provision of this compact is declared to be contrary to the constitution of any participating state or of the United States or the applicability thereof to any government, agency, person or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person or circumstance shall not be affected thereby. If this compact shall be held contrary to the constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

### CREDIT(S)

*(Added by Stats.1976, c. 667, p. 1647, § 2.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

#### 2007 Electronic Pocket Part Update

Complementary Legislation:
  Ala.--Code 1975, §§ 14-13-1 to 14-13-3.
  Alaska--AS 33.36.010 to 33.36.040.
  Ariz.--A.R.S. §§ 31-491, 31-492.
  Ark.--A.C.A. §§ 12-49-101 to 12-49-103..
  Cal.--West's Ann.Cal.Penal Code, § 11189.
  Colo.--West's C.R.S.A. §§ 24-60-1601 to 24-60-1603.
  Conn.--C.G.S.A. §§ 18-105 to 18-107.
  Del.--11 Del.C. §§ 6570 to 6573.
  D.C.--D.C. Official Code, 2001 Ed. §§ 24-1001, 24-1002.
  Fla.--West's F.S.A. §§ 941.55 to 941.57.
  Ga.--O.C.G.A. §§ 42-11-1 to 42-11-3.
  *97727 Hawaii--H R S §§ 355D-1 to 355D-5.
  Idaho--I.C. §§ 20-701 to 20-704.

Ill.--S.H.A. 730 ILCS 5/3-4-4.
Ind.--West's A.I.C. 11-8-4-1 to 11-8-4-20.
Iowa--I.C.A. §§ 913.1 to 913.3.
Kan.--K.S.A. 76-3001 to 76-3003.
Ky.--KRS 196.610, 196.620.
Maine--34-A M.R.S.A. §§ 9401 to 9424.
Md.--Code, Correctional Services, §§ 8-601 to 8-611.
Minn.--M.S.A. §§ 241.28 to 241.30.
Mo.--V.A.M.S. §§ 217.525 to 217.540.
Mt.--M.C.A. 46-19-401, 46-19-402.
Neb.--R.R.S. 1943, §§ 29-3401, 29-3402.
Nev.--N.R.S. 215A.010 to 215A.060.
N.H.--RSA 622-B:1 to 622-B:3.
N.J.--N.J.S.A. 30:7C-1 to 30:7C-12.
N.M.--NMSA 1978, §§ 31-5-17 to 31-5-19.
N.C.--G.S. §§ 148-119 to 148-121.
Ohio--R.C. § 5120.50.
Okl.--57 Okl.St.Ann. §§ 601, 602.
Ore.--ORS 421.245, 421.250, 421.254.
Pa.--61 P.S. §§ 1061 to 1063.
S.C.--Code 1976, §§ 24-11-10 to 24-11-30.
Tenn.--T.C.A. §§ 41-23-101 to 41-23-104.
*97728 Tex.--Vernon's Ann.C.C.P. art. 42.19.
Utah--U.C.A. 1953, 77-28a-1 to 77-28a-5.
Vt.--28 V.S.A. §§ 1601 to 1610.
Va.--Code 1950, §§ 53.1-216, 53.1-217.

Wash.--West's    RCWA    72.74.010    to    72.74.070,
    72.74.900.
Wis.--W.S.A. 302.25 to 302.26.

## REFERENCES

## RESEARCH REFERENCES

Encyclopedias

CA Jur. 3d Penal and Correctional Institutions § 62, Transfer of Inmate to Institution in Another State; Interstate Corrections Compacts.

Treatises and Practice Aids

4 Witkin Cal. Crim. L. 3d Jurisdiction and Venue § 29, (S 29) State Statutes.

3 Witkin Cal. Crim. L. 3d Punishment § 14, (S 14) Adoption and Nature of Compacts.

7 Witkin, California Summary 10th Constitutional Law § 66, Interstate Compacts and Reciprocal Agreements.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97729 West's Ann.Cal.Penal Code § 11190**

## WEST'S ANNOTATED CALIFORNIA CODES PENAL CODE PART 4. PREVENTION OF CRIMES AND APPREHENSION OF CRIMINALS TITLE 1. INVESTIGATION AND CONTROL OF CRIMES AND CRIMINALS CHAPTER 2. CONTROL OF CRIMES AND CRIMINALS ARTICLE 4. INTERSTATE CORRECTIONS COMPACTS

*Current with all 2006 laws and all propositions appearing on the Nov. 7, 2006 ballot*

## § 11190. Western interstate corrections compact; form; contents

The Western Interstate Corrections Compact as contained herein is hereby enacted into law and entered into on behalf of this State with any and all other states legally joining therein in a form substantially as follows:

### WESTERN INTERSTATE CORRECTIONS COMPACT

#### ARTICLE I

#### Purpose and Policy

The party states, desiring by common action to improve their institutional facilities and provide programs of sufficiently high quality for the confinement, treatment and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of co-operation with one another, thereby serving the best interests of such offenders and of society. The purpose of this compact is to provide for the development and execution of such programs of co-operation for the confinement, treatment and rehabilitation of offenders.

#### ARTICLE II

#### Definitions

As used in this compact, unless the context clearly requires otherwise:

(a) "State" means a state of the United States, or, subject to the limitation contained in Article VII, Guam.

(b) "Sending state" means a state party to this compact in which conviction was had.

(c) "Receiving state" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction was had.

(d) "Inmate" means a male or female offender who is under sentence to or confined in a prison or other correctional institution.

(e) "Institution" means any prison, reformatory or other correctional facility (including but not limited to a facility for the mentally ill or mentally defective) in which inmates may lawfully be confined.

#### \*97730 ARTICLE III

#### Contracts

(a) Each party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in institutions situated within receiving states. Any such contract shall provide for:

1. Its duration.

2. Payments to be made to the receiving state by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities,

© 2007 Thomson/West. No claim to original U.S. Govt. works.

programs or treatment not reasonably included as part of normal maintenance.

3. Participation in programs of inmate employment, if any; the disposition or crediting of any payments received by inmates on accounts thereof; and the crediting of proceeds from or disposal of any products resulting therefrom.

4. Delivery and retaking of inmates.

5. Such other matters as may be necessary and appropriate to fix the obligations, responsibilities and rights of the sending and receiving states.

(b) Prior to the construction or completion of construction of any institution or addition thereto by a party state, any other party state or states may contract therewith for the enlargement of the planned capacity of the institution or addition thereto, or for the inclusion therein of particular equipment or structures, and for the reservation of a specific per centum of the capacity of the institution to be kept available for use by inmates of the sending state or states so contracting. Any sending state so contracting may, to the extent that moneys are legally available therefor, pay to the receiving state, a reasonable sum as consideration for such enlargement of capacity, or provision of equipment or structures, and reservation of capacity. Such payment may be in a lump sum or in installments as provided in the contract.

(c) The terms and provisions of this compact shall be a part of any contract entered into by the authority of or pursuant thereto, and nothing in any such contract shall be inconsistent therewith.

## *97731 ARTICLE IV

### Procedures and Rights

(a) Whenever the duly constituted judicial or administrative authorities in a state party to this compact, and which has entered into a contract pursuant to Article III, shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary in order to provide adequate

quarters and care or desirable in order to provide an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

(b) The appropriate officials of any state party to this compact shall have access, at all reasonable times, to any institution in which it has a contractual right to confine inmates for the purpose of inspecting the facilities thereof and visiting such of its inmates as may be confined in the institution.

(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state; provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

(d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact including a conduct record of each inmate and certify said record to the official designated by the sending state, in order that each inmate may have the benefit of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information for the sending state.

(e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be cared for and treated equally with such similar inmates of the

© 2007 Thomson/West. No claim to original U.S. Govt. works.

receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

**\*97732** (f) Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state. The receiving state shall provide adequate facilities for such hearings as may be conducted by the appropriate officials of a sending state. In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made. Said record together with any recommendations of the hearing officials shall be transmitted forthwith to the official or officials before whom the hearing would have been had if it had taken place in the sending state. In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state. Costs of records made pursuant to this subdivision shall be borne by the sending state.

(g) Any inmate confined pursuant to this compact shall be released within the territory of the sending state unless the inmate, and the sending and receiving states, shall agree upon release in some other place. The sending state shall bear the cost of such return to its territory.

(h) Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state.

(i) The parent, guardian, trustee, or other person or persons entitled under the laws of the sending state to act for, advise, or otherwise function with respect to any inmate shall not be deprived of or restricted in his exercise of any power in respect of any inmate confined pursuant to the terms of this compact.

## ARTICLE V

### Acts Not Reviewable in Receiving State; Extradition

(a) Any decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not reviewable within the receiving state, but if at the time the sending state seeks to remove an inmate from an institution in the receiving state there is pending against the inmate within such state any criminal charge or if the inmate is suspected of having committed within such state a criminal offense, the inmate shall not be returned without the consent of the receiving state until discharged from prosecution or other form of proceeding, imprisonment or detention for such offense. The duly accredited officers of the sending state shall be permitted to transport inmates pursuant to this compact through any and all states party to this compact without interference.

(b) An inmate who escapes from an institution in which he is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for institution of extradition proceedings shall be that of the sending state, but nothing contained herein shall be construed to prevent or affect the activities of officers and agencies of any jurisdiction directed toward the apprehension and return of an escapee.

### \*97733 ARTICLE VI

### Federal Aid

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Any state party to this compact may accept federal aid for use in connection with any institution or program, the use of which is or may be affected by this compact or any contract pursuant hereto and any inmate in a receiving state pursuant to this compact may participate in any such federally aided program or activity for which the sending and receiving states have made contractual provision provided that if such program or activity is not part of the customary correctional regimen the express consent of the appropriate official of the sending state shall be required therefor.

## ARTICLE VII

### Entry Into Force

This compact shall enter into force and become effective and binding upon the states so acting when it has been enacted into law by any two contiguous states from among the States of Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nebraska, Nevada, New Mexico, Oregon, Utah, Washington and Wyoming. For the purpose of this article, Alaska and Hawaii shall be deemed contiguous to each other; to any and all of the States of California, Oregon and Washington;   and to Guam. Thereafter, this compact shall enter into force and become effective and binding as to any other of said states, or any other state contiguous to at least one party state upon similar action by such state. Guam may become party to this compact by taking action similar to that provided for joinder by any other eligible party state and upon the consent of Congress to such joinder. For the purposes of this article, Guam shall be deemed contiguous to Alaska, Hawaii, California, Oregon and Washington.

## ARTICLE VIII

### Withdrawal and Termination

This compact shall continue in force and remain binding upon a party state until it shall have enacted a statute repealing the same and providing for the sending of formal written notice of withdrawal from the compact to the appropriate officials of all other party states. An actual withdrawal shall not take effect until two years after the notices provided in said statute have been sent.   Such withdrawal shall not relieve the withdrawing state from its obligations assumed hereunder prior to the effective date of withdrawal.    Before the effective date of withdrawal, a withdrawing state shall remove to its territory, at its own expense, such inmates as it may have confined pursuant to the provisions of this compact.

### *97734 ARTICLE IX

### Other Arrangements Unaffected

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a nonparty state for the confinement, rehabilitation or treatment of inmates nor to repeal any other laws of a party state authorizing the making of co-operative institutional arrangements.

### ARTICLE X

### Construction and Severability

The provisions of this compact shall be liberally construed and shall be severable. If any phrase, clause, sentence or provision of this compact is declared to be contrary to the constitution of any participating state or of the United States or the applicability thereof to any government, agency, person or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person or circumstance shall not be affected thereby. If this compact shall be held contrary to the constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3194, § 1.)*

<General Materials (GM) - References,

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Annotations, or Tables>

## HISTORICAL NOTES

## HISTORICAL AND STATUTORY NOTES

### 2007 Electronic Pocket Part Update

Complementary Legislation:
  Alaska--AS 33.36.060 to 33.36.100.
  Ariz.--A.R.S. §§ 31-471 to 31-475.
  Cal.--West's Ann.Cal.Penal Code, §§ 11190 to 11196.
  Colo.--West's C.R.S.A. §§ 24-60-801 to 24-60-805.
  Hawaii--H R S §§ 355-1 to 355-5.
  Mt.--M.C.A. 46-19-301 to 46-19-305.
  N.M.--NMSA 1978, §§ 31-5-4 to 31-5-9.
  Ore.--ORS 421.282 to 421.294.
  Utah--U.C.A. 1953, 77-28-1 to 77-28-5.
  **\*97735** Wash.--West's RCWA 72.70.010 to 72.70.900.
  Wyo.--Wyo.Stat.Ann. §§ 7-3-401 to 7-3-406.

## REFERENCES

## CODE OF REGULATIONS REFERENCES

Documentation hearing, see 15 Cal. Code of Regs. § 2369.
Multijurisdiction prisoners located outside California;
  rights, see 15 Cal. Code of Regs. § 2367.

## LAW REVIEW AND JOURNAL COMMENTARIES

Background and general effect of 1961 addition. (1961)
36 Cal.St.B.J. 808 to 812.

## RESEARCH REFERENCES

Encyclopedias

CA Jur. 3d Penal and Correctional Institutions § 62,
Transfer of Inmate to Institution in Another State; Interstate
Corrections Compacts.

Treatises and Practice Aids

3 Witkin Cal. Crim. L. 3d Punishment § 14, (S 14)
Adoption and Nature of Compacts.

## ANNOTATIONS

## NOTES OF DECISIONS

**Purpose of law 1**

### 1. Purpose of law

Purpose of § 11190 et seq., providing for incarceration
of an inmate in any institution out of the state is to facilitate
successful rehabilitation of inmates.  People v. Flower
(App. 2 Dist. 1976) 133 Cal.Rptr. 455, 62 Cal.App.3d 904.
Prisons ☞13.3

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Case 3:08-cv-02708-WHA  Document 2  Filed 05/29/2008  Page 88 of 96

PENAL Sec. 11191, Commitment or transfer of inmate to institution within or without state; right to    **Page 1**
counsel; consent of inmate; revocation of consent

**\*97736 West's Ann.Cal.Penal Code § 11191**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

**§ 11191. Commitment or transfer of
inmate to institution within or
without state; right to counsel;
consent of inmate; revocation of
consent**

Any court or other agency or officer of this
state having power to commit or transfer an
inmate (as defined in Article II(d) of the
Interstate Corrections Compact or of the Western
Interstate Corrections Compact) to any institution
for confinement may commit or transfer such
inmate to any institution within or without this
state if this state has entered into a contract or
contracts for the confinement of inmates in said
institution pursuant to Article III of the Interstate
Corrections Compact or of the Western Interstate
Corrections Compact, but no inmate sentenced
under California law may be committed or
transferred to an institution outside of this state,
unless he has executed a written consent to the
transfer. The inmate shall have the right to a
private consultation with an attorney of his
choice, or with a public defender if the inmate
cannot afford counsel, concerning his rights and
obligations under this section, and shall be

informed of such right prior to executing the
written consent. At any time more than five
years after the transfer, the inmate shall be
entitled to revoke his consent and to transfer to
an institution in this state. In such cases, the
transfer shall occur within the next 30 days.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3199, § 1. Amended by
Stats.1976, c. 667, p. 1652, § 3.)*

> <General Materials (GM) - References,
> Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY
### NOTES

**2000 Main Volume**

The 1976 amendment rewrote the section, which
previously read:

"Any court or other agency or officer of this State having
power to commit or transfer an inmate (as defined in
Article II(d) of the Western Interstate Corrections
Compact) to any institution for confinement may commit or
transfer such inmate to any institution within or without
this State if this State has entered into a contract or
contracts for the confinement of inmates in said institution
pursuant to Article III of the Western Interstate Corrections
Compact, but no inmate sentenced under California law
may be transferred from an institution within this State to
an institution without this State, unless he has executed, in
the presence of the warden or other head of the institution
in this State in which he is confined, a written consent to
the transfer. An inmate may not revoke such consent."
**\*97737**

### REFERENCES

### LIBRARY REFERENCES

**2000 Main Volume**

Prisons ⟨⟨⟩⟩ 13.5(2).
Westlaw Topic No. 310.
C.J.S. Prisons and Rights of Prisoners §§ 130 to 137.
Cal Digest of Official Reports 3d Series Penal and
Correctional Institutions §§ 4, 11.

### RESEARCH REFERENCES

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97738 West's Ann.Cal.Penal Code § 11192**

### WEST'S ANNOTATED
### CALIFORNIA CODES
### PENAL CODE
### PART 4. PREVENTION OF
### CRIMES AND
### APPREHENSION OF
### CRIMINALS
### TITLE 1. INVESTIGATION
### AND CONTROL OF CRIMES
### AND CRIMINALS
### CHAPTER 2. CONTROL OF
### CRIMES AND CRIMINALS
### ARTICLE 4. INTERSTATE
### CORRECTIONS COMPACTS

*Current with all 2006 laws and all*

*propositions appearing on the Nov. 7,
2006 ballot*

### § 11192. Enforcement of compact; powers

The courts, departments, agencies and officers of this State and its subdivisions shall enforce this compact and shall do all things appropriate to the effectuation of its purposes and intent which may be within their respective jurisdictions including but not limited to the making and submission of such reports as are required by the compact.

#### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3199, § 1.)*

> <General Materials (GM) - References, Annotations, or Tables>

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97739 West's Ann.Cal.Penal Code § 11193**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11193. Hearings

Any inmate sentenced under California law
who is imprisoned in another state, pursuant to a
compact, shall be entitled to all hearings, within
120 days of the time and under the same
standards, which are normally accorded to
persons similarly sentenced who are confined in
institutions in this state. If the inmate consents in
writing, such hearings may be conducted by the
corresponding agencies or officials of such other
jurisdiction. The Board of Prison Terms or its
duly authorized representative is hereby
authorized and directed to hold such hearings as
may be requested by such other jurisdiction or
the inmate pursuant to this section or to Article
IV(f) of the Interstate Corrections Compact [FN1
] or of the Western Interstate Corrections
Compact. [FN2]

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3199, § 1. Amended by
Stats.1965, c. 238, p. 1221, § 19; Stats.1976, c. 667, p.
1653, § 4; Stats.1977, c. 163, p. 677, § 89, eff. June 29,
1977, operative July 1, 1977; Stats.1979, c. 255, p. 569, §
59.)*

[FN1] Section 11189.

[FN2] Section 11190.

<General Materials (GM) - References,
Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY
NOTES

#### 2000 Main Volume

As added, this section read:

"The Adult Authority, or the Board of Trustees,
California Institution for Women as appropriate, or its duly
authorized representative is hereby authorized and directed
to hold such hearings as may be requested by any other
party state pursuant to Article IV(f) of the Western
Interstate Corrections Compact."

The 1965 amendment substituted the "California
Women's Board of Terms and Parole" for the "Board of
Trustees, California Institution for Women".

\*97740 The 1976 amendment added the first two
sentences and substituted in the third sentence "such other
jurisdiction or the inmate pursuant to this section or to
Article IV(f) of the Interstate Corrections Compact or of
the Western Interstate Corrections Compact" for "any other
party state pursuant to Article IV(f) of the Western
Interstate Corrections Compact".

The 1977 amendment substituted in the third sentence
the "Community Release Board" for the "Adult Authority,
or the California Women's Board of Terms and Parole, as
appropriate".

The 1979 amendment substituted in the third sentence
"Board of Prison Terms" for "Community Release Board".

Legislative intent that Stats.1979, c. 255 only effect a
change of name from the community release board to the
board of prison terms, see Historical Note under Gov.C. §
11501.5.

### REFERENCES

### CROSS REFERENCES

Board of prison terms, see Penal Code § 5075 et seq.
Transfer of prisoners, see Penal Code § 5080.

### CODE OF REGULATIONS
REFERENCES

Documentation hearing, see 15 Cal. Code of Regs. § 2369.
Multijurisdiction prisoners located outside California;

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97741 West's Ann.Cal.Penal Code § 11194**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11194. Contracts

The Director of Corrections is hereby empowered to enter into such contracts on behalf of this state as may be appropriate to implement the participation of this state in the Interstate Corrections Compact [FN1] and the Western Interstate Corrections Compact [FN2] pursuant to Article III thereof. No such contract shall be of any force or effect until approved by the Director of General Services. Such contracts may authorize confinement of inmates in, or transfer of inmates from, only such institutions in this state as are under the jurisdiction of the Department of Corrections, and no such contract may provide for transfer out of this state of any person committed to the custody of the Director of the Youth Authority. No such contract may authorize the confinement of an inmate, who is in the custody of the Director of Corrections, in an institution of a state other than a state that is a party to the Interstate Corrections Compact or to the Western Interstate Corrections Compact. The Director of Corrections, subject to the approval of the Board of Prison Terms, must first determine, on the basis of an inspection made by his direction, that such institution of another state is a suitable place for confinement of prisoners committed to his custody before entering into a contract permitting such confinement, and shall, at least annually, redetermine the suitability of such confinement. In determining the suitability of such institution of another state, the director shall assure himself that such institution maintains standards of care and discipline not incompatible with those of the State of California and that all inmates therein are treated equitably, regardless of race, religion, color, creed or national origin.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3200, § 1. Amended by Stats.1965, c. 371, p. 1588, § 253; Stats.1976, c. 667, p. 1653, § 6; Stats.1977, c. 165, p. 677, § 90, eff. June 29, 1977, operative July 1, 1977; Stats.1979, c. 255, p. 569, § 60.)*

**\*97742** [FN1] Section 11189.

[FN2] Section 11190.

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

#### 2000 Main Volume

The 1965 amendment substituted in the second sentence the director of general services for the director of finance.

The 1976 amendment included "Interstate Corrections Compact" in two places.

The 1977 amendment substituted in the fifth sentence the approval of the "Community Release Board" (now the Board of Prison Terms, see 1979 amendment note) for the "Adult Authority or the California Women's Board of Terms and Parole, as appropriate".

The 1979 amendment substituted in the fifth sentence "Board of Prison Terms" for "Community Release Board".

Legislative intent that Stats.1979, c. 255 only effect a change of name from the community release board to the board of prison terms, see note under Gov.C. § 11501.5.

### REFERENCES

© 2007 Thomson/West. No claim to original U.S. Govt. works.

PENAL Sec. 11194.5, Contract; negotiation by county sheriff with officials of adjacent state;    **Page 1**
suitability of facilities and compatible standards of care and discipline; maintenance and expenses;
consent of prisoner; release

**\*97743 West's Ann.Cal.Penal Code § 11194.5**

# WEST'S ANNOTATED
# CALIFORNIA CODES
# PENAL CODE
# PART 4. PREVENTION OF
# CRIMES AND
# APPREHENSION OF
# CRIMINALS
# TITLE 1. INVESTIGATION
# AND CONTROL OF CRIMES
# AND CRIMINALS
# CHAPTER 2. CONTROL OF
# CRIMES AND CRIMINALS
# ARTICLE 4. INTERSTATE
# CORRECTIONS COMPACTS

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

**§ 11194.5. Contract; negotiation by
county sheriff with officials of
adjacent state; suitability of facilities
and compatible standards of care
and discipline; maintenance and
expenses; consent of prisoner;
release**

(a) At the request of the board of supervisors
of any county that is adjacent to another state, the
county sheriff shall negotiate with the
appropriate officials of the adjacent state to
contract pursuant to the authority of Article III of
a compact executed under Section 11189 or
11190 for the confinement of county jail
prisoners in corresponding facilities located in
the adjacent state. The sheriff shall determine
that the corresponding facilities are a suitable
place of confinement of prisoners submitted to
his or her custody and shall at least annually
redetermine the suitability as a precondition to
any contract under this section. In determining
the suitability of the facilities of the other states,
the sheriff shall assure himself or herself that it
maintains standards of care and discipline not
incompatible with those of this state and that all
inmates therein are treated equally, regardless of
race, religion, color, creed, or national origin.

(b) With the approval of the board of
supervisors including agreement as to terms for
payments to be made for prisoner maintenance
and expenses, the county sheriff may enter into a
contract negotiated under subdivision (a).

(c) No prisoner may be transferred to an
institution outside of this state under this section
unless he or she has executed a written consent
to the transfer.

(d) Any person who was sent to another state
from a county under the authority of this section
shall be released within the territory of the
county unless the person, the sheriff of the
sending county, and the corresponding official or
agency of the other state shall agree upon release
in another place. The county shall bear the cost
of transporting the person to the place of release.
**\*97744**

### CREDIT(S)

*(Added by Stats.1986, c. 860, § 1, eff. Sept. 17, 1986.)*

<General Materials (GM) - References,
Annotations, or Tables>

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97745 West's Ann.Cal.Penal Code § 11195**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11195. Benefits of prisoner released from prison without state; release within territory of state, exception, transportation

Every prisoner released from a prison without this state to which he has been committed or transferred from this state pursuant to this article shall be entitled to the same benefits, including, but not limited to money and tools, as are allowed to a prisoner released from a prison in this state. Any person who has been sent to another state for confinement pursuant to this article shall be released within the territory of this state unless the person, the Director of Corrections of California, and the corresponding agency or official of the other state shall agree upon release in some other place. This state shall bear the cost of transporting the person to the place of release.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3200, § 1. Amended by Stats.1976, c. 667, p. 1654, § 7.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

#### 2000 Main Volume

The 1976 amendment substituted in the first sentence, "this article" for "the compact"; and added the second and third sentences.

### REFERENCES

### LIBRARY REFERENCES

#### 2000 Main Volume

Cal Digest of Official Reports 3d Series Penal and Correctional Institutions § 22.

### RESEARCH REFERENCES

Treatises and Practice Aids

3 Witkin Cal. Crim. L. 3d Punishment § 15, (S 15) Restrictions and Conditions.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97746 West's Ann.Cal.Penal Code § 11196**

**WEST'S ANNOTATED**
**CALIFORNIA CODES**
**PENAL CODE**
**PART 4. PREVENTION OF**
**CRIMES AND**
**APPREHENSION OF**
**CRIMINALS**
**TITLE 1. INVESTIGATION**
**AND CONTROL OF CRIMES**
**AND CRIMINALS**
**CHAPTER 2. CONTROL OF**
**CRIMES AND CRIMINALS**
**ARTICLE 4. INTERSTATE**
**CORRECTIONS COMPACTS**

*Current with all 2006 laws and all*
*propositions appearing on the Nov. 7,*
*2006 ballot*

## § 11196. Severability

The provisions of this article shall be severable and if any phrase, clause, sentence, or provision of this article is declared to be unconstitutional or the applicability thereof to any state, agency, person or circumstance is held invalid, the constitutionality of this article and the applicability thereof to any other state, agency, person or circumstance shall, with respect to all severable matters, not be affected thereby. It is the legislative intent that the provisions of this article be reasonably and liberally construed.

### CREDIT(S)

*(Added by Stats.1961, c. 1397, p. 3200, § 1.)*

<General Materials (GM) - References, Annotations, or Tables>

### REFERENCES

### LIBRARY REFERENCES

#### 2000 Main Volume

Statutes ☞64.
Westlaw Topic No. 361.
C.J.S. Statutes § 92.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Case 3:08-cv-02708-WHA   Document 2   Filed 05/29/2008   Page 95 of 96

PENAL Sec. 11197, Competency of person committed or transferred out of state to testify in state    **Page 1**
prosecution; counsel; notice and interview; compulsion to interview

**\*97747 West's Ann.Cal.Penal Code § 11197**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

§ 11197. Competency of person
committed or transferred out of state
to testify in state prosecution;
counsel; notice and interview;
compulsion to interview

No person sentenced under California law
who is committed or transferred to an institution
outside of this state shall be competent to testify
for the prosecution in any criminal proceeding in
this state unless counsel for each defendant in
such proceeding is notified that the prosecution
may call the person as a witness and is given an
opportunity to interview the person no less than
10 days before the commencement of the
proceeding or, in the event the prosecution is not
at that time considering the possibility of using
such testimony, the notice and opportunity for
interview shall be given at the earliest possible
time. Nothing in this section shall be construed
to compel the prisoner to submit to such an
interview.

**CREDIT(S)**

*(Added by Stats.1976, c. 667, p. 1654, § 8.)*

<General Materials (GM) - References,
Annotations, or Tables>

**REFERENCES**

**LIBRARY REFERENCES**

**2000 Main Volume**

Criminal Law ☞629.
Westlaw Topic No. 110.
C.J.S. Criminal Law, §§ 451 to 453, 463 to 466.

**RESEARCH REFERENCES**

Treatises and Practice Aids

3 Witkin Cal. Crim. L. 3d Punishment § 15, (S 15)
Restrictions and Conditions.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*97748 West's Ann.Cal.Penal Code § 11198**

**WEST'S ANNOTATED
CALIFORNIA CODES
PENAL CODE
PART 4. PREVENTION OF
CRIMES AND
APPREHENSION OF
CRIMINALS
TITLE 1. INVESTIGATION
AND CONTROL OF CRIMES
AND CRIMINALS
CHAPTER 2. CONTROL OF
CRIMES AND CRIMINALS
ARTICLE 4. INTERSTATE
CORRECTIONS COMPACTS**

*Current with all 2006 laws and all
propositions appearing on the Nov. 7,
2006 ballot*

## § 11198. Criminal commitment of person sentenced under authority outside of California

(a) Except as authorized by California statute, no city, county, city and county, or private entity shall cause to be brought into, housed in, confined in, or detained in this state any person sentenced to serve a criminal commitment under the authority of any jurisdiction outside of California.

(b) It is the intent of the Legislature that this act shall neither prohibit nor authorize the confinement of federal prisoners in this state.

### CREDIT(S)

*(Added by Stats.1999, c. 707 (A.B.1222), § 2.)*

<General Materials (GM) - References, Annotations, or Tables>

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

#### 2000 Main Volume

Section 1 of Stats.1999, c. 707 (A.B.1222), provides:

"(a) The Legislature hereby finds and declares that this act, by ensuring continued public jurisdiction over correctional facilities, is necessary for the protection of the public safety of California residents and applies equally to both local and out-of-state private entities.

"(b) The Legislature further finds and declares that California has a legitimate interest in reserving, as exclusive unto itself, exercise of its sovereign power to recognize the authority of any jurisdiction, outside of this state, to enforce the housing, confinement, or detention of any person within the borders of California."

### REFERENCES

### RESEARCH REFERENCES

Encyclopedias

CA Jur. 3d Penal and Correctional Institutions § 33, Federal Prisoners.

Treatises and Practice Aids

3 Witkin Cal. Crim. L. 3d Punishment § 14, (S 14) Adoption and Nature of Compacts.

© 2007 Thomson/West. No claim to original U.S. Govt. works.